# Exhibit B

COUNTY COURT
COUNTY OF ONONDAGA   STATE OF NEW YORK

_____

THE PEOPLE OF THE STATE OF NEW YORK

                V.                              Ind. # 2016-0061-1
                                                   Index # 16-0049

TONY JENNINGS,

                      Defendant.

_____

**DECISION / ORDER**

Hafner, J.

      The defendant is charged in this indictment with the crimes of Criminal Possession of a Controlled Substance in the Third Degree, in violation of *Penal Law § 220.16[1]* and Criminal Possession of a Controlled Substance in the Fourth Degree, in violation of *Penal Law § 220.09[1]*.

      The defendant filed an Omnibus Motion on March 23, 2016 seeking: [1] examination of the grand jury minutes pursuant to *Criminal Procedure Law § 210.30[1] and [2]*; [2[ an order pursuant to *Criminal Procedure Law § 210.20-1[b]* dismissing the indictment on the grounds that there was not legally sufficient evidence presented to the grand jury to establish the charged crimes; [3] an order pursuant to *Criminal Procedure Law § 210.20-1[c]* dismissing the indictment on the grounds that the grand jury proceedings were defective; [4] an order pursuant to *Criminal Procedure Law § 710.20[1]* suppressing evidence consisting of tangible property on the grounds that such tangible property was obtained by means of an unlawful search and seizure; [5] an order pursuant to *Criminal Procedure Law § 710.20[3]* suppressing evidence consisting of a record or potential testimony reciting or describing a statement of such defendant on the grounds that it was involuntarily made within the meaning of *Criminal Procedure Law § 60.45;* and [5] an order precluding the People from offering evidence of prior criminal convictions, vicious, immoral or bad acts of the defendant upon cross-examination of the defendant at trial.

*14F0582*

The People filed an Answering Affirmation on March 28, 2016 opposing the relief requested by the defendant.

A hearing pursuant to *Criminal Procedure Law § 710.60[4]* was held on May 17, 2016 and May 19, 2016. The People offered the testimony of Syracuse Police Officers Darren Ettinger. The defendant testified in his own behalf. The People offered the testimony of Syracuse Police Officer Jeremy Decker in rebuttal.

On January 5, 2016, Off. Darren Ettinger and Off. Jeremy Decker were assigned to the Syracuse Police Department Crime Reduction Team, a proactive street level unit focused on gangs, drugs and guns in high crime areas of the city Pioneer Homes ("P.H."), a public housing project operated by the Syracuse Housing Authority, is a high crime area which had recently experienced incidents of violence between rival gangs from the "P.H." and the "Bricks," another public housing project in the city. The Syracuse Housing Authority has given the Syracuse Police the authority to approach any persons found on Public Housing Authority property to ascertain their business.

At approximately 6:45pm, the officers were on patrol in Pioneer Homes and were traveling in the 100 block of Radisson Court. The officers illuminated a parking lot in Radisson Court and observed that a black 2003 Acura in the parking lot was occupied by two persons. When the vehicle was illuminated, Ettinger and Decker observed the two occupants turn around, then immediately make "furtive" movements towards their laps and lower bodies, and towards the center of the vehicle, while looking down. These "quick, sneaky" movements made it appear to the officers that the vehicle occupants were attempting to hide or secret items.

Off. Ettinger testified that Decker pulled into the parking lot and parked the police vehicle at a 45 degree angle near the rear driver's side corner of the Acura. Ettinger testified that there was no car parked immediately adjacent to the Acura on the driver's side, and beleived that there was no car parked immediately adjacent to the Acura on the passenger side. Ettinger testified that based upon where the police vehicle was parked, he is not sure whether the driver of the black Acura could have backed up and left the parking lot.

2

14F0583

Off. Decker testified that he parked the front end of the police vehicle at an angle toward the rear driver's side door of the black Acura. Decker testified that there were no vehicles parked immediately adjacent to the passenger side of the black Acura, and believed that there was no car parked immediately adjacent to the Acura on the driver's side. Decker testified that he believed the driver of the black Acura could have backed out while he was parked in that position by cutting the wheel really hard. Decker conceded that it was possible that his police vehicle could have been partially blocking the black Acura.

The officers exited their vehicle. Decker approached the driver's side and Ettinger approached the passenger side. Decker testified that he normally approaches vehicles at night with his flashlight illuminated. Decker did not have a specific recollection of asking the driver, the defendant, Tony Jennings, for identification, but is "sure" that he asked the driver for identification. Decker testified that the defendant was polite with the officer during the brief exchange.

While standing outside the driver's door, Off. Decker observed in plain view on the center console area a black digital scale with a white residue that, based upon his training and experience, appeared to be cocaine on top of it. Decker reached into the vehicle through the open driver's side door and retrieved the digital scale. Off. Decker alerted Off. Ettinger to his observations. Decker asked the vehicle occupants if anyone possessed or used illegal drugs. The front seat passenger, later identified as Willie Jones, said that he had just used cocaine in the vehicle but didn't have any left. The driver, later identified as the defendant, Tony Jennings, said "no."

Off. Ettinger asked Jones to exit the vehicle. Jones exited the vehicle and was handcuffed. Ettinger searched Jones for contraband with negative results. Decker asked the defendant to exit the vehicle. The defendant exited the Acura and, as Decker began to search the defendant, he ran from Decker's grasp. Off. Decker pursued the defendant and tackled him from behind. The defendant struggled with Decker and kept his hands under his body rather than putting them behind his back. Ettinger testified that he struck the defendant in the face with his fist to secure compliance with their commands to the defendant to show his hands. Eventually, Decker and Ettinger were able to secure and handcuff the defendant. The defendant told the officers that he ran because he was on parole.

3

14F0584

Off. Decker then finished his search of the defendant and located in his front left pants pocket a clear knotted section of plastic containing a beige chunky substance that appeared to be crack cocaine and $110 in U.S. currency. The item tested positive for the presence of cocaine and weighed 4 grams. Decker did not have a cocaine wipe (a field testing device for cocaine residue) with him at that time, so he was unable to field test the white residue on the digital scale while at the scene. Off. Ettinger located two cell phones and $150 in U.S. currency in the center console of the vehicle.

The defendant was placed in the rear of the police car and was transported to the Onondaga County Justice Center. While completing the arrest report, one of the officers asked the defendant if he was employed. The defendant said that he had been doing asbestos work at the Hotel Syracuse, but was not working right now and was selling cocaine to replace the income from the lost asbestos work.

The defendant testified that he was at home and received a phone call from his friend, Willie Jones, who asked him for a ride from his girlfriend's apartment in Pioneer Homes. Jones asked the defendant to take him to get gas for his gas can, then take him to his disabled vehicle. The defendant testified that they drove to Monde's gas station on South Salina Street and Jones filled up the gas can. The defendant drove to the location of the defendant's vehicle, where the defendant proceeded to put gas in his car and work on the battery and the wiring. After Jones finished working on his vehicle, he got back into the defendant's black Acura and they drove back to the 100 block of Radisson Court to drop the defendant back off at his girlfriend's apartment.

The defendant testified that he pulled into the second parking space in Radisson Court in front of some bushes next to a truck that was parked in the first space and next to a car on the other side. The defendant testified that he and Jones sat there talking for more than five minutes when he asked the defendant to remove the empty gas can from the car, due to the gas fumes in the car. Jones got out of the car and removed the gas can. The defendant heard Jones say "oh, shit."

4

14F0585

The defendant testified that a vehicle pulled up behind him without either its headlights activated or its spotlight activated. The defendant testified that two police officers exited the vehicle and "rushed" Jones and started searching him. The defendant testified that while the police were searching Jones, he remained seated in the vehicle and officers were shining flashlights into the vehicle through the open front passenger door.

The defendant testified that when he opened his door to step out of the car, an unknown officer ran around to the driver's side of the defendant's car and jumped inside the doorjamb, preventing him from getting out of the car. The officer shined a flashlight on the defendant and started questioning him, asking him if there were guns or drugs in the car. The defendant said "no." The defendant testified that the officer asked him if he lived there, or if either one of us lived there. The defendant testified that he told the officer he was dropping Jones off in Radisson Court. The defendant testified that he asked the officer why he blocked his car off, but the officer did not respond to his inquiry.

The defendant testified that the officer asked him for identification and he produced his driver's license. The defendant testified that the officer asked him to step out of the car, turn around and place his hands on the hood of the car. The officer conducted a search of his person, including reaching into the defendant's coat pockets. The defendant asked the officer "why are you going inside of my pockets and am I under arrest?" The defendant testified the officer said "well, I believe there is something going on … I see you making furtive movements … there has got to be something going on."

The defendant testified that the officer continued to search his person, including reaching into the defendant's right pants pocket. The defendant testified that the officer placed his hand under the defendant's coat and ran his hand down the back of the defendant's pants. The defendant told the officer that he was "out of line" and "violating" him, and told him to stop. The defendant testified that defendant turned around to get the officer to stop his search, and the officer brought him to the ground, then continued to search him. The defendant testified that he never ran from the officers. The defendant denied that there was a digital scale in his vehicle.

5

14F0586

## CONCLUSIONS OF LAW

The Court has inspected the grand jury minutes pursuant to the provisions of *Criminal Procedure Law § 210.30* and finds that release of the minutes to the defendant is unnecessary to resolve the issues raised in the defendant's motions.

In determining a motion to dismiss an indictment or counts therein on the grounds of legal insufficiency of the evidence before the grand jury, the Court must consider only such evidence as adduced before the grand jury and consider such evidence in a light most favorable to the People. The requirement of legal sufficiency is satisfied where "... the competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof. *Criminal Procedure Law § 70.10[1]; People v. Swamp, 84 NY2d 725.*

The Court has reviewed the grand jury minutes and finds that the competent evidence presented was sufficient to establish the crimes charged in the indictment  The defendant's motion for an order dismissing the indictment pursuant to *Criminal Procedure Law § 210.20-1[b]* is denied.

The grand jury proceedings were not defective and complied with the requirements of *Criminal Procedure Law Article 190*. The defendant's motion to dismiss the indictment pursuant to *Criminal Procedure Law § 210.20-1[c]* is denied.

The level of permissible intrusion by law enforcement officers during street encounters with private citizens is governed by the four-tier analysis set forth in *People v. DeBour, 40 NY2d 210,* which analysis contemplates and permits a flexible set of escalating police responses, provided that they remain reasonably related in scope and intensity to the information the officer initially has, and to the information he gathers as his encounter with the citizen unfolds. *People v. Finlayson, 76 AD2d 670.*

6

14F0587

The minimal intrusion of approaching to request information is permissible when there is some objective, credible reason for that interference not necessarily indicative of criminality. The common law right to inquire is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a police officer is entitled to interfere with a citizen to the extent necessary to gain explanatory information but short of a forcible seizure. Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, he is authorized to forcibly stop and detain that person. A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed. Finally, a police officer may arrest and take into custody a person when he had probable cause to believe that person has committed a crime. *People v. DeBour, supra.*

It is well settled that when an officer asks an individual, or a group of people, to provide identification or an explanation for their presence at the particular location or destination information during a police-initiated encounter, the request for information implicates the initial tier of the *DeBour* analysis. Although police officers have "fairly broad authority" to approach and pose questions, they may not do so on mere "whim or caprice"; the request must be based on an articulable reason not necessarily indicative of criminality. *People v. McIntosh, 96 NY2d 521; People v. Holloman, 79 NY2d 181.*

The right of the police to approach a parked car is analogous to the right to approach a citizen on the street and must be based on some objective, credible reason for that interference not necessarily indicative of criminality. *People v. Harrison, 57 NY2d 470.* The officer's request for information from the occupant of a stationary or parked car, like the request for information from a citizen on the street, is a minimal intrusion on the individual's right of privacy. In neither case, is there a restraint of the individual, nor has the individual's freedom of movement been significantly interrupted. As a result, the officer need only possess an articulable reason to make an inquiry of the occupant. Furtive movements by the driver and passengers will justify an approach. *People v. Ocasio, 85 NY2d 982; People v. Williams, 167 AD2d 236.*

7

14P0588

In this case, the defendant's testimony on certain facts conflicts with the testimony of Off. Decker and Off. Ettinger. The Court personally observed the demeanor of these witnesses while they testified and the manner in which they testified. The Court concludes that Off. Decker and Off. Ettinger had an opportunity to see and hear the events about which each testified, and had the ability to recall those events accurately. The testimony of Off. Decker and Off. Ettinger was plausible and likely to be true. The testimony of the defendant was not plausible and not likely to be true. Neither police witness displayed a bias, hostility or some other attitude that affected the truthfulness of the witness's testimony. On the other hand, the defendant's testimony demonstrated his interest in the outcome of these proceedings. Therefore, with respect to any conflicting facts, the Court credits the testimony of Off. Decker and Off. Ettinger and finds the defendant's testimony on such conflicting facts to be not credible and worthy of belief.

The officers observed two occupants of the parked vehicle in a high-crime area turn around an look at them, then immediately made furtive movements towards their laps and lower bodies, and towards the center of the vehicle, while looking down. These quick, sneaky movements made it appear to the officers that the vehicle occupants were attempting to hide or secret something(s). The Court finds that the furtive movements of the defendant and his companion in a high-crime area provided an articulable reason to approach the black Acura and request information from the vehicle occupants.

Based upon the credible testimony of Off. Decker and Off. Ettinger, and contrary to the defendant's assertion, the Court finds that the defendant was not seized at the inception of his encounter with the police when Decker parked the police vehicle at an angle on the driver's side of the defendant's black Acura. A reasonable person would not have believed, under the circumstances testified to by Off. Decker and Off. Ettinger, that the police officer's conduct was a significant limitation of his freedom. *People v. Bora, 83 NY2d 531; People v. Martinez, 80 NY2d 444; People v. Townes, 41 NY2d 97.*

14F0589

From a lawful vantage point, Off. Decker observed in plain view a digital scale with a white powder substance that, in his training and experience, appeared to be cocaine. Based upon these observations and upon Willie Jones' statement that he had just used cocaine in the vehicle, Off. Decker was authorized to detain the defendant for the crime of Criminally Using Drug Paraphernalia in the Second Degree, as the officer had probable cause to believe that the defendant possessed a digital scale used or designed for the purpose of weighing or measuring controlled substances, under circumstances evincing an intent to use the same for the purpose of unlawfully manufacturing packaging or dispensing of a narcotic drug. Decker was authorized to seize the contraband in plain view and to arrest the defendant for the crime of Criminally Using Drug Paraphernalia.

The Court finds the fact that the defendant was not charged with the crime of Criminally Using Drug Paraphernalia in the Second Degree when he was arraigned in local criminal court to be of no significance in the determination of the legal issues in this case and does not affect the Court's perception of either police officer's credibility.

The Court finds that the cocaine and money recovered from the defendant's person were obtained during a lawful search of the defendant incident to his arrest. *Chimel v. California, 395 U.S. 752; People v. De Santis, 46 NY2d 82.* The money and cell phones recovered from the center console area were obtained during a lawful search of the defendant's vehicle pursuant to the automotive exception to the warrant requirement, since the police had probable cause to believe that the vehicle contained contraband and/or evidence of a crime. The defendant's motion for an order suppressing such tangible property pursuant to *Criminal Procedure Law § 710.20[1]* is denied.

14F0590

The defendant made four statements to the police officers sought to be offered as evidence at trial and whose circumstances surrounding the making of were adduced at the hearing: [1] statements made to Off. Decker's during the request for information from the defendant; [2] the statement "no" made to Off. Decker after he observed the digital scale with white powder residue on it and asked if there were any drugs in the car; [3] the statement "I ran because I am on parole" made to Off. Decker and Off. Ettinger after he was tackled while attempting to flee the scene; and [4] statements made to Off. Decker and Off. Ettinger during the taking of pedigree information attendant to the completion of the defendant's arrest report at the Justice Center.

With respect to any statements made by the defendant to Off. Decker during the officer's lawful request for information, such statements were not the product of an unlawful custodial interrogation of the defendant. The Court finds that the defendant was not in custody when he made such statements and therefore Off. Decker was not required to administer *Miranda* rights to the defendant prior to speaking with the defendant while the defendant was seated in the driver's seat of the black Acura.

With respect to the statement "no" made by the defendant to Off. Decker in response to Decker's inquiry about whether there were any drugs in the car, such statement was not the product of an unlawful custodial interrogation of the defendant. The Court finds that the defendant was not in custody when he made such statement. Rather, at most, the defendant was subjected to a temporary investigative detention after Off. Decker made his plain view observation of the digital scale with white powder residue that appeared to be cocaine on the center console area of the vehicle. In order to clarify the circumstances of the encounter, to clarify the observations made of the white powder on the digital scale and to clarify whether a crime was in progress, Off. Decker was permitted to ask the vehicle occupants if there were any drugs in the car. Such questioning was investigatory in nature and was a permissble threshold crime scene inquiry. *People v. Brown*, 23 AD3d 1090; *People v. Burnett*, 228 AD2d 788.

10

14F0591

With respect to the statement "I ran because I was on parole," made by the defendant to Off. Decker and Off. Ettinger, the Court finds that while the defendant was in custody when he made that statement, the statement was not the product of express questioning or its functional equivalent, and was spontaneously made by the defendant. *People v. Bryant, 59 NY2d 786.*

With respect to the admission that he sold drugs made by the defendant to Off. Decker and Off. Ettinger during the completion of the arrest report, the Court finds that such statement was made in response to a lawful request for pedigree information. The primary purpose of the question regarding the defendant's employment was to satisfy a non-investigatory, informational need and not to acquire incriminating information. The officer's request for such pedigree information from the defendant did not constitute unlawful custodial interrogation. *People v. Rodney, 85 NY2d 289.*

The defendant's statements were not obtained by the use or threatened use of physical force upon the defendant or another person, or by means of any other improper conduct or undue pressure which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement. The defendant's statements were not obtained by means of any promise or statement of fact, which promise or statement created a substantial risk that the defendant might falsely incriminate himself. The defendant's statements were not obtained in violation of such rights as he may derive from the constitution of this state or of the United States.

The Court finds that the defendant's statements were not involuntarily made within the meaning of *Criminal Procedure Law § 60.45*. The defendant's motion for an order pursuant to *Criminal Procedure Law § 710.20[3]* suppressing evidence consisting of a record or potential testimony reciting or describing a statement made by him on January 5, 2016 is denied.

14F0592

The defendant's Omnibus Motion included a demand for discovery pursuant to *Criminal Procedure Law § 240.20* and a request for a bill of particulars pursuant to *Criminal Procedure Law § 200.95*. The People have provided discovery in response to the defendant's demand. No subsequent motion for court ordered discovery has been filed by the defendant. The People provided a bill of particulars to the defendant. The defendant has not indicated any dissatisfaction with the People's bill of particulars.

In the event that the People make an application to offer evidence of any prior criminal convictions, vicious, immoral or bad acts of the defendant either in their case-in-chief or upon cross-examination of the defendant, the Court will conduct a *Ventimiglia* and/or *Sandoval* hearing immediately prior to trial.

Pursuant to *22 NYCRR § 200.12*, a preliminary trial conference is hereby scheduled for Wednesday, July 20, 2016 at 9:00am. Any potential expert witness for trial shall be identified at the preliminary trial conference. If the People believe that any prior statements of potential witnesses in their possession or control are not discoverable under the *Criminal Procedure Law,* or under *Brady* or *Rosario*, the People shall identify said statements by an *ex parte* application to the Court and file either a written refusal to produce said evidence pursuant to *Criminal Procedure Law § 240.35*and/or file a motion for a protective order pursuant to *Criminal Procedure Law § 240.50*.

**NOW THEREFORE,** it is hereby

**ORDERED,** that the Defendant's motion for an order dismissing the indictment pursuant to *Criminal Procedure Law § 210.20-1[b]* is **denied;** and it is further

**ORDERED,** that the Defendant's motion for an order dismissing the indictment pursuant to *Criminal Procedure Law § 210.20-1[c]* is **denied;** and it is further

12


14F0593

**ORDERED,** that the Defendant's motion for an order suppressing tangible property pursuant to *Criminal Procedure Law § 710.20[1]* is **denied;** and it is further

**ORDERED,** that the Defendant's motion for an order suppressing statements pursuant to *Criminal Procedure Law § 710.20[3]* is **denied;** and it is further

**ORDERED,** that if the People make an application to offer evidence of prior criminal convictions, vicious, immoral or bad acts of the defendant upon cross-examination of the defendant at trial, a *Sandoval* hearing will be held immediately prior to trial.

This constitutes the Decision and Order of the Court.

Dated: July 13, 2016

_____
Hon. Walter W. Hafner, Jr.
Acting Onondaga County Court Judge



14F0594