```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
TONY JENNINGS,

                         Plaintiff,

vs.                                        5:17-CV-54

JEREMY DECKER, DARREN ETTINGER,
and CITY of SYRACUSE,

                         Defendants.

-------------------------------------------------x
```

*Portion of Digitally Recorded Telephone Conference*

November 26, 2019

James Hanley Federal Building, Syracuse, New York

HONORABLE THÉRÈSE WILEY DANCKS

United States Magistrate Judge, Presiding

<u>APPEARANCES</u> (by telephone)

```
For Plaintiff:     KEVIN M. CANNIZZARO
                   Attorney at Law
                   P.O. Box 10849
                   Albany, NY 12201

For Defendants:    CITY OF SYRACUSE CORPORATION COUNSEL
                   233 East Washington Street
                   Syracuse, NY 13202
                      BY:  CHRISTINA F. DeJOSEPH, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

*Jennings v. Decker, et al. - 11/26/2019*                    2

```
 1          THE CLERK:  Good morning.  We're here with
 2   Magistrate Judge Dancks for a telephone conference, Jennings
 3   versus Decker, 17-cv-54.  Counsel for plaintiff, please state
 4   your appearance.
 5          MR. CANNIZZARO:  Kevin Cannizzaro, Your Honor.
 6          THE CLERK:  And for the defendant?
 7          MS. DeJOSEPH:  Christina DeJoseph with Corporation
 8   Counsel's Office.
 9          THE COURT:  All right.  Good morning to both of
10   you.
11          We are teed up for talking about a discovery
12   dispute.  I've got dockets 86, 88 and 89.  Let me just see if
13   I can summarize what's in dispute.
14          We're talking about personnel files of Decker,
15   Ettinger and Ocker.  And it looks like defendants have agreed
16   to produce Decker and Ettinger's files pursuant to a
17   protective order, but not Sergeant Ocker's, is that it?
18          MS. DeJOSEPH:  Correct.
19          THE COURT:  Okay.  All right.  And then there is
20   also training materials on the use of force and lots of other
21   things that plaintiff is looking for in terms of training
22   materials, and then prior complaints regarding --
23          MS. DeJOSEPH:  I'm sorry to interrupt.  We'll
24   produce the training materials at least as it relates to the
25   use of force, and obviously some of it, it's possible I
```

*Jennings v. Decker, et al. - 11/26/2019*                    3

1   haven't seen them, might even overlap with some of the topics

2   he is seeking because to the extent that it's yearly

3   in-service training, some of it will likely overlap, but that

4   I don't have it in my hand at this very moment.

5           THE COURT:  Okay.  Well, then let me -- I think the

6   hardest one is going to be the prior complaints with the

7   excessive force, racial profiling five years before the

8   incident regarding all police officers.  I think that's what

9   you're looking for, Mr. Cannizzaro, yes?

10          MR. CANNIZZARO:  Yes, Your Honor, that's right.

11          THE COURT:  All right.  So let me back up then.

12  Personnel files with regard to Decker and Ettinger, you're

13  going to produce those, just so I understand, Ms. DeJoseph,

14  pursuant to the protective order, right?

15          MS. DeJOSEPH:  That's correct.

16          THE COURT:  But not Sergeant Ocker's.  I don't know

17  if I'm saying his name right.

18          MS. DeJOSEPH:  Yeah, I think that's it.  I don't

19  know the answer to that question either.  Our position is

20  that because he is no longer a party.

21          THE COURT:  So, Mr. Cannizzaro, are you still -- do

22  you still -- are you still demanding Sergeant Ocker's

23  personnel file?

24          MR. CANNIZZARO:  So, Your Honor and Christie, I

25  looked at the case law a lot over the weekend and after

*Jennings v. Decker, et al. - 11/26/2019*                    4

1   taking a hard look at it, I think that in terms of the

2   personnel file for Sergeant Ocker, I'm willing to concede

3   that we will not be demanding -- I'm willing to withdraw that

4   demand for his personnel file.

5          However, Your Honor, there is also an objection by

6   the defendants as to the previous complaints against

7   defendant Ocker -- excuse me, Sergeant Ocker, and I do think

8   that those previous complaints or citizens complaints still

9   remain relevant despite the fact that he is a non-party at

10  this point, still remain relevant to the racial profiling

11  claim particularly.

12         I mean, we -- and that goes -- I don't want to go

13  too far until you allow Christie to respond, but it all ties

14  into the prior complaints go to the racial profiling claim

15  here in a broad sense.  So while the personnel file may not

16  be completely necessary, I have a feeling at least in my

17  experience prior complaints often are noted in personnel

18  files.  So to the extent that we're withdrawing the demand

19  for his full personnel file, I'm having a hard time

20  disconnecting the prior complaints with what may be in the

21  file as they relate to the racial profiling claim, *the Monell*

22  claim that the plaintiff is bringing here.

23         THE COURT:  Let me just see, so does that tie in to

24  your -- I mean, are you only seeking prior complaints with

25  regard to racial profiling on the two named defendants and

*Jennings v. Decker, et al. - 11/26/2019*                    5

1    Sergeant Ocker?  Because I thought there was a demand -- hold

2    on.  I thought there was a demand overall for the last five

3    years before this incident, a pretty big swath of time there,

4    regarding any complaints, you know, as it pertains to the

5    nebulous *Monell* claim.

6              MR. CANNIZZARO:  Your Honor, that's correct.  Also

7    within our demands we're seeking historical and statistical

8    information regarding complaints lodged against the City of

9    Syracuse officers at large.

10             And again, Your Honor, I mean, I think while we

11   can -- certainly we'll get into the argument that the defense

12   counsel is making regarding the *Monell* claim, whether you

13   look at it from the *Monell* claim, from the racial profiling

14   claim, it's plaintiff's position that these historical

15   records, and I think it's reflected in a number of cases, are

16   vital to establishing either the *Monell* claim or the racial

17   profiling claim particular to the two officers.  You know, in

18   terms of the two officers, the racial profiling claim against

19   them specifically looking to prior complaints against these

20   two officers that may or may not exist, and in the event they

21   exist, they go to establishing the animus, the racial animus

22   that these officers may have held on the night of

23   January 5th.

24             In terms of the other officers police department

25   wide, plaintiff's position is that that goes directly to the

*Jennings v. Decker, et al. - 11/26/2019*                    6

1    racial profiling/*Monell* claim in that if, for example, there

2    is failure to train, supervise and discipline officers on a

3    department-wide basis, which that information and belief

4    given some studies which are posted on the city's websites,

5    it seems that there is a viable argument here that there is a

6    culture of racial profiling which existed prior to

7    Mr. Jennings' arrest and the request for prior resistance

8    complaints against the officers at large, Your Honor, goes to

9    that claim.

10            THE COURT:  Okay.  Presumably you would get any

11   complaints against Sergeant Ocker if I were to permit prior

12   complaints regarding racial profiling or excessive force

13   going to your *Monell* claims.  So, you know, let me just --

14   because Sergeant Ocker would presumably, if there were any

15   against him, they would be presumably encompassed in that

16   other demand.  Am I right about that?

17            MR. CANNIZZARO:  I agree with you.

18            THE COURT:  All right.

19            MR. CANNIZZARO:  I agree with you.

20            THE COURT:  Okay.  So certainly I'm going to -- I

21   guess before I get into that too deeply, Ms. DeJoseph, when

22   can you produce the personnel files of Decker and Ettinger

23   pursuant to the protective order?

24            MS. DeJOSEPH:  I have them here, Your Honor.  Quite

25   frankly, if you hear my voice, I'm a little under the

*Jennings v. Decker, et al. - 11/26/2019*

1   weather.  I was out of the office yesterday.  I would have

2   produced them yesterday.  I'll get to Mr. Cannizzaro either

3   today, I can give them to him today, e-mail sooner, and I'll

4   supplement, I'll put a hard copy in the mail today.

5           THE COURT:  Well, is there a protective order in

6   place?

7           MS. DeJOSEPH:  There is not but he and I have had

8   some discussion and I guess I trust that when we do get the

9   protective order in place, that I trust just that he will

10  honor it retroactively.

11          THE COURT:  Okay.  So, Mr. Cannizzaro, she'll

12  produce those two, the two named defendants' personnel

13  records, subject to the protective order, that I'll put a

14  date on that of when I want you all to submit that.  But you

15  are in agreement with that, right, Mr. Cannizzaro?

16          MR. CANNIZZARO:  Yes, Your Honor.  Ms. DeJoseph and

17  I have spoken a number of times over the past couple of weeks

18  and I agree the protective order will be, for a lack of a

19  better term, will be fairly dealt with, and I obviously will

20  even now as they're turned over, I will offer them, share

21  them, and we'll talk about that.

22          MS. DeJOSEPH:  Can I just insert one thing here

23  just so we're all on the same page?  I know, Kevin, that we

24  discussed the production of the personnel files up to the

25  date of January 5th, 2016.  That's what I'm prepared to put

*Jennings v. Decker, et al. - 11/26/2019*                                    8

1   in.

2             MR. CANNIZZARO:  Yes.

3             MS. DeJOSEPH:  I didn't know if that was a topic

4   that you wanted to bring up with the Court if you wanted

5   additional records.

6             MR. CANNIZZARO:  No.  I think, Christie, that's

7   fine, up to the date of the incident.

8             THE COURT:  So personnel records for Decker and

9   Ettinger will be produced, I'll put tomorrow on there for

10  you.  Why don't I just put Monday on there for you, just in

11  case something comes up, Monday, December 2nd.  And obviously

12  if you can get them over to him today or tomorrow, that's

13  fine.

14            MS. DeJOSEPH:  That's the goal.

15            THE COURT:  But they will be produced subject to

16  the protective order that you'll be submitting to me and, to

17  be clear, the personnel files will contain everything up to

18  the date of January 5th of 2016.

19            MS. DeJOSEPH:  Yes.

20            THE COURT:  And then produce them by December 2nd.

21  Can you all get me a proposed stipulated protective order by

22  December 6th?  That's next Friday.

23            MS. DeJOSEPH:  Yes, I can do that, yep.

24            THE COURT:  All right.  So put it together and get

25  it over to Mr. Cannizzaro so that the two of you can

1   presumably stipulate to the contents of it and get it to me

2   by Friday, December 6th.  And make sure, I know you have

3   standard orders that I think certainly pass muster in this

4   court, but just make sure, Ms. DeJoseph, that something in

5   the order addresses our Local Rule 83.13 that you won't be

6   filing anything under seal without getting permission from

7   the Court first even if it's designated confidential by the

8   parties.  Okay?

9             MS. DeJOSEPH:  I'll make sure that happens.

10             THE COURT:  Just make sure a paragraph or a couple

11   sentences in there will reference that the parties will

12   follow Local Rule 83.13 if they're going to be seeking to

13   file something under seal.

14             MS. DeJOSEPH:  Okay.

15             THE COURT:  Okay.  Then with regard to the training

16   materials for Decker and Ettinger, I'm going to guess that

17   that stuff is all in their personnel files.

18             MS. DeJOSEPH:  It is.

19             THE COURT:  It is?  Okay.

20             MS. DeJOSEPH:  I should say some of it is.  The

21   essentially memos ordering them to attend certain trainings

22   are in there.  I believe there's a separate demand for the

23   actual training materials.

24             THE COURT:  Yeah, there is, and that's what I'm

25   getting at.  I'm trying to figure out, do I need to make a

1  specific directive for that or will the information just be

2  contained in their personnel files?

3        MS. DeJOSEPH:  It was not.  However, in the spirit

4  of trying to, you know, proceed in good faith, I have asked

5  for those materials to be sent to me.  I'm waiting for them.

6  And I will -- you know, part of me kind of went back and

7  forth on whether or not that was relevant and that would sort

8  of give plaintiff an opportunity to essentially build their

9  *Monell* claim on those materials, but I think I'll produce

10  them.

11        THE COURT:  Well, I'm going to direct you to

12  produce them.

13        MS. DeJOSEPH:  I figured you might so that's why I

14  asked for them ahead of time and that's why I was going to do

15  it myself.  Is it okay then with the same understanding up to

16  the date of January 5th of 2016, the training records?

17        THE COURT:  Yes.

18        MS. DeJOSEPH:  Okay.

19        THE COURT:  So training with regard to Decker and

20  Ettinger on the use of force.  I know there were several

21  various topics that you were looking for training materials

22  on, Mr. Cannizzaro, but I'm limiting it to use of force.  If

23  there is any racial training, diversity training, that sort

24  of thing, they ought to have that and then --

25        MS. DeJOSEPH:  It's likely to spill over.  I mean,

*Jennings v. Decker, et al. - 11/26/2019*                    11

1    in-service training materials, annual training cover a wide

2    variety of topics, so it's likely it would sort of be

3    difficult to parse that out anyway.  I'm happy to produce

4    that.

5              THE COURT:  Okay.  And then again up to, what

6    they've attended up to January 5th of 2016.

7              MS. DeJOSEPH:  Okay.

8              THE COURT:  So that's --

9              MR. CANNIZZARO:  Your Honor, if I may?  I just want

10   to make sure, I'm okay with just the excessive force --

11   excuse me, the use of force and the diversity training,

12   racial sensitivity training.  I just want to make sure that

13   subsumed within that, Your Honor, any implicit bias training

14   to the extent it exists, and also it may be it goes without

15   saying that may be within those materials, but I want to make

16   sure about that.  That was one of the requests that I had in

17   our demand, and I want to just stress that we are looking for

18   the extent to which the Syracuse Police Department has

19   implicit bias training materials which these officers were

20   trained with or trained under.

21             THE COURT:  Okay.  I mean, that falls under -- to

22   me that falls under diversity training, implicit bias

23   training would.

24             MS. DeJOSEPH:  Whatever's in this there on that

25   topic that can be considered, I will turn it over.

*Jennings v. Decker, et al. - 11/26/2019*                    12

1            THE COURT:  Okay.  You got that, Mr. Cannizzaro?

2            MR. CANNIZZARO:  That's fine, Your Honor.

3            THE COURT:  And let me -- when can you get that to

4    Mr. Cannizzaro?

5            MS. DeJOSEPH:  Um, I don't have that in hand.  I've

6    been told I would have that.  After we get off the phone, I

7    will call my contact over there and express that that needs

8    to be sort of put at the top of the list.  I can have that --

9    I'm not going to be in the office tomorrow, the rest of the

10   week is kind of shot for the holiday, but I can no later

11   than, you know, early next week.

12           THE COURT:  Well, I can put this -- I'll put -- I

13   just want to give you realistic time.

14           MS. DeJOSEPH:  I understand, and I appreciate that.

15           THE COURT:  December 6th, the end of next week?

16           MS. DeJOSEPH:  Okay.  If the Court ordered that,

17   that gives me a little bit more of a firm leg to stand on

18   when I ask for this stuff, I say the Judge is telling me to

19   do it.

20           THE COURT:  Yep, perfect.  Use me as a hammer any

21   time you need to.

22           MS. DeJOSEPH:  That's right.

23           THE COURT:  So December 6th.  That's the same date

24   we talked about the confidentiality order.

25           MS. DeJOSEPH:  Yep.

*Jennings v. Decker, et al. - 11/26/2019*                    13

```
1              THE COURT:  All right.  Now the sticky -- the real

2    sticky wicket as I see it is the prior complaints regarding

3    excessive -- well, regarding a whole bunch of things that

4    Mr. Cannizzaro is looking for.  But in my mind, and I

5    appreciate your arguments, Ms. DeJoseph, about the

6    loosey-goosey pleading of a *Monell* claim, but I read Judge

7    Kahn's decision, a couple of follow-up shorter orders and

8    text orders on the issue, and I'm going to direct -- I'm

9    going to direct that prior complaints with regard to

10   excessive force and racial profiling be produced for a

11   five-year period prior to the date of the incident.  So that

12   would be 2011 to 2016, January of 2011 to January of 2016.

13             MS. DeJOSEPH:  Your Honor, if I may?

14             THE COURT:  Yeah, go ahead.

15             MS. DeJOSEPH:  I mean, it's obviously outlined in

16   my letter and I'm not going to belabor what I address in my

17   letter, but when the Court reopened discovery, it did do so

18   with the discretion of essentially you, Your Honor.

19             THE COURT:  Yeah, I saw it.

20             MS. DeJOSEPH:  In terms of the scope of it.

21             THE COURT:  Yep.

22             MS. DeJOSEPH:  And you understand our position

23   there is that essentially nothing -- we're kind of in a

24   difficult position because there is nothing pleaded and now

25   they can sort of create, and sort of create that they found
```

1   what's produced, and I think that's unfair.

2         THE COURT:  Let me ask Mr. Cannizzaro this.  What

3   is exactly your *Monell* claim?  Is it a formal

4   unconstitutional policy existed?  Is it a persistent

5   widespread practice?  Is it a deliberate indifference?  What

6   is it?

7         MR. CANNIZZARO:  So, Your Honor, I think -- and

8   Ms. DeJoseph and I have gone back and forth on this over the

9   last couple of weeks.  I think that the plaintiff -- not that

10  I think.  The plaintiff's claim is twofold.  One, that there

11  was -- under the *Monell*, one that there was widespread policy

12  or practice of racial profiling within the Syracuse Police

13  Department which led to these officers taking the action they

14  did on January 5th.  And that one, Your Honor, I would argue

15  while it is basic, as I said in our letter, it is basic, but

16  I thinks it's not particularly sufficiently pled in

17  Mr. Jennings' complaint that he put together two years ago.

18        The other piece of this, Your Honor, is the, you

19  know, failure to train, discipline and supervise officers.  I

20  think both pieces of those are really the only avenues for

21  Mr. Jennings to make an argument as regards to the *Monell*

22  claim and that is -- those are the theories that the

23  plaintiff will be proceeding on.

24        You know, without belaboring the point, as you said

25  Judge Kahn addressed this, but I think something that's

*Jennings v. Decker, et al. - 11/26/2019*

15

```
1    important to note from an efficiency standpoint here for both

2    the Court and counsel is Judge Kahn also left open the

3    opportunity for defense counsel to file dispositive motions

4    at the close of discovery on January 5th, which --

5            THE COURT:  Well, she's kind of asked for

6    permission to do that and he already denied it once.

7            MR. CANNIZZARO:  Sure.  You're right about that,

8    Your Honor.  But I would say that if we were to get to the

9    end of discovery and Ms. DeJoseph's objections as to the

10   nebulous nature of the Monell claim are still as strong as

11   she's been representing up to this point, I would imagine

12   that defense counsel's going to make that argument to file

13   another motion on the Monell claim itself.

14           So I think six of one, half a dozen of another in

15   some ways, amending the complaint certainly would complicate

16   things in terms of the schedule that we have here possibly

17   and also open up other areas that are unanticipated which may

18   be opened in so doing.

19           So again I think, you know, I would be against any

20   idea of amending the complaint simply because the Court has

21   looked at this pretty thoroughly and left open some other

22   avenues for defense counsel.

23           THE COURT:  Okay.  Yeah, and I'm also looking

24   unfavorably upon trying to amend the complaint at this late

25   date.  But so really what you're looking for is complaints
```

1  regarding racial profiling.  Because a failure to train, you

2  know, you're going to get information from the personnel

3  files and what training that we've already discussed, so

4  really it's racial profiling, complaints about racial

5  profiling, right?

6          MR. CANNIZZARO:  That's correct.  That's correct,

7  Your Honor.

8          THE COURT:  Okay.  All right.

9          MS. DeJOSEPH:  So we are to produce filing of

10  complaints of racial profiling in that five-year period?

11          THE COURT:  Yes.  That's what I'm going to direct.

12  So not excessive force, just racial profiling complaints five

13  years before January 5th of 2016, so it would be January 2011

14  to January of 2016.

15          MS. DeJOSEPH:  Okay.  Obviously, just to be clear

16  because we're on the phone, that would include anything --

17  any complaints made directly to the police department itself?

18          THE COURT:  Yep.

19          MS. DeJOSEPH:  And then but sort of a -- the CRB,

20  it's sort of an odd relationship, but if I find a difficult

21  time with them, I will reach out to the Court if they're not

22  going to willingly give me those things.  You know, not to

23  get into it too much but it's a little bit touchy sometimes

24  with them.

25          THE COURT:  Yep.

*Jennings v. Decker, et al. - 11/26/2019*                    17

1          MS. DeJOSEPH:  So I will make the request for prior

2     complaints limited to racial profiling made to the CRB

3     between that time period.

4          THE COURT:  Yep.  And the police department.  If

5     you have trouble with the CRB, you let me know.  But it's

6     going to be in a text order from this phone call, so if you

7     need to waive that in front of them.

8          MS. DeJOSEPH:  I will.

9          THE COURT:  You know, the other thing, I mean, I

10    recognize that one citizen's complaint to the Citizen Review

11    Board about any particular officer may have several different

12    things that they're complaining about and you may need to do

13    some redacting.

14          MS. DeJOSEPH:  Okay.

15          THE COURT:  Which could take some time.

16          MS. DeJOSEPH:  I was going to bring that up, the

17    same thing with (inaudible).

18          THE COURT:  Yes.  So anything that doesn't pertain

19    to racial profiling in any complaints that are uncovered in

20    that five-year period, I know you're going to need to spend

21    some time going through it and redacting it.

22          So what else, I mean, aside from the end of the

23    year holidays, you got a trial or anything coming up,

24    Ms. DeJoseph?

25          MS. DeJOSEPH:  Our office does in early January --

*Jennings v. Decker, et al. - 11/26/2019*                    18

1   excuse me, in about two weeks, in December, but I don't think

2   I'll be heavily involved in that, so I should be able to

3   spend some time.  And I can also get some help, I can get

4   some help.  I can have my assistant help me with this because

5   that might be a little bit of -- excuse me.  The redactions

6   will obviously have to do with anything unrelated to racial

7   profiling?

8              THE COURT:  Correct.

9              MS. DeJOSEPH:  And do we need to produce any --

10  what about substantiated versus unsubstantiated complaints?

11             THE COURT:  Well, the CRB, it should be

12  substantiated complaints.  I know that's not always easy to

13  tell from the CRB records, but it should be just

14  substantiated complaints both in the PD records and the CRB

15  records.

16             MS. DeJOSEPH:  Okay.  I had a problem in another

17  case that, to be frank, their record keeping with respect to

18  unsubstantiated complaints is essentially nonexistent, so I

19  think it gives the false impression of a higher degree of

20  substantiation than actually exists, but I'll deal with that.

21  I'll figure that out.

22             THE COURT:  Okay.  Again, if you have trouble, you

23  can let me know.

24             MS. DeJOSEPH:  I sure will.  Thank you.

25             THE COURT:  I know that Judge Lovric, who touched

*Jennings v. Decker, et al. - 11/26/2019*                    19

1    this file for a very brief period of time, gave you until

2    January 6th to complete all this discovery.  I mean, can you

3    meet that date, Ms. DeJoseph, with the --

4                MR. CANNIZZARO:  Your Honor --

5                THE COURT:  Hold on, Mr. Cannizzaro.  I'm just

6    talking to Ms. DeJoseph.

7                With regard to the complaints on racial profiling,

8    do you think that's doable?

9                MS. DeJOSEPH:  That could be difficult with the

10   holiday.  I will certainly do my best.

11               The other little wrinkle in this is the deposition

12   requests that have been made, and I certainly requested in

13   the last phone conference with Judge Lovric to be able to

14   depose the plaintiff, and then Mr. Cannizzaro served

15   deposition requests on me with respect to the named officers

16   as well as Sergeant Ocker, and he served on me yesterday via

17   e-mail, which I sort of accepted under the understanding that

18   it clearly may not the case but with respect to former Chief

19   Fowler, and he noticed that for December 29th which is a

20   Sunday.

21               MR. CANNIZZARO:  Christie, I'm sorry, I'm going to

22   have to amend that.

23               MS. DeJOSEPH:  Yeah.  So I guess, I don't know if

24   I'll be able to squeeze all of those things in.

25               THE COURT:  So who exactly do you want,

1    Mr. Cannizzaro?  You want the two remaining defendants,

2    right, Decker and the other?

3              MR. CANNIZZARO:  Yes, Your Honor.  Officers Decker

4    and Ettinger, correct.  And then Sergeant Ocker.  And then

5    finally from the defendants' side of things, he is retired

6    now, Your Honor, but former Police Chief Frank Fowler.

7              THE COURT:  Okay.  And then, Ms. DeJoseph, you want

8    the plaintiff, correct?

9              MS. DeJOSEPH:  Yes.

10             THE COURT:  So no depositions were taken before?

11             MS. DeJOSEPH:  That is unfortunately correct.

12             THE COURT:  Okay.  All right.  Look, I don't have a

13   problem with you doing all these depositions.  Judge Kahn has

14   reopened discovery, and I know you're pro bono,

15   Mr. Cannizzaro.

16             MR. CANNIZZARO:  Yes.

17             THE COURT:  So I guess that it seems to me like a

18   little more time is going to be needed to get all these

19   people in and you got to find out if -- is the former police

20   chief still around, Ms. DeJoseph?  I haven't read anything or

21   I don't know whether he is totally retired and he is a snow

22   bird or what.

23             MS. DeJOSEPH:  I saw him not too long ago at an

24   event so he is around.  I have the contact information.  You

25   know, he is retired but, you know, he has been gracious

1    enough to -- I'm sure he will work with me.

2         THE COURT:  Okay.  Why don't I give you until,

3    let's do this, by January 6th you're to produce the prior

4    complaints as we've discussed, okay, prior complaints

5    regarding racial profiling redacted as to anything other than

6    that that may appear on a page, and just substantiated

7    complaints, and that's police department, complaints to the

8    PD and complaints to the CRB.

9         MS. DeJOSEPH:  Okay.

10        THE COURT:  And then I'll put January 31st, I'm

11   just looking at the -- yeah, I got to make sure I got the

12   2020 calendar.  January 31st is a Friday, so we're still on a

13   business day, that will be for all disclosure including these

14   depositions.

15        MS. DeJOSEPH:  January 31st, Your Honor?

16        THE COURT:  Yes.  But what I want the two of you to

17   do is talk to your plaintiff, Mr. Cannizzaro.  I know he

18   is -- where is he?  He is in Cayuga County Correctional

19   Facility?

20        MR. CANNIZZARO:  He is in the state facility, yes,

21   Your Honor.

22        THE COURT:  He is at Cayuga, right?

23        MR. CANNIZZARO:  He is in Cayuga Correctional, yes,

24   Your Honor.

25        THE COURT:  But you need to somehow get in touch

1   with him to find out availability for a deposition.

2   Ms. DeJoseph, get in touch with Ocker, the two named

3   remaining defendants Decker and Ettinger, and the former

4   Police Chief Fowler and find out their availability to keep

5   it on your radar screens.  Then the two of you talk and nail

6   down dates that are good for you and for your witnesses.  And

7   then I would like a status report on the docket.  I'll give

8   you plenty of time to get ahold of people, but by

9   December 20th as to I want the deposition schedule laid out

10  for me.

11          MS. DeJOSEPH:  Okay.

12          MR. CANNIZZARO:  Your Honor, I would just request,

13  you know, for the depositions of the plaintiff, it may be

14  easier, Your Honor, rather than have to obviously produce

15  him, sort of DOCCS for us to hold that deposition at Cayuga

16  Correctional, both myself and Ms. DeJoseph to go there,

17  rather than trying to produce him in any way.  So that would

18  be my only request.

19          MS. DeJOSEPH:  Yeah.

20          MR. CANNIZZARO:  I just wanted to make sure, it

21  definitely would be easier doing it that way.

22          THE COURT:  Yeah, that's what I envisioned, too, is

23  that you would go there to do his deposition.  If you have

24  trouble with the facility in getting it scheduled and you

25  need something from me to help you do that, let me know right

*Jennings v. Decker, et al. - 11/26/2019*                    23

1   away.

2              MR. CANNIZZARO:  Okay.

3              THE COURT:  When you're in touch, because I know

4   you have got to make arrangements with the facility to get

5   that done, but let me know if you have any problem with that.

6              But I'll ask, Ms. DeJoseph, if you would file the

7   status report by December 16th laying out the schedule of

8   deposition dates that you've got -- I'm sorry, I said

9   December 20th on that.

10             MS. DeJOSEPH:  Okay.

11             THE COURT:  Okay.  Just so that way it will keep it

12  on the forefront for both of you and before your calendars

13  get too full for January, and making sure that the witnesses

14  are all available and can be done too.

15             MS. DeJOSEPH:  Okay.  And just to be clear, you

16  want all of these done by January 31st, correct?

17             THE COURT:  Correct, yeah.  So I'm extending the

18  discovery deadline to January 31st for this limited discovery

19  that we've talked about, the five depositions including the

20  plaintiff, the personnel file stuff, the training, and then

21  the prior complaints as we've discussed.  That's the universe

22  of further discovery to be completed by January 31.

23             Mr. Cannizzaro, is there something else you need?

24             MR. CANNIZZARO:  Only I just want to clear this up.

25  I talked to Ms. DeJoseph about this specific to the Citizens

1   Review Board, and I'm trying to balance the needs of this

2   case with the discovery demands I'm doing here, but in terms

3   of the records from the Citizens Review Board, which

4   Ms. DeJoseph already addressed, I don't know if it would be

5   helpful for the Court, I was planning on serving possibly a

6   subpoena, a non-party subpoena on them.  I don't want to

7   complicate things more.  So it's really if Ms. DeJoseph

8   thinks she can get the records we're looking for from them

9   without that, I'm happy not to serve a non-party subpoena.

10  If the Court believes that would be helpful in terms of

11  motivating the Citizens Review Board, I'm happy to do that.

12          I guess my point is I was planning on doing it, I

13  don't want to do it if it's going to complicate things for

14  the Court or Ms. DeJoseph further specific to the Citizens

15  Review Board.  And I certainly would like to know the Court's

16  position on that if which way -- in other words, I don't want

17  to surprise you with a non-party subpoena.

18          THE COURT:  Right.  I don't want you serving a

19  subpoena until we know that Ms. DeJoseph has somehow hit a

20  dead-end there.

21          MR. CANNIZZARO:  Okay.

22          MS. DeJOSEPH:  I'll reach out to them today.  And

23  essentially I know you mentioned a deposition, Kevin, but if

24  I can get the records, if I can get the records from them, so

25  the prior substantiated complaints of racial profiling in

*Jennings v. Decker, et al. - 11/26/2019*                    25

1    that time period, does that satisfy what you're looking for?

2                MR. CANNIZZARO:  That, and also, you know, I have

3    the reports from the Citizens Review Board that had the

4    findings in this case.  However, the officer of personnel --

5    I suppose this can be addressed with a witness at trial, but

6    the officers that are named in the report are not named by

7    name; they're named by Officer One, Two and Three.  So I

8    think that could cause problems as we approach trial not

9    having the report naming the actual officers.  So that's the

10   only other piece, other than the prior complaints, that's the

11   only other piece of this that I would be looking for from the

12   Citizens Review Board.

13               THE COURT:  Would they even have the answer to

14   that, know exactly who Officers One, Two and Three are?  I

15   assume they would be Ocker, Decker and Ettinger.

16               MR. CANNIZZARO:  Your Honor, I intend to -- this is

17   something that Ms. DeJoseph and I went back and forth on.  If

18   we get to, without settling this in any way before we get to

19   the end of January, one of my intentions is to call the

20   administrator of the Citizens Review Board at trial as an

21   authenticating witness for the report itself.  And I went

22   back and forth with Ms. DeJoseph on whether a deposition was

23   needed before the close of discovery.

24               I think we can deal with this as a trial subpoena,

25   a trial witness at trial.  But I have some concern that not

1   being able to identify the officers beyond Officers One, Two,

2   Three may raise some admissibility/other evidentiary

3   objections at trial.

4          THE COURT:  I guess, Ms. DeJoseph, any -- are you

5   able to --

6          MS. DeJOSEPH:  I mean, he has gone back and forth

7   on whether or not it would be admissible at trial and our

8   position is that it is not.  What I am willing to do, though,

9   sort of to bypass the need to call witnesses, I would

10   stipulate to the authenticity of it.  I mean, I would reserve

11   my other objections.  I don't think it's admissible for

12   several, several reasons.  But in terms of what we produce,

13   and I will be -- it's part of the op file that I will be

14   turning over as well.  I will stipulate to the authenticity

15   of it and I think that will dispense the need to call a

16   witness assuming it is permitted into evidence.

17          THE COURT:  I think you can cross this bridge a

18   little later.  Why don't you see what you get,

19   Mr. Cannizzaro, and what Ms. DeJoseph is able to produce.

20          And I'll tell you what, I'll schedule another

21   conference call in this case just so we can circle back.

22   When I see that report of deposition dates, I'll schedule

23   another conference call probably after the depositions are

24   completed but before the end of the month of January and we

25   can address any other little hanging chads at that point if

1    there is anything left.

2                MS. DeJOSEPH:  Okay.

3                MR. CANNIZZARO:  Sure.

4                THE COURT:  All right.  Including that issue that

5    you just raised, Mr. Cannizzaro, about authenticating

6    records, okay.

7                MR. CANNIZZARO:  Sure.

8                MS. DeJOSEPH:  If I may, this might not be the

9    appropriate venue to have this discussion, please don't be --

10                THE COURT:  I do have people queued up for

11   something that was supposed to happen at 10:30.  So what do

12   you got?

13                MS. DeJOSEPH:  I apologize.

14                THE COURT:  That's okay.

15                (Remaining portion of the transcript has been

16   separated out and filed under seal.)

17                       *              *              *

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N


       I, EILEEN MCDONOUGH, RPR, CRR, Official Court Reporter in and for the United States District Court, Northern District of New York, DO HEREBY CERTIFY that I transcribed the foregoing proceedings from a digital recording, and that the foregoing is a true and correct transcript thereof.


_Eileen McDonough_
_____

EILEEN MCDONOUGH, RPR, CRR
Official U.S. Court Reporter