ORIGINAL 1

- VOLUME - ONE -

1    STATE OF NEW YORK:                    COUNTY COURT:

2    COUNTY OF ONONDAGA:    CRIMINAL TERM:    Part No. I:

3    - - - - - - - - - - - - - - - - - - - - -
                                           Box 505
4    THE PEOPLE OF THE STATE OF NEW YORK,
                              Indictment #: 2016-0961-1,
5                             superceding #: 2016-0061-1
                                    Index #: 16-0049
6
            vs.                              **TRIAL**
7
        **TONY W. JENNINGS,**
8                        Defendant.

9    - - - - - - - - - - - - - - - - - - - CPCS 3

10

11                       Criminal Courts Building
                         505 South State Street
12                       Syracuse, New York   13202
                         **February 6, 7 and 8, 2017**

13   BEFORE:    **HONORABLE STEPHEN J. DOUGHERTY,**
                         County Court Judge,
14                       and a jury

15   APPEARANCES:
                    William J. Fitzpatrick, Esq.
16                  District Attorney, Onondaga County
            BY:    JOSEPH J. CENTRA, ESQ.
17                 Assistant District Attorney
                   Criminal Courts Building, Fourth Floor
18                 Syracuse, New York   13202

19          BY:    JOHN A. LoFARO, ESQ.
                   Attorney for the Defendant           FILED
20                 307 South Clinton Street, #200
                   Syracuse, New York   13202           JUL 2 8 2017
21                                              ONONDAGA CO CLERKS OFFICE
                   The Defendant, present in person
22

23

24

25                       Reported By:
                         Patrick J. Reagan, RDR
                         Official Court Reporter

**TRIAL INDEX**

**People v. TONY JENNINGS**

February 6, 7, and 8, 2007

Indictment #:  2016-0961-1;   Index #: 16-049

| | Pages: | Volume: |
|---|---|---|
| Monday, February 6, 2017 | 2 | I |
| Tuesday, February 7, 2017 | 189 | II |
| Wednesday, February 8, 2017 | 322 | II |
| - Index/Exhibits | 363/364 | |

*          *          *          *

| Jury Selection: | Court | Centra | LoFaro | Challenges |
|---|---|---|---|---|
| Panel I | 22 | 88 | 95 | 117 |
| Panel II | 125 | 156 | 160 | 163 |
| Openings: | 169 | 192 | 196 | |

| People's Witness: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Jeremy Decker | 204 | 212 | 219/221 | 220 |
| Darrin Ettinger | 221 | 227 | X | |
| Jennifer Wilson | 233 | 242 | | |
| David P. Proud | 247 | 254 | | |
| People rest | 257 | | | |

| Defendant's Witness: | | | | |
|---|---|---|---|---|
| Howard Davis | 264 | 267 | 269 | 270 |
| Tony Jennings | 271 | 290 | | |
| Defense rests | 297 | | | |
| Closing - LoFaro | 301 | | | |
| Closing - Centra | 309 | | | |
| Charge discussions | 298/322 | | | |
| Court Charge | 328 | | | |
| Jury Notes | 351 - 358 | | | |
| Verdict | 358 | | | |

*          *          *

2

- Jennings - Trial - 2/6/17 -

1          MORNING SESSION - 2/6/17

2      (The following occurred in court at 10:48 p.m.)

3          THE COURT:  Let's have Mr. Jennings.  All right.

4  Ready?

5          THE CLERK:  Do you want me to call down?

6          THE COURT:  Yes.

7          MR. LOFARO:  Judge, could I address two things

8  before we get going?

9          THE COURT:  With him?

10         MR. LOFARO:  Not really.

11         THE COURT:  Too late.  To the Bench, please?

12         MR. LOFARO:  Okay.  We can do it in open court.

13         THE COURT:  We are here in the case of People

14  versus Tony Jennings.  Mr. Jennings is here with Mr.

15  LoFaro.  The People represented by Mr. Centra.  And we are

16  scheduled for a jury trial this morning.  Mr. Jennings, you

17  could have a seat.

18         We went through all our preliminary matters last

19  week.  We went through everything we need to go through.  I

20  did receive the Grand Jury minutes.  I believe we have

21  given both sides a copy of my decision on the sufficiency.

22  I did find the Grand Jury minutes to be sufficient for the

23  two charges that have come out as far as the indictment is

24  concerned:  Possession of controlled substances third

25  degree, and criminal possession of controlled substance in

3

- Trial procedure discussion - 2/6/17 -

1    the fifth degree.  So we are ready to go forward.  And Mr.

2    Centra, anything else we need to put on the record this

3    morning?

4              MR. CENTRA:  Yes, Your Honor.  I have turned over

5    to defense counsel the requisite Rosario material, that's

6    included the Grand Jury minutes, the previous testimony

7    from Officer Decker from the previous Grand Jury

8    presentment, and also the lab's Rosario.

9              THE COURT:  All right.  Thank you.  And Mr.

10   LoFaro?

11             MR. LOFARO:  Two issues, Judge.  As the Court's

12   well aware, my client and I do not see eye to eye on a

13   number of issues.  But the two that are immediately most

14   pressing are the laundry list of witnesses that he had

15   provided my office.  I planned on calling -- it was his

16   desire to testify himself.

17             THE COURT:  Sure.

18             MR. LOFARO:  That's the witness that I had

19   planned on calling.  Beyond, beyond that issue, there is

20   the issue of the suppression hearing minutes, which I have

21   not ordered, nor has Mr. Centra.  I don't believe that I

22   need them.  But I know that's a sticking point with my

23   client.  And I don't know where that will leaves us, Judge.

24             THE COURT:  Well, I will say this.

25             THE DEFENDANT:  Excuse me, Your Honor?

- Trial procedure discussion - 2/6/17 -

4

1      THE COURT:  Hold on, Mr. Jennings.  I will say

2  this, Mr. LoFaro, as an attorney, John, how long have you

3  been admitted to practice law?

4      MR. LOFARO:  26 years, I think.

5      THE COURT:  All right.  Over a quarter century,

6  correct?

7      MR. LOFARO:  Correct, Your Honor.

8      THE COURT:  You conducted the suppression

9  hearing?

10      MR. LOFARO:  I did, Your Honor.

11      THE COURT:  You have your notes from that,

12  whatever notes you took?

13      MR. LOFARO:  I do, and a 17-page decision as

14  well, Judge.

15      THE COURT:  You have the decision from the Court,

16  which encapsulates the testimony at the hearing, correct?

17      MR. LOFARO:  Correct.

18      THE COURT:  Was it Officer Decker that testified

19  at the suppression hearing?

20      MR. CENTRA:  Yes, Your Honor.

21      THE COURT:  Same individual that testified at the

22  Grand Jury?

23      MR. CENTRA:  Yes, Your Honor.

24      THE COURT:  You have the minutes in the Grand

25  Jury now?

- Trial procedure discussion - 2/6/17 -

1          MR. LOFARO:  I do, Your Honor.

2          THE COURT:  They have been turned over?

3          MR. LOFARO:  They have, Judge.

4          THE COURT:  And Mr. Jennings testified at the

5    suppression hearing?

6          MR. LOFARO:  That's correct.

7          THE COURT:  He also testified at the Grand Jury?

8          MR. LOFARO:  He did.

9          THE COURT:  You have his testimony for that?

10          MR. LOFARO:  I do, Judge.

11          THE COURT:  And you feel, Mr. LoFaro, more than

12    prepared to go forward and try this case with the resources

13    that are available to you, is that correct?

14          MR. LOFARO:  That's correct, Your Honor.

15          THE COURT:  All right.  Thank you.  Mr. Jennings,

16    do you want to say something?

17          THE DEFENDANT:  Yes, Your Honor.  I feel that I

18    need to view those as well so I could also prepare the

19    proper defense.  Because what the Officer said at the

20    suppression hearing is totally different than what he said

21    at the Grand Jury.  So I feel that is vital for me to

22    prepare a proper defense.  And I still haven't had the

23    actual -- I haven't seen the indictment.  The bill that was

24    signed for me testifying from the first indictment, and the

25    second indictment.  I have no police reports.  Nothing

- Trial procedure discussion - 2/6/17 -

1    involving any type of documentation from what these

2    officers said and stated in this case.  I don't have

3    anything.  And I have asked for the suppression hearing

4    minutes on numerous occasions.  And was denied those by

5    Judge Hafner.  And was told that I would be presented with

6    those.  But I haven't had the opportunity to get those yet.

7    That's vital because there is conflicting testimony

8    provided by the officers.

9            THE COURT:  Today, all we are doing is picking a

10   jury.  That's all.  We are going to May 17th?

11           THE CLERK:  And May 19th.

12           THE COURT:  May 19th?

13           THE CLERK:  A-hum.

14           THE COURT:  Here you go.  I am going to need

15   these back at some point, but for Mr. Jennings, so we don't

16   hold this up.

17           THE DEFENDANT:  So.

18           THE COURT:  Don't, don't.  You have a bad habit,

19   Mr. Jennings, of interrupting me.  You don't want to do it.

20   I have given Mr. LoFaro, though, he has represented as an

21   officer of the Court, he doesn't need them to defend this

22   case.  Mr. Jennings has asked for them.  I have given Mr.

23   Jennings my copy of the suppression hearing minutes for

24   both dates.  So there you go.  You have those now.

25           Also Mr. Jennings, we do have an issue that

- Trial procedure discussion - 2/6/17 -

1    you're not in civilian clothes, I understand you're okay

2    with that?

3                THE DEFENDANT:  Yes.

4                THE COURT:  All right.  I will, at your request,

5    Mr. LoFaro, indicate to the jurors who are going to be

6    aware that Mr. Jennings is in custody, and that they are

7    not to make any negative inference as to why or the reason

8    he is in custody.  Do you want that?

9                MR. LOFARO:  Yes.  Thank you, Your Honor.

10               THE COURT:  Okay.  So I will do that.  We do have

11   clothes for you, Mr. Jennings, if you want to wear them.

12   We have a sweater, we have different shoes.  You could turn

13   the pants inside out.  And you could have clothing that

14   would not indicate readily to the jury that you're in

15   custody, if you would like to see those?

16               THE DEFENDANT:  I understand.

17               THE COURT:  You don't want them?

18               THE DEFENDANT:  No.

19               THE COURT:  Okay.  That's fine.  Mr. LoFaro,

20   anything else?

21               MR. LOFARO:  Your Honor, the only other issue is

22   the witness list.  I think the witnesses that he wants to

23   call would actually be injurious to the case.  And if he

24   wants to testify and which I know it is his intention, I

25   don't have a problem calling him as a witness because it's

8

- Trial witness discussion -

1    his desire and it is his right, but I don't plan on calling

2    any others, Judge.

3              THE DEFENDANT:  I don't believe that, Your Honor.

4    I believe that those witnesses are dire involved, dire to

5    this case.

6              THE COURT:  Let me ask this.

7              THE DEFENDANT:  -- to speak on my behalf.  I

8    haven't had the time to sit down with Mr. LoFaro because he

9    hasn't, we haven't actually sat down to prepare a proper

10   defense, Your Honor.

11             THE COURT:  I don't believe that to be true, Mr.

12   Jennings, only because I have looked at the file.  I have

13   seen the motions that have been put forward.  I have read

14   the Grand Jury minutes.  I have read the testimony at the

15   hearing.  I can't imagine anything else Mr. LoFaro could

16   have done so far to get us to the point.  He somehow got

17   the district attorney to give an offer which I am not sure

18   I would go along with.  That has been rejected.  It's your

19   right, wish here to have a jury trial.

20             As far as the witnesses you have on your list, at

21   some point Mr. Centra can say to me, Judge, I want an offer

22   of proof as to whether these witnesses are pertinent at all

23   to this case.  We could do that.

24             As far as the witness list, I just have to give

25   the jury the names of potential witnesses, potential

- Trial witness discussion -

1    witnesses.  Any of the potential witnesses, were they there
2    at the time of the stop?
3          MR. LOFARO:  The one witness was, was the other
4    passenger.
5          THE DEFENDANT:  Willie Jones.
6          THE COURT:  Okay.  That's, now I have the name of
7    Willie Jones.  Who else do you have, John?  I am asking Mr.
8    LoFaro, not you, Mr. Jennings.
9    (Attorney/client conference.)
10          MR. LOFARO:  His boss.  Which again, I don't know
11   what the relevancy of an employer would be, Your Honor.
12          THE COURT:  What's his name?
13          THE DEFENDANT:  Howard Davis.
14          MR. LOFARO:  Howard Davis, Your Honor.
15          THE DEFENDANT:  This is making a statement that I
16   made a statement that I was selling drugs and I was out of
17   work.  And work was slow.  And my employer is willing to
18   testify on my behalf in regards to my working at the time
19   of the arrest and showing and proving that I was on the
20   payroll.
21          THE COURT:  All I want right now is the names of
22   the witnesses.
23          THE DEFENDANT:  Okay.
24          THE COURT:  I don't care anything about them.  I
25   haven't asked Mr. Centra why he is calling any of his

10

- Trial witness discussion -

1      witnesses.  I am not going to ask you why.  You may or may

2      not be calling these other.  I have Willie Jones.  I have

3      Howard Davis.  Do you have anybody anyone else?

4                 MR. LOFARO:  Anyone else?

5                 THE DEFENDANT:  Yes.  David Chapman.

6                 THE COURT:  David -- is it Chaplain?

7                 THE DEFENDANT:  Chaplain.

8                 THE COURT:  Spell it.

9                 THE DEFENDANT:  D-a-v-i-d.  C-h-a-p-l-a-i-n.

10                THE COURT:  Thank you.  Anybody else?

11                THE DEFENDANT:  Hatisha Holmes.

12                THE COURT:  Spell that, Hatisha?

13                THE DEFENDANT:  H-a-t-i-s-h-a.

14                THE COURT:  Yes.

15                THE DEFENDANT:  H-o-l-m-e-s.

16                THE COURT:  Okay.  Anyone else?

17                THE DEFENDANT:  Officer Darrin Ettinger.

18                THE COURT:  He is on the list.

19                THE DEFENDANT:  Okay.  Frank Fowler.

20                THE COURT:  Chief of police?

21                THE DEFENDANT:  Yes.

22                THE COURT:  Anybody else?

23                THE DEFENDANT:  Mallory Livingston.

24                THE COURT:  M-a-l-l-o-r-y?

25                THE DEFENDANT:  Yes.

11

- Trial witness discussion -

1          THE COURT:  And Livingston is

2     L-i-v-i-n-g-s-t-o-n.  E or no E?

3          THE DEFENDANT:  No E.  No E.

4          THE COURT:  Livingston, okay.  Anybody else?

5          THE DEFENDANT:  That's it, Your Honor.

6          THE COURT:  All right.  Thanks.  I have 10

7     potential witnesses.  All with regards to that.  All I do

8     is ask counsel for an outside list of people that may

9     testify.  I will read those names to the jury.  And once we

10    are done with the People's case, if we get beyond any

11    motion to dismiss, we can talk about the relevancy of any

12    of those witnesses.

13          Mr. LoFaro, anything else?

14          MR. LOFARO:  Nothing further, Your Honor.

15          THE COURT:  All right.  And you both counsel

16    understand that they have 15 peremptory challenges,

17    correct?  And what I would like to do, gentleman, is this.

18    We will all come to the podium when we are ready.  After

19    the questions, we will come to the podium.  And I will ask

20    the questions that are listed on the podium.  Those are

21    more personal questions.  I will ask them those questions.

22    They will all have a seat.

23          When we come up for the challenges.  What I do is

24    I am going to have 21 jurors sitting here.  We are only

25    going to discuss the number that we need.  So for the

- Trial procedure discussion -

1   first, when I bring you up the first time, we are going to

2   talk about 1 through 12.  Let's say we get three.  So now

3   we need nine.  So then we will talk about the next nine.

4   We are not going to challenge all 21.  You run out of all

5   your challenges, we are only going to talk to the number

6   that we need at that time.  And it will be very

7   straightforward when we get up there.

8                And I think we are ready to go.  You guys ready

9   to go?  I am ready to go.  I am ready to bring the jury up

10  and get started.

11               As far as the lab results, John, are we ready to

12  stipulate anything with regards to that?  Whether it was

13  indeed what is it, what was the results of the lab?  I

14  don't know if you wanted to do that, Mr. Centra?  Joe, I

15  don't know if you want to.

16               THE DEFENDANT:  Excuse me, Your Honor.  I have a

17  question.  Which indictment is going to be presented?

18               THE COURT:  The most recent.  Possession

19  controlled substance third.  Possession controlled

20  substance fifth.

21               THE DEFENDANT:  And the first one?

22               THE COURT:  We don't talk about that.  That's

23  gone.  This has superseded that.

24               THE DEFENDANT:  If it superseded it?

25               THE COURT:  Yes.

13

- Trial procedure discussion -

1          THE DEFENDANT:  I am not understanding.

2          THE COURT:  There was an indictment.  The one

3   count was gone.  They went in and got a new indictment.

4   And all you need to know, Mr. Jennings, is what you're

5   fighting and which Mr. LoFaro has been fighting along.

6          THE DEFENDANT:  No.

7          THE COURT:  Don't interrupt me, Tony.  Criminal

8   possession of controlled substance third and the lesser

9   count of criminal possession of controlled substance fifth

10  degree.  There was a C.  The C is gone, through the work of

11  Mr. LoFaro, by the way.  The C is gone.  And now we have a

12  D-felony.  All right?

13         THE DEFENDANT:  The C is gone?  And the third,

14  the third that was charged?

15         THE COURT:  That's still.

16         THE DEFENDANT:  It's still there but the one

17  charge was dismissed?

18         THE COURT:  Yes.

19         THE DEFENDANT:  The Judge said that that evidence

20  was suspicious to be presented to the jury.  It was in his

21  decision order.  This is what he said.  I am not

22  understanding why that's not being presented.  Because the

23  lab report was in when he made that decision, that

24  determination, so.

25         THE COURT:  All I know, Mr. Jennings, is it's to

14

- Trial procedure discussion -

1   your benefit to have the C gone, and the D in its place,

2   that's to your benefit.  That's why we did it that way.

3                    THE DEFENDANT:  Actually, Your Honor, it's not to

4   my benefit because it's showing that it's going from one

5   substance to a whole totally different substance, and two

6   different weight factors.

7                    THE COURT:  It's not showing anything.  Because

8   the jury is completely unaware of any of the legal

9   machinations.  They don't know these are the two counts

10  that were submitted.  Those are the two counts that we are

11  going to proceed on.

12                   And could we have the jury, please.

13  (The following occurred in court at 11:02 a.m.:)

14                   SHERIFF DEPUTY:  Judge, just to let you know, he

15  doesn't want the handcuffs removed.

16                   THE COURT:  Okay.  Mr. Jennings, you don't want

17  the handcuffs removed?

18                   THE DEFENDANT:  No.

19                   THE COURT:  You're going to be able to take notes

20  with those on?

21                   THE DEFENDANT:  Yes.

22                   THE COURT:  As far as the issue goes, Mr.

23  Jennings has decided to wear his jail garb, which is fine.

24  We will make an admonition to the jury that was requested

25  by Mr. LoFaro.  As far as the handcuffs go, that's not a

- Trial procedure discussion -

1    voluntary thing, Deputy, that's not his decision.  That's

2    yours, isn't it?

3             SHERIFF DEPUTY:  It's up to the Court.

4             THE COURT:  We are not going to have Mr. Jennings

5    sitting there in handcuffs because there is no reason to

6    have him there in handcuffs.  There is no security issues

7    that have been made aware of by the court officers or the

8    deputies.  So I am going to ask that the handcuffs be

9    removed for Mr. Jennings.

10            THE DEFENDANT:  I am not taking the cuffs off.  I

11   had the handcuffs on in the other trial.

12            THE COURT:  Mr. Jennings, it's not your choice.

13            THE DEFENDANT:  I am not taking the cuffs off.  I

14   am not taking the handcuffs off.  Don't take the handcuffs

15   off, any other time.  There is no reason why these

16   handcuffs come off.  I am keeping the handcuffs on.  I am

17   not changing my clothes.  This is how I am going to stay.

18   There is no reason to take these handcuffs off.  Please

19   don't take these handcuffs off.  Don't fight with me.

20   Please don't take these handcuffs off.  Please don't take

21   the handcuffs off me of.  Oh, come on, man.

22            SHERIFF DEPUTY:  Stop it.

23            THE DEFENDANT:  Leave the cuffs on me.  You're

24   going to break my arm, man.  You're going to break my arm.

25            THE COURT:  Deputies, deputies.  I will make a

- Trial procedure discussion -

1   record.  You can stop.  I will make a record of it.

2          Mr. Jennings is being 100 percent unreasonable

3   about this.  He wants to have the handcuffs on in front of

4   the jury.  It's his choice.

5          Now to have them on -- and if Mr. Jennings,

6   certainly, we are not going to say anything negatively

7   about the custody officers or anyone else because this is

8   your decision.

9          THE DEFENDANT:  Yes, this was my decision.

10          THE COURT:  Mr. Jennings, don't interrupt me.  If

11   you want to stay at this trial, you need to stop

12   interrupting me or you're going to not be here for the

13   trial, okay?  All right.

14          It's your right to be here.  But I make the

15   orders in this Court.  I have to keep the order.  And

16   basically, what you have done this morning is thwarting my

17   attempts to keep the order in the court because the

18   deputies don't feel you need to have the handcuffs on.  I

19   don't feel you need to have the handcuffs on.  For whatever

20   reason, you're choosing to do this.  It doesn't make any

21   sense to the Court or to the court staff why we are doing

22   this.

23          And now, we made an attempt to let you be

24   free-handed in front of the jury, so you can take whatever

25   notes you need to take.  You can use your hands any way you

- Trial procedure discussion -

1  would like to use them.  And you have chosen against

2  everyone's better judgment not to do so.

3          THE DEFENDANT:  I can take notes with the

4  handcuffs on, Your Honor.  You're forcing the officers.

5          THE COURT:  Mr. Jennings, tell me the reason you

6  have to have handcuffs on?

7          THE DEFENDANT:  What reason do I need them off?

8          THE COURT:  Tell me the reason you want to have

9  them on?

10          THE DEFENDANT:  Because I have always had them on

11  every time I come into the courtroom, Your Honor.

12          THE COURT:  That doesn't make any sense.

13          THE DEFENDANT:  Every time I come to Court, I

14  always had them on.

15          THE COURT:  I know that.  Why do you want to have

16  them on?

17          THE DEFENDANT:  Why do I have to have them off?

18  I want them on.  I always, usually have them on.  I don't

19  want nobody thinking, nobody, I don't want nobody thinking

20  nothing else, I am trying to do any other, Your Honor.

21  That's why I chose to remain in the handcuffs.

22          THE COURT:  Absolutely senseless.  We will

23  continue.  Let's have the jury, when they are ready.

24          THE DEFENDANT:  I had an officer almost try to

25  break my arm.

18

- Trial procedure discussion -

1        THE COURT:  No, they didn't.  Mr. Jennings, don't

2    say things that aren't true.  I watched the whole thing.

3        THE DEFENDANT:  Look, Your Honor.  They are

4    cutting my skin.

5        THE COURT:  Mr. Jennings?

6        THE DEFENDANT:  They're cutting my skin.

7        THE COURT:  You were fighting the officers.

8        THE DEFENDANT:  To keep the officers from --

9        THE COURT:  Mr. Jennings, Mr. Jennings, the

10    officers were under a court order to remove the handcuffs.

11    You were thwarting my court order that I gave to them.  So

12    don't be blaming the officers for what they did.  They were

13    doing what I ordered them to do.  And you, sir, were

14    thwarting my order.  So don't talk about them about

15    breaking your arm.  You were thwarting a court order.  And

16    I need to tell you, sir, I know Mr. LoFaro will tell you,

17    if you continue to interrupt the Court, you will be

18    removed, and you won't be here for your trial.

19        Mr. Centra, as far as the lab testimony that's

20    going to come from Miss Wilson?

21        MR. CENTRA:  Yes, Your Honor.

22        THE COURT:  And I don't know if you and Mr.

23    LoFaro had had a chance to discuss whether we are going to

24    stipulate to the contents or whether you want to put that

25    on without a stipulation?  It certainly doesn't matter to

19

- Trial procedure discussion -

1    me.  I know you're only intending to call four witnesses,

2    so.

3                MR. CENTRA:  I mean, Judge, it should be a pretty

4    brief direct examination.

5                THE COURT:  Okay.  That's fine.  I don't see any

6    issue there.

7    (Pause for jurors entering the courtroom from 11:09 until

8    11:18 a.m.)

9                THE COURT:  Good morning, folks.  You who can't

10   see me behind the TV, you're probably better off.  My name

11   is Steve Dougherty.  I am one of our County Court judges.

12   And we are here today to proceed with the trial of the

13   People of the State of New York versus Tony Jennings.

14                Folks, I am going to start out by saying, and I

15   know I speak for the attorneys, Mr. Jennings, our court

16   staff, I just want to thank all of you for being here.  I

17   know it's not a great experience to come down and be herded

18   around and everything that's happened.  But we can't

19   proceed with one of our basic constitutional rights, that

20   is, trial by jury, without you.

21                We are going to end today with 14 of you being

22   chosen, and the rest of you being excused for 10 years.

23   But without the 70 of you being here, we can't do what we

24   are about to do.

25                And one of the judges before me used to say that

- Jury selection - 2/6/17 -

1    trial by jury is the second most important duty of

2    citizenship, second only to military service at the time of

3    war.  I couldn't agree with that more.  Because our

4    constitution is based on the premise of trial by jury.  And

5    here you are participating.

6              I know that this is an inconvenience probably for

7    every one of you.  And we will talk about those questions.

8    We will talk about different things.  But what I am going

9    to say to you is, we need you.  All right.  We need you to

10   have this trial.  We need you to be able to do this

11   process.  So, I am going to ask you to set aside, if you

12   can, set things aside, we are, today is Monday.  I fully

13   expect this case to be done by no later than Thursday, all

14   right.  Unless something catastrophic happens, which I

15   don't expect.  We will done be done by Thursday at the

16   latest.  I am going to say Friday at the outside, just to

17   be safe.  But it's going to be over this week, most likely

18   Wednesday or Thursday.  Okay.  So with that in mind, again,

19   I thank all of you.

20             There are certain things that I have to read to

21   you that I am required to read.  I am going to do that now.

22   But I did want to thank you on behalf of counsel and Mr.

23   Jennings.  I am going to explain to you the various stages

24   of a trial, what you may expect to see and hear during the

25   trial, so that you may better understand what's taking

- Jury selection - 2/6/17 -

1  place.  I am going to remind you of some of the basic

2  principles of law that apply to this, and to all criminal

3  trials in New York State.  At the end of the case, I will

4  remind you again of those principles.  I am going to define

5  the crimes charged, explain the law that you must follow,

6  and list for you the elements that the People must prove

7  beyond a reasonable doubt.

8       And folks, remember, during jury selection, I

9  will explain that the elements of a charged crime is a term

10  that refers to the various parts of our laws, written

11  definitions of a crime, and in addition to the

12  identification of the person who committed that crime.

13       At some point, folks, we will talk to each one of

14  you, I will bring you up the lectern and ask you five

15  questions.  Those questions are listed on the lectern.  I

16  am going to read those to you, out loud, and we will do

17  that.  And after we get through those, we will have you

18  take a seat.

19       As I said, the name of the case here is the

20  People of the State of New York against Tony Jennings.  The

21  words "People of the State of New York" in that title mean

22  the government of New York State.  The fact that this

23  action is brought in the name of the People, or that the

24  evidence is presented by a public official does not in any

25  way indicate that the public wants a specific verdict.  The

- Jury selection - 2/6/17 -

1    People are served by whatever verdict is justified by the

2    evidence.   The People here are represented by the District

3    Attorney of Onondaga County, William Fitzpatrick.   He is

4    represented today by assistant district attorney Joseph

5    Centra.

6                MR. CENTRA:   Good morning, everyone.

7                THE COURT:   The defendant in this case is Tony

8    Jennings, who is sitting here to my left.

9                THE DEFENDANT:   Good morning, everybody.

10               THE COURT:   And the defendant is represented by

11   his attorney, Mr. John LoFaro.

12               MR. LOFARO:   Good morning.

13               THE COURT:   The defendant in this case is charged

14   with two crimes:   That would be criminal sale of a

15   controlled substance in the third degree; and criminal sale

16   of -- I am sorry, criminal possession of a controlled

17   substance in the fifth degree.   At the end of the trial, I

18   will give you a detailed instruction on the crimes charged.

19               I have given you this brief description of the

20   charge only for the purpose of allowing you to consider

21   whether there is anything about the nature of the charge

22   that would affect your ability to be a fair and impartial

23   juror.   You're not to use the definition or the charge

24   itself for any other purpose other than to see if you could

25   be fair and impartial.

23

- Jury selection - 2/6/17 -

1    The case comes to us by way of what's called an

2    indictment.  An indictment is a document.  It's a piece of

3    paper that contains an accusation.  Neither the indictment

4    itself nor the fact that an indictment has been filed

5    constitutes evidence.  The indictment has been filed

6    against the defendant.  And the defendant has answered that

7    he is not guilty of the accusation.  This trial is to be

8    conducted for you to decide whether the defendant is guilty

9    or not guilty.

10    As I said, the jury is composed of 12 people plus

11    we hope to have two alternate jurors.  The first person

12    called who is sworn as a juror will serve as our jury

13    foreperson.

14    The jury's responsibility is to evaluate fairly

15    the testimony and other evidence presented at the trial, to

16    apply the law to the facts, and to decide whether the

17    People have proven the defendant guilty beyond a reasonable

18    doubt.

19    In your deliberations, you may not consider or

20    speculate about matters related to sentence or punishment.

21    If there is a verdict of guilty, it is solely my

22    responsibility to impose an appropriate sentence.

23    My role at trial, ladies and gentlemen, the role

24    of any judge is to help assure a fair and orderly trial in

25    accordance with our law.  I do that by presiding over the

- Jury selection - Court - preliminary

1    trial, deciding questions of law that arise between and

2    among the parties, and explaining to you the jury, as I am

3    now, what the law is that the jury must accept and follow.

4            Thus, we are both judges in this case.  It's

5    important to realize that we judge different things.  You,

6    the jury, judge the facts of the case in order to reach a

7    verdict of guilty or not guilty.  And I judge the law,

8    meaning I decide the questions of law and instruct you, the

9    jury, on the law.   It is not my responsibility to judge

10   the facts here; that is yours.  You and you alone, are the

11   judges of the facts.  You and you alone are responsible for

12   deciding whether the defendant is guilty or not guilty.

13           So nothing I say or how I say it, and no ruling I

14   make on the law is intended to be nor should it be

15   considered by you as an expression of any opinion on the

16   facts of the case, or of whether the defendant is guilty or

17   not guilty.

18           When you judge the facts, you are to consider

19   only the evidence.  The evidence in a case includes the

20   testimony of the witnesses from the witness stand, and any

21   exhibits which are received in evidence.

22           During the trial, you're going to hear me and

23   perhaps the lawyers use the term:  The elements of a crime.

24   Let me explain the meaning of that term.  What constitutes

25   a crime is defined by the written law of New York State.

25

- Jury selection - Court - preliminary -

1    Each written definition normally contains several parts,

2    including, generally:  The specification of the conduct

3    prohibited; the state of mind which the conduct must be

4    performed; and in some instances, the result of the

5    conduct.  Those parts of the written definition of a

6    charged crime plus the identification of a person as the

7    one who committed the crime charged are what we mean by the

8    term elements of the crime charged.

9         We now turn to the fundamental principles of law

10   which apply in all criminal trials:  The presumption of

11   innocence, the burden of proof, and the requirement of

12   proof beyond a reasonable doubt.  Throughout these

13   proceedings the defendant is presumed to be innocent.  As a

14   result, you must find the defendant not guilty unless on

15   the evidence presented at this trial you conclude that the

16   People have proven the defendant guilty are beyond a

17   reasonable doubt.

18        The defendant is not required to prove that he is

19   not guilty.  In fact, the defendant is not required to

20   prove or disprove anything.  To the contrary, the People

21   have the burden of proving the defendant guilty beyond a

22   reasonable doubt.  That means, before you can find the

23   defendant guilty of a crime, the People must prove beyond a

24   reasonable doubt every element of the crime, including that

25   the defendant is the person who committed the crime.  The

- Jury selection - Court - preliminary -

1    burden of proof never shifts from the People to the

2    defendant.  If the People fail to satisfy their burden of

3    proof, you must find the defendant not guilty.  If the

4    People satisfy their burden of proof, you must find the

5    defendant guilty.

6              What does the law mean when it requires proof of

7    guilt beyond a reasonable doubt -- the term we hear all the

8    time.  The question is, what does the law mean?  The law

9    uses the term proof beyond a reasonable doubt to tell you

10   how convincing the evidence of guilt must be to permit a

11   verdict of guilty.  The law recognizes that in dealing with

12   human affairs there are very few things in this world that

13   we know with absolute certainty.  Therefore, the law does

14   not require the People to prove a defendant guilty beyond

15   all possible doubt.  On the other hand, it's not sufficient

16   to prove that the defendant is probably guilty.  In a

17   criminal case, the proof of guilt must be stronger than

18   that.  It must be beyond a reasonable doubt.  A reasonable

19   doubt is an honest doubt of the defendant's guilt for which

20   a reason exists based on the nature and quality of the

21   evidence.  It's an actual doubt, not an imaginary doubt.

22   It is a doubt that a reasonable person acting in a manner

23   of this importance would be likely to entertain because of

24   the evidence that was presented or because of the lack of

25   convincing evidence.  Proof of guilt beyond a reasonable

- Jury selection - Court - preliminary -

1   doubt is proof that leaves you so firmly convinced of the

2   defendant's guilt that you have no reasonable doubt of the

3   existence of any element of the crime, or of the

4   defendant's identity as the person who committed the crime.

5        As the judges of the facts, you and you alone

6   determine the truthfulness and accuracy of the testimony of

7   each witness.  You must decide whether a witness told the

8   truth and was accurate, or instead testified falsely or was

9   mistaken.  You must also decide what importance to give to

10  the testimony you accept as truthful and accurate.

11       It is the quality of the testimony that is

12  controlling, not the number of witnesses who testify.  And

13  I will give you more instruction on credibility of

14  witnesses at the end of the trial.

15       In this case, I expect you will hear the

16  testimony of police officers.  The testimony of a witness

17  should not be believed solely and simply because a witness

18  is a police officer.  And at the same time, a witness'

19  testimony should not be disbelieved solely and simply

20  because a witness is a police officer.  You must evaluate a

21  police officer's testimony the same way you would evaluate

22  the testimony of any other witness.

23       Your verdict, ladies and gentlemen, whether

24  guilty or not guilty, must be unanimous.  That is, each and

25  every juror must agree to -- you must render a verdict

- Jury selection - Court - preliminary -

1  separately, and specifically upon each charge submitted to

2  you.

3          Since 12 people seldom agree on anything

4  immediately, to reach a unanimous verdict, you must

5  deliberate with the other jurors.  That means, you should

6  discuss the evidence and consult with each other.  Listen

7  to each other.  Give each other's views careful

8  consideration and reason together when considering the

9  evidence.  And when you do deliberate, you should do so

10  with a view towards reaching an agreement, if that can be

11  done without surrendering individual judgment.  Each of you

12  must decide the case for yourself, but only after a fair

13  and impartial consideration of the evidence with the other

14  jurors.  You should not surrender an honest view of the

15  evidence simply because you want the trial to end, or you

16  are outvoted.  At the same time, you should not hesitate to

17  re-examine your views and change your mind if you become

18  convinced that your position was not correct.

19          There are admonitions that I am going to be

20  giving you so many times, you will be able to repeat them

21  back to me.  But this is the first time.  Our law requires

22  jurors to follow certain instructions in order to help

23  assure a just and fair trial.  Let me give those to you:

24  You are not allowed to converse either among yourselves or

25  with anyone else about anything related to this case.

29

- Jury selection - Court - preliminary -

1    You may tell your loved ones, the people you work

2    with, people you live with, that you are in a trial, you're

3    in a criminal trial and that you have to be in court.  But

4    you may not talk with them or anyone else about anything

5    related to this case.  We want you folks to form your own

6    opinion on this case from the evidence, from the witness

7    stand, or exhibits.

8    Do not, at any time during the trial, request,

9    accept, agree to accept, or discuss with any person the

10    receipt or acceptance of any payment or benefit in return

11    for supplying any information concerning the trial.  You

12    must promptly report to me any incident within your

13    knowledge involving any attempt by any person to improperly

14    influence you, or any member of the jury.  You can report

15    it directly to me or to one of my court officers.

16    Do not visit or view the premises or place where

17    the charged crime was allegedly committed.  And we will

18    hear about that during the trial.  You must not visit those

19    places or any other premises or places involved in this

20    case.  And something that's come up recently, more recently

21    in the last 10 years or so, we are not going to do any

22    Internet searches, any search at all on any computers about

23    the facts of this case.  No Internet, Google search, none

24    of that, all right?  Any proof in this case is going to

25    come within this courtroom.

- Jury selection - Court - preliminary -

1      Do not read, view or listen to any accounts or

2   discussions of the case reported in the media.  I don't

3   believe there will be any.  But if there is, you just make

4   sure that if you see something, you put it aside.  If you

5   see something on the television or the radio, you turn that

6   off.  Do not attempt to research any fact, issue or law

7   related to the case, whether by discussion with others by

8   research in a library or on the Internet or any other means

9   or source.

10      You may not provide any information about the

11   case to anyone by any means whatsoever.

12      And folks, just by way of explanation, I know

13   common sense, it's a reason we have these rules, and common

14   sense will tell you why, but our law does not permit jurors

15   to converse with anyone else about the case, or permit

16   anyone to talk to them about the case.  Because only the

17   jurors are authorized to render a verdict.  Only you have

18   been found to be fair.  And only you have promised to be

19   fair.  No one else has been so qualified.

20      And as far as the attorneys are concerned, I have

21   admonished the attorneys not to talk to you during the

22   trial.  I think it's a good morning, of course.  Good

23   afternoon.  But outside this courtroom, if you see them,

24   you could have -- a greeting is fine.  But we can't have

25   them talking to you.  You understand why.  We can't have

- Jury selection - Court - preliminary -

1    you talking to the attorneys.  We can't have the attorneys

2    talking to you.  You understand that.  Hese rules are

3    designed to help guarantee a fair trial.  And our law

4    accordingly sets forth serious consequences if the rules

5    are not followed.   Nd again, I trust you understand and

6    appreciate the importance of following these rules, in

7    accordance with your oath and promise.  I know that you

8    will do so.

9             And now what I am going to do, folks, I am going

10   to give you a little bit of an exercise.  I am going to

11   have you all stand up so I can swear you all in, all right?

12   If you could switch your coats to your left hand, I will

13   have you all raise your right hand for me.

14   (The Court swore in all the prospective jurors in the

15   courtroom.)

16             THE COURT:  I do.  All right.  Sit right back

17   down.  Thank you.

18             Now folks, what we are going to do is I am going

19   to ask my court clerk, Diane Helbig, she is going to call

20   your name, your number.  I am going to be over here at the

21   podium with the attorneys, with Mr. Jennings and with Mr.

22   Reagan, who is our court reporter.  And you're going to be

23   asked and I am going to ask them to you now, they are on

24   the podium, the following five questions.  And, if you say

25   "yes" to any one of them, we will talk about it a little

- Voir dire - Panel I - Court -

1    more.  If you have a "no" to all five, we will have you

2    have a seat.  And our court officer Chrissie Walsh will

3    tell you where to sit.

4              Here are the five questions going to be asked:

5    Have you, a close family member, or close friend ever been

6    the victim of a crime?  Victim of a crime.

7              No. 2,  Have you, any close family member, or any

8    close friend, ever been charged with a crime, or the

9    violations of driving while impaired, harassment or

10   disorderly conduct?  Charged with a crime.

11             3,  Do you have any medical condition, physical

12   limitation, or exceptional circumstance that you believe

13   would prevent you from serving as a juror this week?

14             4,  Have you heard anything or read anything

15   about this particular case?

16             5,  Is there any reason you cannot be fair to

17   both sides in this case?

18             So now what we will do is I am going to let Mr.

19   Reagan get set up.  We will get over there with the

20   attorneys.  And we will have Miss Helbig call out the names

21   and we will all go forward from there.

22   (The following occurred at the podium, with the defendant

23   present, his attorney Mr. LoFaro, and Mr. Centra.)

24             THE COURT:  All right, Diane.

25             THE CLERK:  Juror No. 322, Julie Robbins,

- Voir dire - Panel I - Court -

1    R-o-b-b-i-n-s.

2              POTENTIAL JUROR:  Hi.

3              THE COURT:  Any yes's to any of these?

4              POTENTIAL JUROR:  The first two.

5              THE COURT:  Okay.  The first one is victim of

6    crime.  What can you tell us about at that?

7              POTENTIAL JUROR:  My best friend was it --

8              THE COURT:  It's important that --

9              POTENTIAL JUROR:  My best friend Mike, he was

10   arrested with 17 -- and he is in trial.

11             THE COURT:  Where is he in trial?

12             POTENTIAL JUROR:  Onondaga County.  I was hoping

13   it was the case.  It's not.

14             THE COURT:  With that pending, right, you're

15   aware of that, do you think you could be fair and impartial

16   in this case?

17             POTENTIAL JUROR:  Yes.  That part, yes.

18             THE COURT:  Do you know who is prosecuting it?

19             POTENTIAL JUROR:  No.

20             THE COURT:  Do you know anything more about the

21   facts of the case?

22             POTENTIAL JUROR:  No, I haven't talked to him in

23   like a week.

24             THE COURT:  One of the, obviously, in this case,

25   one of the things I talked about is a police officer's

- Voir dire - Panel I - Court -

1    testimony is to be given no more or less credibility than

2    any other witness.  Can you follow that?

3              POTENTIAL JUROR:  Yes.

4              THE COURT:  Okay.  And you said the second one

5    you had a yes to?

6              POTENTIAL JUROR:  My brother-in-law has had three

7    DWI's.

8              THE COURT:  Okay.  And were they in Onondaga

9    County?

10              POTENTIAL JUROR:  A-hum.

11              THE COURT:  Prosecuted by the District Attorney's

12    office?

13              POTENTIAL JUROR:  A-hum.

14              THE COURT:  Does any of that not allow you to be

15    fair and impartial in this case?

16              POTENTIAL JUROR:  No.

17              THE COURT:  Okay.  Mr. Centra, any questions for

18    Miss Robbins?

19              MR. CENTRA:  No, Your Honor.

20              MR. LOFARO:  No, Judge.

21              THE COURT:  Okay.  You're all set, ma'am.  Follow

22    Ms. Walsh.

23              COURT ATTENDANT:  Could you bring all your

24    belongings with you as you come up, please?

25                    *              *              *

- Voir dire - Panel I - Court -

1      THE CLERK:  Juror No. 282, Steven McCarthy,

2  M-c-C-a-r-t-h-y.

3      THE COURT:  Hi.

4      POTENTIAL JUROR:  How are you?

5      THE COURT:  "Steven," what's the most important

6  question?  The H or a V?

7      POTENTIAL JUROR:  V.

8      THE COURT:  Gee.

9      POTENTIAL JUROR:  Sorry.

10      THE COURT:  How about the questions, any yes's to

11  any of those?

12      POTENTIAL JUROR:  Just one.  I have said, it'd

13  make a financial burden for me to serve on this because.

14      THE COURT:  What do you do?  What?

15      POTENTIAL JUROR:  I work as a HazMat technician.

16      THE COURT:  HazMat?

17      POTENTIAL JUROR:  Yes.

18      THE COURT:  You get paid?

19      POTENTIAL JUROR:  I don't get paid if --

20      THE COURT:  If you're working.

21      POTENTIAL JUROR:  Right.  Otherwise, it's 40

22  bucks a day.

23      THE COURT:  Got you.  Do you have a family,

24  Steven?

25      POTENTIAL JUROR:  I do have a wife, and she is on

- Voir dire - Panel I - Court -

1    Social Security.

2              THE COURT:  And children at home?

3              POTENTIAL JUROR:  One, he is -- he is not an

4    adult.

5              THE COURT:  He is on his own?

6              POTENTIAL JUROR:  Yes.

7              THE COURT:  Let me ask you this, and I know,

8    believe me, I know it could be a burden.  If you were

9    chosen, to be a juror, can you give us your full attention?

10             POTENTIAL JUROR:  Oh, absolutely.

11             THE COURT:  Okay.  Mr. Centra, any questions?

12             MR. CENTRA:  No.

13             MR. LOFARO:  I have none, Your Honor.

14             THE COURT:  I will let them talk about it more.

15             POTENTIAL JUROR:  Okay.  Thanks.

16                 *              *              *

17             THE CLERK:  Juror No. 224, Guy Donahoe,

18    D-o-n-a-h-o-e.

19             THE COURT:  G-u-y?

20             THE CLERK:  Yes.

21             THE COURT:  How are you, Mr. Donahoe?

22             POTENTIAL JUROR:  Good.

23             THE COURT:  The five questions, Mr. Donahoe, do

24    you have yes's to any of them here?

25             POTENTIAL JUROR:  I don't have a yes to any of

37

- Voir dire - Panel I - Court -

1      them.

2              THE COURT:  Go see Ms. Walsh.  She will give you

3      a seat.  Okay.

4                      *               *               *

5              THE CLERK:  Juror No. 299, Daniel Russo,

6      R-u-s-s-o.

7              THE COURT:  Good morning, Mr. Russo.

8              POTENTIAL JUROR:  Good morning, Judge.

9              THE COURT:  Any yes's to any of these?

10             POTENTIAL JUROR:  The only thing is I think I

11     feel it more at night, I take a water pill and I have to go

12     to the bathroom that often.

13             THE COURT:  Okay.  With regards to that, again, I

14     have got the same.

15             POTENTIAL JUROR:  You do?

16             THE COURT:  But we do try to take breaks, regular

17     breaks.  You come, you can raise your hand and let us know.

18     Anything else?

19             POTENTIAL JUROR:  No, that's it, Your Honor.

20             THE COURT:  Okay.  Have a seat.  Thanks, Mr.

21     Russo.

22             POTENTIAL JUROR:  Thanks.

23                     *               *               *

24             THE CLERK:  Juror No. 297, Terri Dewey,

25     D-e-w-e-y.

- Voir dire - Panel I - Court -

1        THE COURT:  Good morning, Miss Dewey.

2        POTENTIAL JUROR:  Hi.

3        THE COURT:  How are you?

4        POTENTIAL JUROR:  Good.  Thank you.

5        THE COURT:  Good.  Any yes's to any of the

6   questions?

7        POTENTIAL JUROR:  No. 2.

8        THE COURT:  No. 2?  You know someone who has been

9   charged with a crime?

10        POTENTIAL JUROR:  A-hum.

11        THE COURT:  Who was that?

12        POTENTIAL JUROR:  My stepson.

13        THE COURT:  Okay.  And how long ago was that?

14        POTENTIAL JUROR:  It was last year, 2016.

15        THE COURT:  Onondaga County?

16        POTENTIAL JUROR:  A-hum.

17        THE COURT:  And what was he charged with?

18        POTENTIAL JUROR:  I don't know what the exact

19   charge is.  It was for stealing nine thousand dollars worth

20   of insurance checks from his father and I.

21        THE COURT:  Okay.  You guys were the victims?

22        POTENTIAL JUROR:  Yes.

23        THE COURT:  You got 1 and 2?

24        POTENTIAL JUROR:  Yes.

25        THE COURT:  Is that still pending?

- Voir dire - Panel I - Court -

1          POTENTIAL JUROR:  He's in court ordered rehab.

2          THE COURT:  Okay.  All right.  Is there anything

3   about that experience that would not allow you to be fair

4   and impartial in this case?

5          POTENTIAL JUROR:  Um-um.

6          THE COURT:  Any questions, Mr. Centra?

7          MR. CENTRA:  You have any issues with the way the

8   law enforcement handled your investigation, with regard to

9   that?

10          POTENTIAL JUROR:  Not the Court, but the police.

11          MR. CENTRA:  All right.  What issues did you have

12   with them?

13          POTENTIAL JUROR:  The police officer was trying

14   to counsel us, and sort of convince us not to press

15   charges.

16          MR. CENTRA:  Would you be able to be fair and

17   impartial if a couple officers that were testifying, would

18   you be able to fair and impartial and listen to that

19   testimony?

20          POTENTIAL JUROR:  Yes, I think so.

21          THE COURT:  What department was it, do you know?

22          POTENTIAL JUROR:  Clay.

23          THE COURT:  Clay?

24          POTENTIAL JUROR:  Cicero?

25          THE COURT:  Cicero police department?

- Voir dire - Panel I - Court -

1          POTENTIAL JUROR:  A-hum.

2          THE COURT:  Mr. LoFaro?

3          MR. LOFARO:  No questions, Judge.

4          THE COURT:  Okay, Miss Dewey, if you go over

5     there, we will give you a seat.  Thank you.

6          POTENTIAL JUROR:  You're welcome.

7                    *              *              *

8          THE CLERK:  Juror No. 240, Nestor Berge,

9     B-e-r-g-e.

10         THE COURT:  What was the name?

11         THE CLERK:  Nestor, N-e-s-t-o-r.

12         THE COURT:  Thank you.  Good morning, Mr. Berge.

13         POTENTIAL JUROR:  Good morning, sir.

14         THE COURT:  As far as the five questions go, sir?

15         POTENTIAL JUROR:  No to all of them.

16         THE COURT:  Go right over there.  Thank you.

17                    *              *              *

18         THE CLERK:  Juror 227, Avinder Dhamoon.

19     A-v-i-n-d-e-r.  Last name, D-h-a-m-o-o-n.

20         THE COURT:  Good morning.

21         POTENTIAL JUROR:  Good morning.

22         THE COURT:  How are you?

23         POTENTIAL JUROR:  Thanks.  How are you?

24         THE COURT:  Good.  Is it Dhamoon?

25         POTENTIAL JUROR:  Yes.

- Voir dire - Panel I - Court -

1       THE COURT:  Ms. Dhamoon, any yes's to these five?

2       POTENTIAL JUROR:  Yes, but I like have a

3  question.

4       THE COURT:  Yes.

5       POTENTIAL JUROR:  I have small children.

6       THE COURT:  Yes.

7       POTENTIAL JUROR:  They are home in the afternoon.

8       THE COURT:  Yes, we break every day at four

9  o'clock.

10      POTENTIAL JUROR:  Okay.

11      THE COURT:  If we need to go after four, any day,

12  we will let you know.

13      POTENTIAL JUROR:  Okay.

14      THE COURT:  Okay?  The only day that we may do

15  that is the day of the deliberations, where we send the

16  jury out.  And on those days, which we will let you know,

17  we could go as late as six o'clock.  But that would be

18  letting you know a day beforehand.  Is that okay?

19      POTENTIAL JUROR:  That's fine.  I just have a --

20  I am employed.

21      THE COURT:  Oh, no.

22      POTENTIAL JUROR:  I have three years, 3:00 to

23  7:00.  I.D. charts for every Monday and Thursday.

24      THE COURT:  You need to get them.

25      POTENTIAL JUROR:  So.

42

- Voir dire - Panel I - Court -

1          THE COURT:  Three, what was it?  You have what?

2          POTENTIAL JUROR:  I am, I am self-employed.  So I

3    have:  3:00 to 7:00, I have to teach kids every Monday and

4    Thursday.

5          THE COURT:  Okay.  I think --

6          POTENTIAL JUROR:  I could make arrangements.

7          THE COURT:  Great.

8          POTENTIAL JUROR:  Okay.

9          THE COURT:  Thank you.

10                    *              *              *

11         COURT ATTENDANT:  Everybody in this row, go out

12   and find a seat in the back, please.

13         THE COURT:  There is one there if anybody wants

14   it.  Thanks, folks.  The courtroom is only so big.  We

15   appreciate you.

16         COURT ATTENDANT:  Scootch in, folks, that are in

17   the benches.

18         THE COURT:  All right, Diane?

19         THE CLERK:  Juror 270, Colin Corbett,

20   C-o-r-b-e-t-t.

21         THE COURT:  Good morning, Mr. Corbett, how are

22   you?

23         POTENTIAL JUROR:  Well.  How are you?

24         THE COURT:  Good, thank you.  How about the five

25   questions?

43

- Voir dire - Panel I - Court -

1       POTENTIAL JUROR:  Yes to No. 2.

2       THE COURT:  Okay.  Let's talk about that one

3   first.  You know somebody that has been charged with a

4   crime?

5       POTENTIAL JUROR:  My brother.

6       THE COURT:  What was he charged with?

7       POTENTIAL JUROR:  I guess theft.

8       THE COURT:  How long ago?

9       POTENTIAL JUROR:  Just a couple months.

10      THE COURT:  Okay.  Is that here in Syracuse,

11   Onondaga County?

12      POTENTIAL JUROR:  Yes.

13      THE COURT:  All right.  So that charge is open

14   right now?

15      POTENTIAL JUROR:  He is still incarcerated right

16   now.

17      THE COURT:  Okay.  And how close in years are you

18   and your brother?

19      POTENTIAL JUROR:  Five.

20      THE COURT:  All right.  Do you know what

21   department charged him, the police department?

22      POTENTIAL JUROR:  No.

23      THE COURT:  You don't know?  Is there anything

24   about that, that's pending right now, and the D.A.'s office

25   may be prosecuting it, is there anything about that

- Voir dire - Panel I - Court -

1    wouldn't allow you to be fair and impartial here?

2              POTENTIAL JUROR:  I don't believe so.

3              THE COURT:  Mr. Centra?

4              MR. CENTRA:  Have you talked to your brother

5    while the charges were pending?

6              POTENTIAL JUROR:  Yes, he came home briefly.

7              MR. CENTRA:  Did he discuss anything in the way

8    law enforcement handled the case?

9              POTENTIAL JUROR:  Not really, no.

10              MR. CENTRA:  Do you have any ill will towards law

11    enforcement?

12              POTENTIAL JUROR:  No.

13              MR. CENTRA:  Would you be able to be fair and

14    impartial?

15              POTENTIAL JUROR:  A-hum.

16              MR. CENTRA:  Okay.

17              THE COURT:  Mr. LoFaro?

18              MR. LOFARO:  Nothing, Judge.

19              THE COURT:  Could I ask you this, Mr. Corbett.  I

20    neglected to ask you before.  Is any of this with regards

21    to your brother, I am just asking, is any of it

22    drug-related?

23              POTENTIAL JUROR:  Alcohol.

24              THE COURT:  Alcohol?

25              POTENTIAL JUROR:  Yes.

45

- Voir dire - Panel I - Court -

1        THE COURT:  Great.  Good.  Thank you.

2              *           *           *

3        THE CLERK:  Juror No. 333, Michael Herrera,

4  H-e-r-r-e-r-a.

5        THE COURT:  Hi, Mr. Herrera.

6        POTENTIAL JUROR:  Good morning.

7        THE COURT:  With regards to the five questions,

8  Mike, do you have any yes's?

9        POTENTIAL JUROR:  No, no, no, no.  I haven't read

10  anything about the case.  The only thing is I might have an

11  acquaintance with the attorney, roughly, the defense

12  attorney.

13        THE COURT:  Mr. LoFaro?

14        POTENTIAL JUROR:  We went to the same elementary

15  school.

16        MR. LOFARO:  Our daughters went to the same

17  school.  We don't know each other well.

18        THE COURT:  Say hello and how are you?

19        POTENTIAL JUROR:  Yes.

20        THE COURT:  Does Mr. Centra need to be concerned

21  about that?

22        POTENTIAL JUROR:  The only other thing, I have a

23  lot of friends that are on the police force.

24        THE COURT:  Sure.

25        POTENTIAL JUROR:  I play on the hockey team.  I

- Voir dire - Panel I - Court -

1    do know, I am not sure if they might be some of the people.

2           THE COURT:  We will be reading their names out,

3    and if you do know any of them, you will let the attorneys

4    know.  But as far as knowing Mr. LoFaro, or the fact that

5    you may know police officers, is there anything about that

6    that would not allow you to be fair and impartial in this

7    case?

8           POTENTIAL JUROR:  I don't think so.

9           THE COURT:  Okay.  Any questions, Mr. Centra?

10          MR. CENTRA:  Nothing.

11          MR. LOFARO:  No.

12          THE COURT:  Thanks, sir.  I appreciate you

13   letting us know.

14               *              *              *

15          THE CLERK:  Juror No. 287, Chris Jackson,

16   J-a-c-k-s-o-n.  Judge, I don't think I told you, they do

17   have to go back downstairs if they are not chosen here.

18          THE COURT:  They need to go back down.

19          Hi, Mr. Jackson.

20          POTENTIAL JUROR:  Hi.

21          THE COURT:  With regards to the five questions,

22   Mr. Jackson, any yes's?

23          POTENTIAL JUROR:  Yes.

24          THE COURT:  Go ahead.  Which ones?

25          POTENTIAL JUROR:  No. 1.

- Voir dire - Panel I - Court -

1     THE COURT:  All right.  Let's start with that.

2   You know somebody that is the victim of a crime?

3     POTENTIAL JUROR:  Yes.

4     THE COURT:  What was that?

5     POTENTIAL JUROR:  Myself.

6     THE COURT:  Okay.  What was it?

7     POTENTIAL JUROR:  In my business.

8     THE COURT:  A-hum.

9     POTENTIAL JUROR:  I am Struckton [ph] Market.

10    THE COURT:  Okay.

11    POTENTIAL JUROR:  I called the police three or

12  four times a week.

13    THE COURT:  You have people coming, trying not to

14  pay for things?

15    POTENTIAL JUROR:  Yes.

16    THE COURT:  Which particular types?

17    POTENTIAL JUROR:  Right now, Shop City Plaza.  I

18  went to the Strague [ph] plaza for two years.

19    THE COURT:  With regards to that, obviously, the

20  charges here have nothing to do with theft.

21    POTENTIAL JUROR:  Yes, but they stole --

22    THE COURT:  Sure.  Sure.  Can you be fair and

23  impartial, just listen to the proof in this case?

24    POTENTIAL JUROR:  I don't know.

25    THE COURT:  Okay.  Listen, now is the time to,

48

- Voir dire - Panel I - Court -

1    when we got to know.  What else?

2              POTENTIAL JUROR:  No. 2.

3              THE COURT:  Okay.

4              POTENTIAL JUROR:  I was charged with a crime.

5              THE COURT:  How long ago was that?

6              POTENTIAL JUROR:  19 years ago.

7              THE COURT:  Okay.  What was the nature of it?

8              POTENTIAL JUROR:  Beat --.

9              THE COURT:  Domestic violence?  Was it in this

10   county?

11             POTENTIAL JUROR:  No.

12             THE COURT:  Okay.  And is there anything about

13   that that you can't be fair and impartial here?

14             POTENTIAL JUROR:  No.

15             THE COURT:  It must the first thing?

16             POTENTIAL JUROR:  Yes.

17             THE COURT:  Any other, about the yes's, sir?

18             POTENTIAL JUROR:  I don't know.  No. 5 is like

19   the same as 1.

20             THE COURT:  Right.  Right.  Do you folks want to

21   excuse?

22             MR. CENTRA:  I will consent to.

23             MR. LOFARO:  Pardon me?

24             MR. CENTRA:  Consent.

25             THE COURT:  Mr. Jackson?

49

- Voir dire - Panel I - Court -

1      MR. LOFARO:  Yes.

2      THE COURT:  All right.  Mr. Jackson, what I will

3  do, I will excuse you.  You do have to go back down to the

4  room, check in with them.  Does he need to take that with

5  him?  Take that with you.  And we will send you downstairs,

6  sir.  Thanks very much.

7      POTENTIAL JUROR:  Yes.

8      THE COURT:  I appreciate it.

9          *              *              *

10      THE CLERK:  Juror No. 298, Sean Foote, F-o-o-t-e.

11      THE COURT:  Sean is S-e-a-n?  Good morning, Mr.

12  Foote.

13      POTENTIAL JUROR:  Good morning.

14      THE COURT:  With regards to the five questions I

15  have asked, would you have any yes's to any of them?

16      POTENTIAL JUROR:  No.

17      THE COURT:  Okay.  Go over there and have a seat,

18  please.  Thank you.

19          *              *              *

20      THE CLERK:  Juror No. 256, Robert Moore,

21  M-o-o-r-e.

22      THE COURT:  How are you, Mr. Moore?

23      POTENTIAL JUROR:  Great.

24      THE COURT:  Any yes's to our five questions, Mr.

25  Moore?

50

- Voir dire - Panel I - Court -

1       POTENTIAL JUROR:  Yes and yes.  1 and 2.

2       THE COURT:  Okay.  As far as the victim of a

3  crime, okay, what can you tell us about that?

4       POTENTIAL JUROR:  He was my brother-in-law.  He

5  was charged with sexual crime.

6       THE COURT:  Okay.

7       POTENTIAL JUROR:  And he got charged with the

8  situation, the crime itself.

9       THE COURT:  How long ago was that?

10      POTENTIAL JUROR:  About 10 years ago.

11      THE COURT:  Anything about that that would not

12 allow you to be fair and impartial in this case?

13      POTENTIAL JUROR:  I am not sure.  I can't, you

14 know, I'd probably be impartial probably.

15      THE COURT:  Okay.  You think you would be.  Now,

16 obviously, what that charge, whatever, however the outcome,

17 it's different than what's happened here?

18      POTENTIAL JUROR:  Right.  But it wasn't pretty.

19      THE COURT:  No.  It's one of those things you

20 can't wipe out of your head.

21      POTENTIAL JUROR:  No, never.

22      THE COURT:  Was it here in Onondaga County?

23      POTENTIAL JUROR:  Yes, it was.

24      THE COURT:  Prosecuted by the D.A.'s office?

25      POTENTIAL JUROR:  Yes, it was all on the news and

- Voir dire - Panel I - Court -

1    everything, it was.

2            THE COURT:  Were you happy with the outcome of

3    the case?

4            POTENTIAL JUROR:  Well, I wasn't, you know, with

5    family and everything.  It wasn't good.

6            THE COURT:  It was pretty bad?

7            POTENTIAL JUROR:  Yes.

8            THE COURT:  What we have here is something

9    totally different.  Charged with some drug-type of case.

10   Can you promise both Mr. Jennings and the District

11   Attorney's office, you could be fair and listen to the

12   evidence and only consider this evidence?

13           POTENTIAL JUROR:  I don't think so.

14           THE COURT:  Okay.  Gentlemen?

15           MR. CENTRA:  He can't be fair and impartial,

16   Judge.

17           THE COURT:  Consent to?

18           MR. LOFARO:  Absolutely.

19           THE COURT:  Okay.  Mr. Moore, what I have -- get

20   your paperwork and go back down to the juryroom, room 130,

21   I believe.

22           POTENTIAL JUROR:  I appreciate it.

23           THE COURT:  Thank you, sir.

24                *              *              *

25           THE CLERK:  Juror No. 226, Alyssa Deryke,

- Voir dire - Panel I - Court -

1    D-e-r-y-k-e.

2             THE COURT:  Alyssa is A-l-y?

3             THE CLERK:  A-l-y-s-s-a.

4             THE COURT:  Thank you.  Is it Deryke?

5             POTENTIAL JUROR:  Deryke, yes.

6             THE COURT:  How are you?

7             POTENTIAL JUROR:  Good.  How are you?

8             THE COURT:  Good.  With regards to our five

9    questions, Miss Deryke, any yes's to those?

10            POTENTIAL JUROR:  Yes to the first one.

11            THE COURT:  Okay.  Let's talk that.  You know

12   someone who was the victim of a crime?

13            POTENTIAL JUROR:  Myself.

14            THE COURT:  Okay.  What type of crime?

15            POTENTIAL JUROR:  Assault.

16            THE COURT:  Was someone arrested?

17            POTENTIAL JUROR:  Yes.

18            THE COURT:  Was that in Onondaga County?

19            POTENTIAL JUROR:  Yes.

20            THE COURT:  How long ago was that?

21            POTENTIAL JUROR:  10 or 11 years ago.

22            THE COURT:  These things are not, you know, they

23   are not easy to talk about, that's why we do it up here.

24   Were you satisfied with the way the case was handled?

25            POTENTIAL JUROR:  Yes.

53

- Voir dire - Panel I - Court -

1      THE COURT:  Okay.  Was it prosecuted by the
2  D.A.'s office here?
3      POTENTIAL JUROR:  No.
4      THE COURT:  Okay.  Is there anything about that
5  circumstance that would not allow you to be fair and
6  impartial here?
7      POTENTIAL JUROR:  No.
8      THE COURT:  Okay.  Anything else on these?
9      POTENTIAL JUROR:  No. 2.
10     THE COURT:  Okay.  You know someone who was
11  charged with a crime?
12     POTENTIAL JUROR:  Myself.
13     THE COURT:  Okay.  What was that?
14     POTENTIAL JUROR:  Reckless driving.
15     THE COURT:  How long ago?
16     POTENTIAL JUROR:  This was five years ago.
17     THE COURT:  Okay.  Was that here in Onondaga
18  County?
19     POTENTIAL JUROR:  Yes.
20     THE COURT:  Okay.  And the case was prosecuted by
21  the D.A.'s office, as far as you know?
22     POTENTIAL JUROR:  I think so.
23     THE COURT:  Okay.  Were you satisfied with the
24  outcome of the case?
25     POTENTIAL JUROR:  Yes.

- Voir dire - Panel I - Court -

```
 1              THE COURT:  And again, the question I ask
 2     everybody is:  Based on that, are you still able to tell us
 3     you could be fair and impartial here?
 4              POTENTIAL JUROR:  Yes.
 5              THE COURT:  Okay.  Any others?
 6              POTENTIAL JUROR:  No.
 7              THE COURT:  Mr. Centra, questions?
 8              MR. CENTRA:  With regards to the crime that you
 9     were charged in, was there anything later that developed in
10     the way that you felt was negatively handled by law
11     enforcement, the police officers?
12              POTENTIAL JUROR:  No.
13              MR. CENTRA:  And with regards to the crime that
14     you were the victim of, did law enforcement get involved
15     with that?
16              POTENTIAL JUROR:  Yes.
17              MR. CENTRA:  And were you satisfied with the way
18     they handled that?
19              POTENTIAL JUROR:  Yes.
20              MR. LOFARO:  Just briefly.  The reckless driving,
21     was that the only charge during the stop?  Reckless driving
22     itself?
23              POTENTIAL JUROR:  There was other charges but I
24     wasn't actually, like it didn't stick.
25              THE COURT:  They were dismissed, eventually?
```

55

- Voir dire - Panel I - Court -

1          POTENTIAL JUROR:  Yes.

2          MR. LOFARO:  What were the others, just out of

3      curiosity?

4          POTENTIAL JUROR:  Drinking.  The incident

5      happened in a vehicle driving from Turning Stone.  And I

6      hit another driver, with five people in it.  And flipped.

7      Sent all of them to the hospital.

8          THE COURT:  Okay.

9          POTENTIAL JUROR:  And I just got reckless

10     driving.

11         MR. LOFARO:  Reckless driving is what you

12     remember?

13         POTENTIAL JUROR:  And probation.

14         MR. LOFARO:  A-hum.  That was resolved and that

15     was the end of it?

16         POTENTIAL JUROR:  Yes.

17         THE COURT:  Anything else?

18         MR. LOFARO:  Was that in Oneida County or?

19         POTENTIAL JUROR:  Onondaga County.

20         MR. LOFARO:  Onondaga County?  Nothing else,

21     Judge.

22         THE COURT:  Have a seat, ma'am.

23         POTENTIAL JUROR:  Thank you.

24              *              *              *

25         THE CLERK:  Juror 273, Patricia Veator,

- Voir dire - Panel I - Court -

1   V-e-a-t-o-r.

2           THE COURT:  Good morning, Miss Veator.

3           POTENTIAL JUROR:  Hi.

4           THE COURT:  How are you?

5           POTENTIAL JUROR:  Fine.  Thanks.

6           THE COURT:  The five questions, do you have any

7   yes's on them?

8           POTENTIAL JUROR:  Yes.

9           THE COURT:  Go ahead.

10          POTENTIAL JUROR:  The first one.  My house was

11  broken into twice.  My car was stolen, the second time.

12  And my brother is, No. 2, my brother was charged in

13  Savannah, Georgia, with count of possession of marijuana.

14  And he jumped bail, and went, he was on the run for 12

15  years.

16          THE COURT:  Whew.

17          POTENTIAL JUROR:  And the FBI was at my parent's

18  house and our house, you know.

19          THE COURT:  A-hum.

20          POTENTIAL JUROR:  Then they finally caught him

21  in California.  He was also dealing marijuana there.  He

22  was charged with two counts, felony counts of marijuana

23  possession, and interstate flight to avoid prosecution.  He

24  spent five years in Federal prison.

25          THE COURT:  Could I ask you, with regards to the

- Voir dire - Panel I - Court -

1    incident that happened to you at your home, was anyone ever

2    charged?

3              POTENTIAL JUROR:  No.

4              THE COURT:  And how long ago are we talking

5    about?

6              POTENTIAL JUROR:  It was in the mid 80's.

7              THE COURT:  Okay.  Anything about those incidents

8    where you were the victim of the crime, that would not

9    allow you to be fair and impartial here?

10             POTENTIAL JUROR:  I think No. 2 because, you

11   know, his was also illegal drugs.

12             THE COURT:  A-hum.

13             POTENTIAL JUROR:  And I just don't feel as though

14   I would be impartial to that because of what we went

15   through for so long.

16             THE COURT:  For a case like that?

17             POTENTIAL JUROR:  Yes.

18             THE COURT:  You would rather it be a different

19   type of charge, correct?

20             POTENTIAL JUROR:  Right.  Right.

21             THE COURT:  Gentlemen?

22             MR. LOFARO:  He certainly --

23             THE COURT:  Ma'am, we are going to have you get

24   your paperwork and go back downstairs.  Thank you.

25             POTENTIAL JUROR:  Thank you.

- Voir dire - Panel I - Court -

1                    *                    *                    *

2            THE CLERK:  Juror No. 341 Michael Putnam,

3    P-u-t-n-a-m.

4            THE COURT:  How are you, Mr. Putnam?

5            POTENTIAL JUROR:  Good, how are you doing, Your

6    Honor?

7            THE COURT:  Good.  Five questions, Mr. Putnam, do

8    you have any yes's to those?

9            POTENTIAL JUROR:  Yes, No. 1.  My grandfather's

10   shed was broke into years ago, and he had stolen out of it.

11           THE COURT:  Was that here in Onondaga County?

12           POTENTIAL JUROR:  No. That was in Tompkins

13   County.

14           THE COURT:  Anybody charged?

15           POTENTIAL JUROR:  I don't know they ever got him.

16           THE COURT:  Was there anything about that that

17   would not allow you to be fair and impartial here?

18           POTENTIAL JUROR:  No.

19           THE COURT:  Okay.  What, anything else?

20           POTENTIAL JUROR:  My brother-in-law has been

21   charged with No. 2.

22           THE COURT:  Okay.  What was he charged with, do

23   you recall?

24           POTENTIAL JUROR:  I think he got DWI some time.

25           THE COURT:  Obviously, these weren't things that

59

- Voir dire - Panel I - Court -

1   you were paying real close attention to?

2            POTENTIAL JUROR:  Right.  It was prior to '06,

3   those.

4            THE COURT:  Could you be still be fair and

5   impartial knowing that that happened?

6            POTENTIAL JUROR:  Yes.

7            THE COURT:  All right.  Anything else?

8            POTENTIAL JUROR:  No.

9            THE COURT:  Mr. Centra, any questions?

10           MR. CENTRA:  No, Your Honor.

11           THE COURT:  Mr. LoFaro, any questions?

12           MR. LOFARO:  None, Judge.

13           POTENTIAL JUROR:  Great, Mr. Putnam.  She will

14   show you where to sit.  Thank you, sir.

15              *              *              *

16           THE CLERK:  Juror No. 259, Nicholas Episcopo,

17   E-p-i-s-c-o-p-o.

18           THE COURT:  Good morning, Mr. Episcopo, how are

19   you?

20           POTENTIAL JUROR:  Good morning.  I am okay.

21           THE COURT:  What about our five questions, sir,

22   any yes's to these?

23           POTENTIAL JUROR:  (Unintelligible.)

24           THE COURT:  He just said he wanted to talk

25   privately about.  That's what, actually, that's what we are

1    doing here.  We are doing it privately here, with just us.

2    It has to be on the record so he has to hear.  When you're

3    10 years old, you were molested as a Boy Scout?

4            POTENTIAL JUROR:  Right.

5            THE COURT:  Can you get over that and be fair and

6    impartial in this case?

7            POTENTIAL JUROR:  I think so.  I just have a --

8            THE COURT:  A lot of anxiety because of it?

9            POTENTIAL JUROR:  Yes.  It was, I have been

10   treated.  But I have medications.

11           THE COURT:  You have been treated over the years

12   because of that.  How are you doing now?

13           POTENTIAL JUROR:  Better.  Better.

14           THE COURT:  Okay.  What we have here, Nicholas,

15   is an allegation of drug sale and possession.

16           POTENTIAL JUROR:  Okay.

17           THE COURT:  What happened to you is something

18   you're going to unfortunately be with for the rest of the

19   your life.

20           POTENTIAL JUROR:  Right.

21           THE COURT:  Can you promise Mr. Jennings and

22   promise the District Attorney's office that you will only

23   judge this case on what happened to you in the courtroom?

24           POTENTIAL JUROR:  Yes.

25           THE COURT:  Okay.  Anything else about any of

- Voir dire - Panel I - Court -

1    these?

2              POTENTIAL JUROR:  I have AHD.  It doesn't mean

3    anything, right?

4              THE COURT:  Attention deficit?

5              POTENTIAL JUROR:  Yes.  I have, if I go off my

6    medicine recently, I have pressure problems.

7              THE COURT:  Okay.  And you said you do take

8    medication.  And sometimes you have been off of it for

9    other reasons?

10             POTENTIAL JUROR:  Well, I have been getting off

11   it.

12             THE COURT:  You're weaning it?

13             POTENTIAL JUROR:  Yes.  Right.  So what I will

14   do, check my --

15             THE COURT:  You're going to the doctor to make

16   sure everything is okay?

17             POTENTIAL JUROR:  Right.

18             THE COURT:  Can you still, with that condition,

19   can you give us your full attention here?

20             POTENTIAL JUROR:  I mean I can try, but.

21             THE COURT:  Okay.  I got you.  Hold up one

22   second.

23    (Conference at podium.)

24             MR. LOFARO:  I think we could let him go.

25             THE COURT:  We are going to let Nicholas go

- Voir dire - Panel I - Court -

1   because of what you told us.  We appreciate the honesty

2   because that's what I need.

3                POTENTIAL JUROR:  I --

4                THE COURT:  No, no, no.  I am going to have you

5   get your paperwork.  You go back down.  You're going to be

6   excused, okay?

7                POTENTIAL JUROR:  Okay.

8                THE COURT:  Thank you, sir.

9                MR. LOFARO:  If I told you I have a touch of ADHD

10  myself, would you let me go?

11               *                *                *

12               THE CLERK:  Juror No. 352, Henrie Robinson,

13  R-o-b-i-n-s-o-n, H-e-n-r-i-e.

14               THE COURT:  Hi, Miss Robinson.

15               POTENTIAL JUROR:  Good morning.

16               THE COURT:  How are you?

17               POTENTIAL JUROR:  What?

18               THE COURT:  Here we are, right?

19               POTENTIAL JUROR:  Yes.

20               THE COURT:  Do you have any yes's to any of the

21  five questions, ma'am?

22               POTENTIAL JUROR:  My mother-in-law was robbed in

23  an elevator.

24               THE COURT:  How long as was that?

25               POTENTIAL JUROR:  In the 80's.

- Voir dire - Panel I - Court -

1          THE COURT:  Okay.  Anything about that that

2     wouldn't allow you to be fair and impartial here?

3          POTENTIAL JUROR:  No.

4          THE COURT:  No?  Okay.

5          POTENTIAL JUROR:  And I don't know, I am just

6     going over the few.

7          THE COURT:  Okay.  Are you feeling okay?

8          POTENTIAL JUROR:  Well, you know, you're not as

9     strong as.

10          THE COURT:  We are not, we are not going to push

11     this.  As a matter of fact, all we are going to do is pick

12     a jury.  Can you promise us that you give us your full

13     attention if you are chosen?

14          POTENTIAL JUROR:  Yes.

15          THE COURT:  Okay.  Any questions for Miss

16     Robinson?

17          MR. CENTRA:  With regards to the crime that your

18     mother was a victim of, was she --

19          POTENTIAL JUROR:  Mother-in-law.

20          THE COURT:  Mother-in-law.

21          POTENTIAL JUROR:  No.

22          MR. CENTRA:  No one was charged?

23          POTENTIAL JUROR:  No.

24          MR. CENTRA:  Do you have any negative feelings

25     towards law enforcement based on that?

64

- Voir dire - Panel I - Court -

1      POTENTIAL JUROR:  Um-um, no.

2      THE COURT:  Mr. LoFaro?

3      MR. LOFARO:  No questions, Your Honor.

4      THE COURT:  Thanks, Miss Robinson.  She will show

5  you where to sit.  Thank you, ma'am.

6                 *               *               *

7      THE CLERK:  Juror No. 267, Blanca Gallardo,

8  G-a-l-l-a-r-d-o.  First name is B-l-a-n-c-a.

9      THE COURT:  Hello, Miss Gallardo.

10      POTENTIAL JUROR:  Hello, Judge.

11      THE COURT:  Ma'am, with regards to our five

12  questions, do you have any yes's to the five that I have

13  asked?

14      POTENTIAL JUROR:  No. 1 is yes.

15      THE COURT:  Let's talk about that.  You know

16  someone who has been the victim of a crime?

17      POTENTIAL JUROR:  Yes.

18      THE COURT:  What was that?

19      POTENTIAL JUROR:  My brother, he was stabbed.

20      THE COURT:  How long ago was that?

21      POTENTIAL JUROR:  Maybe three years ago.

22      THE COURT:  Here in Onondaga County?

23      POTENTIAL JUROR:  No.

24      THE COURT:  Where was, where was that?

25      POTENTIAL JUROR:  Orange County.

- Voir dire - Panel I - Court -

1          THE COURT:  Orange County?

2          POTENTIAL JUROR:  A-hum.

3          THE COURT:  Was it, do you know if anyone was

4    charged?

5          POTENTIAL JUROR:  No.  No one was charged.

6          THE COURT:  Is there any reason you can't be fair

7    and impartial in this case, because of that?

8          POTENTIAL JUROR:  No.

9          THE COURT:  Okay.  What else do you have for us,

10   ma'am?

11         POTENTIAL JUROR:  Yes.

12         THE COURT:  Who do you know that has been charged

13   with a crime?

14         POTENTIAL JUROR:  Brothers.

15         THE COURT:  Okay.  Locally, locally?

16         POTENTIAL JUROR:  No.  Orange County.

17         THE COURT:  Okay.  And again, with regards to

18   those cases, would those affect you being fair and

19   impartial here?

20         POTENTIAL JUROR:  No.

21         THE COURT:  Okay.  Anything else, ma'am?

22         POTENTIAL JUROR:  No. 3, no.  No. 4, no.  No. 5,

23   no.

24         THE COURT:  Okay.  Have a seat for us.

25         POTENTIAL JUROR:  Thank you.

66

- Voir dire - Panel I - Court -

1        THE COURT:  Thanks, Miss Gallardo.

2        Folks, we will ask you guys to have a seat

3    somewhere.  Thank you.

4              *              *              *

5        THE CLERK:  Juror No. 284, Gregory Crandell,

6    C-r-a-n-d-e-l-l.

7        THE COURT:  Good afternoon, Mr. Crandell.

8        POTENTIAL JUROR:  Good morning.

9        THE COURT:  What about our five questions here?

10   What do you say, sir?

11       POTENTIAL JUROR:  I believe one of my cousins was

12   charged with grand larceny.

13       THE COURT:  Okay.  Locally?

14       POTENTIAL JUROR:  Yes.

15       THE COURT:  And did you follow the case at all?

16       POTENTIAL JUROR:  Not really.

17       THE COURT:  How long ago?

18       POTENTIAL JUROR:  Probably the last two or four

19   years, something like that.

20       THE COURT:  Anything about that fact that won't

21   allow you to be fair and impartial here?

22       POTENTIAL JUROR:  I don't believe so.

23       THE COURT:  Any other yes's?

24       POTENTIAL JUROR:  I don't know which one it goes

25   to, but my wife was on the jury pool.

- Voir dire - Panel I - Court -

1              THE COURT:  Here now?

2              POTENTIAL JUROR:  Yes.

3              THE COURT:  Do you guys argue a lot?

4              POTENTIAL JUROR:  Not really.  But sometimes, any

5      other.

6              THE COURT:  We have had people that work

7      together.  We have had siblings, it happens.

8              POTENTIAL JUROR:  I wanted to let you know.

9              THE COURT:  Any others questions?

10             MR. CENTRA:  No, Your Honor.

11             MR. LOFARO:  No, Judge.

12             THE COURT:  Mr. Crandell, okay, Mr. Crandell,

13     you're going to have the first seat right here on the left.

14     Thank you.

15                    *              *              *

16             THE CLERK:  Juror No. 303, Ivan -- I am not even

17     going to try.  I am just going to spell it.  I don't want

18     to butcher it:  O-n-u-f-r-i-y-c-h-u-k.

19             THE COURT:  How about, I am going to try:

20     Onufriychuk?

21             POTENTIAL JUROR:  Onufriychuk.

22             THE COURT:  How are you, sir?

23             POTENTIAL JUROR:  I am fine.

24             THE COURT:  How about these five questions, Mr.

25     Onufriychuk, any yes's to any of them?  You have been the

- Voir dire - Panel I - Court -

1    victim?

2              POTENTIAL JUROR:  No.  But I have my broken

3    English.

4              THE COURT:  Yes?  How is it?  How is English?

5              POTENTIAL JUROR:  I think it's partial.

6              THE COURT:  How long?

7              POTENTIAL JUROR:  I have been -- '79.  2004, I

8    have been here.

9              THE COURT:  Okay.  What's your native language?

10             POTENTIAL JUROR:  Ukraine.

11             THE COURT:  Ukraine?  Beautiful.

12             POTENTIAL JUROR:  But my  --

13             THE COURT:  I am sorry.

14             POTENTIAL JUROR:  Mike Hanuszczak.  But you're

15   the judge.  So, it's a hard time.

16             THE COURT:  -- try to tell you something else.

17             POTENTIAL JUROR:  Yes.

18             THE COURT:  If we were moving right along and

19   taking testimony, and questions and answers, would it be

20   hard to keep up with the language, do you think?

21             POTENTIAL JUROR:  At some point.

22             THE COURT:  Okay.  Gentlemen?

23             MR. LOFARO:  Consent to let him go.

24             MR. CENTRA:  Consent, Judge.

25             THE COURT:  Okay.  We are going to let you go.

- Voir dire - Panel I - Court -

1    We are going to excuse you.  You get your paperwork and go

2    back down to the juryroom, okay?  You're going to be all

3    set.

4                    POTENTIAL JUROR:  Thank you.

5                    THE COURT:  Thank you.

6                         *                 *                 *

7                    THE CLERK:  Juror No. 317, Dustin Breen,

8    B-r-e-e-n.

9                    THE COURT:  How are you, Mr. Breen?

10                   POTENTIAL JUROR:  Great?

11                   THE COURT:  What do you say to our five

12   questions?

13                   POTENTIAL JUROR:  Let me see.  I have a question

14   on this one.

15                   THE COURT:  You know someone who has been the

16   victim of a crime?

17                   POTENTIAL JUROR:  Charged.

18                   THE COURT:  Charged?  That's okay.  Who do you

19   know?

20                   POTENTIAL JUROR:  Father.  D.U.I.

21                   THE COURT:  Okay.

22                   POTENTIAL JUROR:  And then I have a cousin with

23   a, I don't know if it was heroin or possession or

24   distribution, something.

25                   THE COURT:  You didn't know much about that?

- Voir dire - Panel I - Court -

1          POTENTIAL JUROR:  I didn't know too much about

2     it.  But it was my cousin.

3          THE COURT:  The one with your dad, how long ago

4     was that?

5          POTENTIAL JUROR:  15, 20 years.

6          THE COURT:  Onondaga County?

7          POTENTIAL JUROR:  No.

8          THE COURT:  Okay.  Anything about either of one

9     those that wouldn't allow you to be fair and impartial

10    here?

11         POTENTIAL JUROR:  Probably not.

12         THE COURT:  Okay.  Anything else as far as our

13    questions?

14         POTENTIAL JUROR:  No.

15         THE COURT:  Anything, Mr. Centra?

16         MR. CENTRA:  No, Your Honor.

17         THE COURT:  Anything, Mr. LoFaro?

18         MR. LOFARO:  With relation to your cousin,

19    amicable?  You guys get along?

20         POTENTIAL JUROR:  Yes, yes.

21         MR. LOFARO:  Nothing further, Judge.

22         THE COURT:  Okay.  You guys have a seat right

23    here after this, Mr. Crandell, okay?

24               *              *              *

25         THE CLERK:  Juror No. 231, Dennis Cole, C-o-l-e.

- Voir dire - Panel I - Court -

1          THE COURT:  How are you, Mr. Cole?

2          POTENTIAL JUROR:  Good.  Nervous.

3          THE COURT:  Don't be.  Don't be.  Make it easy

4     for you.  These five questions, victim of a crime, charged

5     with a crime?

6          POTENTIAL JUROR:  One at a time?

7          THE COURT:  Okay.

8          POTENTIAL JUROR:  Yes.

9          THE COURT:  Victim?

10          POTENTIAL JUROR:  Yes.  Our house was broken

11     into.

12          THE COURT:  A-hum.

13          POTENTIAL JUROR:  And it was a long time ago.

14          THE COURT:  Okay.

15          POTENTIAL JUROR:  And it was, I can't remember

16     the exact year.  I had some kids next door vandalized my

17     father's car.  Spray painted, and stuff like that.

18          THE COURT:  Okay.  Anybody charged in either of

19     those incidents with the kids?

20          POTENTIAL JUROR:  I don't know about the robbery.

21     That was --

22          THE COURT:  Yes.

23          POTENTIAL JUROR:  Yes, they caught the kids.

24          THE COURT:  Okay.

25          POTENTIAL JUROR:  And they had to pay

- Voir dire - Panel I - Court -

1   restitution.

2             THE COURT:  Sure.  Is there anything about those

3   incidents that would not allow you to be fair and impartial

4   here?

5             POTENTIAL JUROR:  I don't know.  Probably not.

6             THE COURT:  Okay.  How about anybody charged with

7   a crime, that you know?

8             POTENTIAL JUROR:  Anybody, close family member,

9   close friends, charged with a crime?  Yes.  I was charged

10  with harassment.

11            THE COURT:  How long ago?

12            POTENTIAL JUROR:  It was 1972.

13            THE COURT:  Okay.  I think we can put that, put

14  that in the closet.

15            POTENTIAL JUROR:  But the charge was dropped.

16            THE COURT:  That's fine.

17            POTENTIAL JUROR:  My sister and my father:

18  DWI's.

19            THE COURT:  Okay.  And in Onondaga County?

20            POTENTIAL JUROR:  Yes.

21            THE COURT:  How far back are we going?

22            POTENTIAL JUROR:  My father, that would be like

23  in the late 80's.

24            THE COURT:  A-hum.

25            POTENTIAL JUROR:  My sister, I don't remember

- Voir dire - Panel I - Court -

1   exactly when that was.  I can't ask her.  She is dead.

2          THE COURT:  Sorry about that.  Anything about

3   those that would not allow you to be fair and impartial

4   here, Mr. Cole?

5          POTENTIAL JUROR:  Probably not.

6          THE COURT:  Okay.

7          POTENTIAL JUROR:  I am trying to --

8          THE COURT:  What else?  Anything else?

9          POTENTIAL JUROR:  I am trying to think.

10          THE COURT:  Sure.  Take your time.

11          POTENTIAL JUROR:  I really don't think, I can't

12   think of anything.  My sister got into a lot of stuff.

13          THE COURT:  Well, the thing is here, Mr. Cole,

14   what I say to all the jurors is the only proof we are going

15   to hear in this case is going to come from the witness

16   stand and from any exhibits.  Can you limit your

17   consideration to the facts of the case just to?

18          POTENTIAL JUROR:  Very, very, very anti-drug.

19          THE COURT:  Okay.

20          POTENTIAL JUROR:  I can tell you right off the

21   bat.

22          THE COURT:  That's fine.

23          POTENTIAL JUROR:  One of them is Centra.

24          THE COURT:  This guy?

25          POTENTIAL JUROR:  Are you related to John Centra?

- Voir dire - Panel I - Court -

1        MR. LOFARO:  That's his uncle.

2        MR. CENTRA:  Yes.

3        POTENTIAL JUROR:  I know him very well.  In fact,

4   he was in my high school when the harassment happened.

5        THE COURT:  You're not going to hold that against

6   Mr. Centra, are you?

7        POTENTIAL JUROR:  No.

8        MR. LOFARO:  He is a wonderful guy.  We all love

9   John Centra.  He is a prince.

10       THE COURT:  The bottom line, Mr. Cole, can you

11   promise Mr. Jennings, and can you promise the D.A. that you

12   can give the facts of this case a fair and impartial

13   consideration?

14       POTENTIAL JUROR:  I guess so.

15       THE COURT:  You will do your best, right?

16       POTENTIAL JUROR:  Yes.

17       THE COURT:  Mr. Centra, any questions?

18       MR. CENTRA:  No, Your Honor.

19       THE COURT:  Mr. LoFaro, questions?

20       MR. LOFARO:  I consent to let him go.

21       THE COURT:  It's up to you two, yes?

22       MR. LOFARO:  He said he is anti-drug.  He knows

23   John Centra.

24       POTENTIAL JUROR:  If you knew John then, you

25   never would have thought that he would be a Supreme Court

75

- Voir dire - Panel I - Court -

1    judge.

2              THE COURT:  We still don't think that.

3              MR. LOFARO:  Love him to death.  One of my

4    favorite people in the world.

5              MR. CENTRA:  Judge, I mean --

6              THE COURT:  It's up to you.

7              MR. CENTRA:  I mean, he said he could be fair and

8    impartial.

9              THE COURT:  Yes.

10             POTENTIAL JUROR:  I think so.

11             THE COURT:  Mr. Cole, why don't you have a seat

12   over here.  And we will let the lawyers ask you some

13   questions, okay?

14             POTENTIAL JUROR:  Where?

15             THE COURT:  Right over here next to this

16   gentleman, Mr. Breen.

17                    *              *              *

18             THE CLERK:  Juror No. 288, Roseann Molini,

19   M-o-l-i-n-i.

20             THE COURT:  I am sorry.  Spell the last name?

21             THE CLERK:  M-o-l-i-n-i.

22             THE COURT:  Hi, Miss Molini.

23             POTENTIAL JUROR:  Hello.

24             THE COURT:  How are you?

25             POTENTIAL JUROR:  Good.  How are you?

- Voir dire - Panel I - Court -

```
 1              THE COURT:  Good.  How about our five questions.
 2    Do you have any yes's to those?
 3              POTENTIAL JUROR:  I do.  This.
 4              THE COURT:  Have you ever had a car broken into?
 5    Anything taken from your house?
 6              POTENTIAL JUROR:  No.
 7              THE COURT:  Lucky.  A seat right over here next
 8    to this gentleman, okay?  Thanks, Miss Molini.
 9                    *              *              *
10              THE CLERK:  Juror No. 350, Alex Nagy, N-a-g-y.
11              THE COURT:  Is it N?
12              POTENTIAL JUROR:  Excuse me?
13              THE COURT:  Nagy?
14              POTENTIAL JUROR:  Yes.  That's fine.
15              THE COURT:  Mr. Nagy, how are you?
16              POTENTIAL JUROR:  Fine.
17              THE COURT:  Any of the five questions, any
18    questions to any of those?  Victim of a crime?
19              POTENTIAL JUROR:  Somebody across the street
20    pled to or plea bargained with rape.
21              THE COURT:  A neighbor?
22              POTENTIAL JUROR:  That neighbor.
23              THE COURT:  How long ago was that?
24              POTENTIAL JUROR:  Two years.
25              THE COURT:  Anything about that that wouldn't
```

- Voir dire - Panel I - Court -

1    allow you to be fair and impartial in this case?

2              POTENTIAL JUROR:  No, sir.

3              THE COURT:  Okay.

4              POTENTIAL JUROR:  And then my sister's daughter

5    just like convicted and went to jail.

6              THE COURT:  Okay.  Your sister's daughter?

7              POTENTIAL JUROR:  My sister's daughter.

8              THE COURT:  Okay.  And she ended up going to

9    jail?

10             POTENTIAL JUROR:  Yes.

11             THE COURT:  How long ago was that?

12             POTENTIAL JUROR:  10?

13             THE COURT:  Where was that, was it local?

14             POTENTIAL JUROR:  That was in Massachusetts.

15             THE COURT:  Over in Massachusetts?

16             POTENTIAL JUROR:  Yes.

17             THE COURT:  And anything about that that would

18   not allow you to be fair here?

19             POTENTIAL JUROR:  I don't think so.

20             THE COURT:  How come?

21             POTENTIAL JUROR:  I don't think about that.

22             THE COURT:  How about any of the others?

23             POTENTIAL JUROR:  Nope.

24             THE COURT:  Any questions?

25             MR. CENTRA:  No, Your Honor.

- Voir dire - Panel I - Court -

1          MR. LOFARO:  Nothing, Judge.

2          THE COURT:  Mr. Nagy, right over here next to

3     this young lady.  Thank you.

4                    *              *              *

5          THE CLERK:  Juror No. 251, Sandra Case, C-a-s-e.

6          THE COURT:  Sandra Case.  Good afternoon, Miss

7     case.

8          POTENTIAL JUROR:  Hi.

9          THE COURT:  I have the questions right here also,

10    ma'am.  Any yes's to any of our questions?

11    (Pause.)

12         POTENTIAL JUROR:  No.

13         THE COURT:  Okay.  If you have a seat right here?

14    Thank you.

15         POTENTIAL JUROR:  Okay.

16                    *              *              *

17         THE CLERK:  Juror No. 329, Pasqualina Lazore,

18    L-a-z-o-r-e.  First name is P-a-s-q-u-a-l-i-n-a.

19         THE COURT:  Miss Lazore?

20         POTENTIAL JUROR:  Hi.

21         THE COURT:  How are you?

22         POTENTIAL JUROR:  I am good, thanks.  How are

23    you?

24         THE COURT:  Good.  Thank you.

25         POTENTIAL JUROR:  Somebody, I do have -- I have a

- Voir dire - Panel I - Court -

1  brother that was charged with similar charges in this case.

2         THE COURT:  Locally?

3         POTENTIAL JUROR:  Yes.  Locally and in Onondaga

4  County.

5         THE COURT:  How long ago?

6         POTENTIAL JUROR:  Two or three years ago.

7         THE COURT:  Have they been resolved?

8         POTENTIAL JUROR:  They have, yes.

9         THE COURT:  Do you feel that this is probably not

10  the case for you?

11         POTENTIAL JUROR:  I have been mulling over this.

12  I think it has been very traumatic for us.

13         THE COURT:  Of course.  And I want, this is the

14  time to tell us.

15         POTENTIAL JUROR:  Yes.

16         THE COURT:  This is why we do it here.  This is

17  why we appreciate you telling us.

18         POTENTIAL JUROR:  Right.

19         THE COURT:  Mr. Jennings is here.  He has certain

20  charges.  He is presumed to be innocent.  Mr. Centra is

21  here.  He is trying to prosecute the case.  And we want

22  jurors that feel comfortable sitting on a particular case.

23  And I know this happened with your brother, who was

24  probably prosecuted by the D.A.'s office here?

25         POTENTIAL JUROR:  A-hum.

- Voir dire - Panel I - Court -

1   THE COURT:  Would you say this is not the case or
2   do you think you could be fair in this one?
3   POTENTIAL JUROR:  I don't want to say I can't be
4   fair because I know it's not right.
5   THE COURT:  No, it's not.
6   POTENTIAL JUROR:  I don't think this is -- I
7   think, emotionally, it would be.
8   THE COURT:  It's too raw right now?
9   POTENTIAL JUROR:  Yes.
10  THE COURT:  Okay.  Consent, gentlemen?
11  MR. LOFARO:  That's fine.
12  MR. CENTRA:  Yes.
13  THE COURT:  We are going to have you get your
14  paperwork.  Go back downstairs.  Thank you, ma'am.  I
15  appreciate it.
16          *               *               *
17  THE CLERK:  Juror No. 306, Mylene Hayes,
18  H-a-y-e-s.  First name is M-y-l-e-n-e.
19  THE COURT:  Mylene Hayes.  How are you?
20  POTENTIAL JUROR:  Good.
21  THE COURT:  Five questions, Ms. Hayes, any yes's
22  to these?
23  POTENTIAL JUROR:  One close family member was
24  assaulted.
25  THE COURT:  Was assaulted?

- Voir dire - Panel I - Court -

1        POTENTIAL JUROR:  But it has been a long time,

2  over thirty years ago.

3        THE COURT:  Locally?

4        POTENTIAL JUROR:  Yes.

5        THE COURT:  Was there anything about that today

6  that would not allow you to be fair and impartial?

7        POTENTIAL JUROR:  It was --

8        THE COURT:  It was the defendant?  She said the

9  defendant was a black gentleman.  That was thirty years

10  ago.  Mr. Jennings is obviously African American.  Is there

11  anything about that that would not allow you to be fair

12  here?

13        POTENTIAL JUROR:  No.

14        THE COURT:  Okay.  Anything else with regards to

15  these questions?

16        POTENTIAL JUROR:  No, they are all no's.

17        THE COURT:  Okay.  Have a seat here.

18        *        *        *

19  (Back in open court:)

20        THE COURT:  Folks, I have a series of just six

21  questions.  So, let me ask my six questions.  Then we will

22  break for lunch.  And we will bring you all back.  Then I

23  will have the attorneys ask their questions next.  Okay?

24  And when I ask my questions, if your answer is yes, just

25  raise your hand and I will go through each one of you and

- Voir dire - Panel I - Court -

1    we will get through this.  It shouldn't take very long.

2            Do any of you know the defendant Mr. Jennings,

3    Mr. LoFaro, or Mr. Centra himself?  Do any of you know any

4    of these three gentlemen?  Yes, sir?

5            JUROR NO. 9:  Mr. LoFaro.

6            THE COURT:  You know Mr. LoFaro because your

7    children went to school together.  We talked about that up

8    here, correct?

9            JUROR NO. 9:  Correct.

10           THE COURT:  Anybody else?  Thank you, sir.  Do

11   any of you know the District Attorney, Mr. Fitzpatrick, or

12   anyone in the District Attorney's office?  Not in the back?

13   Just you folks?  Thank you.

14           JUROR NO. 15:  I think Shaun Chase, if he is

15   still with the A.D.A.

16           THE COURT:  You know Shaun Chase.  He is an

17   assistant D.A.  Is there anything about that relationship,

18   sir, that's Mr. Crandell, that would not allow you to be

19   fair here.

20           POTENTIAL JUROR:  No.

21           THE COURT:  Anybody else know anybody from the

22   D.A.'s office?  Great.

23           Do any of you have any close friend or relative

24   that works in law enforcement?  We will start with the back

25   row.  So we go put them down right now.  Yes, ma'am?

- Voir dire - Panel I - Court -

1      JUROR No. 5:  My boss is a judge in the town of

2  Clay.

3      THE COURT:  Which one?

4      JUROR No. 5:  Brian Lauri.

5      THE COURT:  I am sorry for you.  Mr. Lauri, he

6  used to work for me.  But don't remind him, okay?  Anything

7  about that relationship that would not allow you to be fair

8  and impartial here?

9      JUROR No. 5:  No.

10      THE COURT:  Great.  Thank you, ma'am.  Yes?

11      JUROR NO. 7:  My niece is a lawyer.  She is

12  currently in Philadelphia, doing clerkship.  But she worked

13  for Bond, Schoeneck & King.

14      THE COURT:  Okay.  And anything about that

15  relationship that would not allow you to be fair here?

16      POTENTIAL JUROR:  No.

17      THE COURT:  And the middle row, could you raise

18  your hands again?  Yes, at the end?

19      JUROR NO. 8:  Cousin is a state trooper.

20      THE COURT:  Is it locally?

21      POTENTIAL JUROR:  Yes.

22      THE COURT:  Okay.  And I will give you the name

23  of the police officers that are potentially, they are

24  Syracuse police officers.  Anything about the fact that he

25  is with the troopers, that would not allow you be to be

- Voir dire - Panel I - Court -

1    fair and impartial here?

2               POTENTIAL JUROR:  No.

3               THE COURT:  Folks, you're all going to hear me

4    say the same thing.  The ultimate question is, knowing what

5    you know, or what happened to you in your life, can you

6    still be fair and impartial?  Who else in the second row?

7    Law enforcement, yes, sir?

8               JUROR NO. 9:  Some Syracuse police officers, when

9    I was --

10              THE COURT:  Just so I may:  Potential officers

11   are Officer Decker, Ettinger, Officer Proud, and Chief

12   Fowler.  Do you know any of those?

13              POTENTIAL JUROR:  Officer Proud.

14              THE COURT:  Anything about that relationship that

15   would not allow you to be fair and impartial here?

16              JUROR NO. 9:  No.

17              THE COURT:  How about, yes, sir?

18              JUROR NO. 12:  My brother-in-law works at the

19   County correctional facility.

20              THE COURT:  Up at Jamesville?

21              POTENTIAL JUROR:  Right over here, next door.

22              THE COURT:  Next door?  The Justice Center?

23              JUROR NO. 12:  Justice Center.  I am sorry.

24              THE COURT:  He is with the Sheriff's Department?

25              POTENTIAL JUROR:  Correct.  And I am in the fire

- Voir dire - Panel I - Court -

1   department.  Familiar with a bunch of Sheriff's Department

2   as well as Syracuse City police officers.

3                   THE COURT:  Is that a volunteer fire department?

4                   POTENTIAL JUROR:  Yes.

5                   THE COURT:  Where is that?

6                   POTENTIAL JUROR:  Fairmount.

7                   THE COURT:  Fairmount.  Okay.  And anything about

8   those relationships, sir, that would not allow you to be

9   fair and impartial here?

10                  JUROR NO. 12:  No.

11                  THE COURT:  Okay.  Thank you.  And did you have,

12  yes, ma'am?

13                  JUROR NO. 14:  My brother is a police officer.

14                  THE COURT:  Where?

15                  POTENTIAL JUROR:  Orange County.  And he is

16  retired from N.Y.P.D.

17                  THE COURT:  Everybody else is down in Orange

18  County?

19                  POTENTIAL JUROR:  Yes.

20                  THE COURT:  Anything about that relationship,

21  Miss Gallardo, that would not allow you to be fair and

22  impartial here?

23                  How about in the front row, yes, sir?

24                  JUROR NO. 16:  So I play softball with a few

25  guys.  Chad King, I believe the Syracuse city.  Jim

- Voir dire - Panel I - Court -

1   Mathers, who is federal probation in this area.  And then

2   my son's hockey coach works in Jamesville.

3                THE COURT:  Okay.  And you have those

4   relationships.  We will hear from some police officers in

5   this case.  And can you tell us, Mr. Breen, you can still

6   be fair and impartial?

7                JUROR NO. 16:  Yes.

8                THE COURT:  Who else in the front, yes, ma'am?

9                JUROR NO. 18:  My cousin is a Syracuse police

10   officer.

11                THE COURT:  Wasn't one of the names I read?

12                POTENTIAL JUROR:  No.

13                THE COURT:  Can you still be fair and impartial?

14                POTENTIAL JUROR:  Yes.

15                THE COURT:  Yes, sir?

16                JUROR NO. 19:  My distant --

17                THE COURT:  Distant.

18                POTENTIAL JUROR:  -- a cousin, actually, nieces

19   and a brother-in-law.

20                THE COURT:  Okay.

21                POTENTIAL JUROR:  -- in law enforcement in

22   Arizona.

23                THE COURT:  You are letting us know?

24                POTENTIAL JUROR:  Yes.

25                THE COURT:  It's better to let us know more or

- Voir dire - Panel I - Court -

1    less so we can know now, folks.  I appreciate your telling

2    me.  So you could still be fair and impartial?

3              POTENTIAL JUROR:  Yes.

4              THE COURT:  How about the last two.  Did you have

5    your hands raised?  Okay, thank you.

6              Let me read the entire witness list.  What I did

7    was I asked the People to give me the outside list of

8    witnesses that we may hear from.  I don't expect to hear

9    from all these people.  But I am going to read you these

10   names.  If you know any of them, if you have haven't

11   already told us, you could let us know:  Officer Jeremy

12   Decker.  Officer Darrin Ettinger.  Sergeant David Proud.

13   And Chief Frank Fowler for the Syracuse Police Department.

14             Jennifer Wilson.  Willie Jones.  Howard Davis.

15   David Chaplain.  Hatisha Holmes.  Mallory Livingston.  Do

16   any of you folks know any of those individuals?  A few of

17   you?  No?  Okay.  Thank you.

18             And folks, my last question to you before we

19   break, can all 21 of you promise me that you will follow

20   each instruction that I give to you?  Yes?  All right.

21             Let me give you the admonition that I am going to

22   give to all of you.  We haven't heard a speck of evidence.

23   We haven't heard a witness.  We haven't heard anything.

24   Don't talk about this case to each other.  Don't allow

25   anyone to talk about this to you.  Promptly report to me or

- Voir dire - Panel I - Court -

1   one of our court officers if anybody does try to talk to

2   you about the case.  And there is not going to be anything

3   now to read, or any of those things.

4          So we are going to break.  I have, it's 22

5   minutes after 12:00.  If we could be back at 1:30.  If we

6   could be back here at 1:30, we will pick right up with the

7   questions of counsel.

8          We will get going with the rest of the jury

9   selection.  And enjoy your lunch.  We will see you at 1:30.

10  Okay, thank you very much, everybody.

11         You 21, remember your seats.  Remember your

12  seats.  Remember who you're next to.

13  (Recessed for lunch at 12:23 p.m.)

14              *              *              *

15         AFTERNOON SESSION - 2/6/17

16  (Jury voir dire of Panel I continued Monday afternoon,

17  February 6, 2017, at 1:42 p.m.)

18         THE COURT:  Thanks, everybody.  Have a seat.  We

19  are here with counsel for both sides, and with the

20  defendant, and the members of the jury.  Thank you folks

21  for your promptness.  We greatly appreciate that.  And I am

22  done with my questions.  And I will turn to Mr. Centra.

23  Are you ready to go?

24         MR. CENTRA:  I am.  Thank you, Judge.

25         THE COURT:  All right.  I should have said before

- Voir dire - Panel I - Centra -

1    you go, Joe, I will say it though, if we get close to the

2    time limit, I will give you a signal.

3            MR. CENTRA:  All right.  Thank you.

4    (Voir Dire Examination of Panel I by Mr. Centra:)

5            MR. CENTRA:  How is everybody doing today?

6            POTENTIAL JUROR:  Good.

7            MR. CENTRA:  You ready?  Watched the Super Bowl

8    last night?  I thought it would be a blow-up but it was a

9    pretty good game at the end.  All right.

10           As the Judge told you my name is Joe Centra.  I

11   am here representing the People of the State of New York.

12   I am charged with prosecuting this case.

13           Now as the Judge touched on during your

14   instructions, I have to prove my case beyond a reasonable

15   doubt, and I welcome that burden.  But I don't have to

16   prove my case beyond all doubt.  One of the examples here I

17   use, if you were to wake up in the morning, you take a look

18   outside, in Syracuse the snow is an example.  It's pretty

19   preferable.  However, you take a look outside and you know

20   you see a dusting of snow on the ground.  You automatically

21   assume that it's snowed while you're sleeping.  That's what

22   a reasonable conclusion would be.  Although it's possible

23   that a Hollywood crew came through, set up a scene for a

24   winter storm, or something along those lines, that's

25   possible.  But it wouldn't be reasonable to come to that

1    conclusion.  You know, do you agree with me on that?

2    That's kind of the difference I am having.  You looked --

3    but the Judge will instruct you on the law.  I am just

4    going to ask you to listen to him in regards to that.  And

5    throughout the course of this, if you are selected, to take

6    a look at all the evidence presented, fairly and

7    impartially.

8         Now I am not going to be able to speak with each

9    and every one of you individually.  So if you do have any

10   questions, feel free to speak up and I can answer anything

11   that you do have.  So as the Judge briefly touched on the

12   charges here that you're going to be set to consider, are

13   two drug counts:  Criminal possession of a controlled

14   substance in the third degree; and criminal possession of a

15   controlled substance in the fifth degree.  In short, it's

16   alleged that the defendant was found in possession of

17   cocaine.  Now is there anybody here that would be

18   uncomfortable listening to a trial that involved drug

19   charges?  I know it's not anything violent or anything like

20   that.  But everybody would be fine to listen and sit

21   through a case that involved these?  Okay.

22        As I mentioned, it's a drug charge.  I know that

23   there is varying positions on drug laws.  Anybody here

24   believe that drugs should be legal?  All right.  How many

25   people here believe that marijuana should be legalized?

- Voir dire - Panel I - Centra -

1    (Jurors indicating.)

2         MR. CENTRA:  Yes.  Medical purposes?

3         JUROR NO. 1:  A-hum.

4         MR. CENTRA:  Can I see the hands again?  Yes,

5    Miss Deryke, why do you believe that?

6         JUROR NO. 11:  Just because there are many other

7    states like that.  It's something that's come up.  A lot

8    now of the states are considering.

9         MR. CENTRA:  A lot of states are legalizing it.

10   Does everybody feel the same way about cocaine?  Anybody

11   here that believe that should be legalized?

12   (No juror response.)

13        MR. CENTRA:  Now one of the things the Judge is

14   going to ask you to look at, it's your job to take a look

15   at all the witnesses presented, and it's your job to judge

16   their credibility.  There is different factors you can look

17   at in determining, you know, somebody's credibility.  You

18   know, the mannerisms, voice inflection, you know, something

19   you guys bring in here with life experience.  And that's

20   what I am going to ask you to bring.  How many people here

21   have children?

22   (Jurors indicating.)

23        MR. CENTRA:  A lot.  How many have younger

24   children?

25   (Indicating.)

- Voir dire - Panel I - Centra -

1      MR. CENTRA:  How old you are your children,

2  ma'am?

3      JUROR No. 5:  I have three boys:  Fifteen year

4  old; thirteen years; and five year old.

5      MR. CENTRA:  Do they ever get in a little bit of

6  mischief growing up?  Yes?  Innocent stuff?

7      JUROR No. 7:  Innocent stuff, yes.

8      MR. CENTRA:  And when you confront them with, you

9  know, if they got into, you see a lamp broken or something

10  along those lines, would you confront them and ask who did

11  it?

12      JUROR No. 7:  Absolutely.

13      MR. CENTRA:  Would you be able to take a look at

14  your children, you know whether or not they are telling you

15  the truth?

16      POTENTIAL JUROR:  Oh, yes.

17      MR. CENTRA:  What are some of the things you can

18  look at in whether they are telling the truth or not?

19      POTENTIAL JUROR:  Their body language.  You can

20  generally tell they are lying or not lying.  I have a

21  series of questions.  They all know me, that if I don't

22  find out the truth today, I will find out tomorrow.

23      MR. CENTRA:  Yes.  So, you know, it's life

24  experience.  It's things that you pick up that you can

25  tell.  For example, let's say you tell one of your

1  children, I will use the youngest, not to have any desserts

2  or anything before dinner.  You don't want them to spoil

3  their dinner.  And then, you walk into the kitchen, you see

4  the cookie jar, the lid is off.  And you take a look at

5  your child, you see some crumbs and chocolate over, around

6  the corner of their mouth.  You ask them, did you have a

7  cookie?  They will say:  Of course, not mom; you told me

8  not to.  You take a look at, take a look at your child's

9  face and you use the deduction there.  You know, you see

10  the, you see the cookie jar.  You see his face.  You know,

11  you know what that is.  That's kind of what I am asking

12  everybody to look at here.  It's take the evidence.  You

13  take you know what there is and you determine the

14  credibility.  You determine whether there is enough

15  evidence to go forward.  Can everybody agree to do that?

16  All right.

17          Now a little more specifics in regards to this

18  allegation.  Like I said, the Judge will read you the law.

19  You will listen to him.  He reads that to you.  But here

20  the defense is accused of possessing what appeared to be

21  approximately two hundred sixty-two milligrams, a small

22  amount of cocaine.  Does anybody here believe just because

23  it's such a minute amount that you wouldn't be able to find

24  the defendant guilty if I prove my case beyond a reasonable

25  doubt?

- Voir dire - Panel I - Centra -

1        Can everybody promise me you can listen to the

2    law as the Judge reads it to you and follow that

3    instruction, follow that law, even though you may not feel

4    that it's, you know, the way that you would like it to be?

5    It's kind of like the example I like to use is somebody

6    walks into a Wegmans.  You know, you see them take a walk.

7    They go in, grab a candy bar in their coat.  They walk out.

8    They end up getting caught.  It's not the crime of the

9    century but still a crime.  And I would ask you to all take

10   a look at the law here.

11       Anybody here, I think that was Mr. Berge?  Yes,

12   you're an attorney?

13       JUROR NO. 6:  I am.

14       MR. CENTRA:  What kind of attorney?

15       JUROR NO. 6:  Army attorney.

16       MR. CENTRA:  What do you do for, if you don't

17   mind me asking?

18       POTENTIAL JUROR:  Mostly administrative and

19   regulatory, human resources kind of stuff.

20       MR. CENTRA:  You deal with any kind of criminal

21   nature?

22       POTENTIAL JUROR:  I don't do criminal.

23       MR. CENTRA:  This would all be --

24       POTENTIAL JUROR:  I did family law in the past.

25       MR. CENTRA:  I guess you could have a little bit

- Voir dire - Panel I - Centra -

1  of cross-over, right?  In some cases?

2          POTENTIAL JUROR:  Not too much.  I did child

3  abuse and neglect for a while.

4          MR. CENTRA:  All right.  And would you be able to

5  take at look at all the evidence fairly and impartially,

6  listen to the witnesses and base your determination on that

7  if you're selected?

8          POTENTIAL JUROR:  Yes.

9          MR. CENTRA:  Does anybody here have any like

10  moral or religious beliefs that would prevent them from

11  finding the defendant guilty?  So all I am really asking

12  everybody here is just kind of an open mind during the

13  course of this, to listen to everything, take a look at all

14  the witnesses.  You determine the credibility.  You

15  determine the evidence, and if I prove my case beyond a

16  reasonable doubt, I am going to ask you all to find the

17  defendant guilty.

18          It's again, like I thank you for your time.  Does

19  anybody have any questions of me before I let you go here?

20  Thanks, everyone.

21          THE COURT:  Thanks, Mr. Centra.  Mr. LoFaro?

22  (Voir Dire Examination of Panel I by Mr. LoFaro:)

23          MR. LOFARO:  Good afternoon, ladies and

24  gentlemen.  My name is John LoFaro.  I represent Mr.

25  Jennings over here.  And I agree with just about everything

1    that Mr. Centra said, everything that the Judge said, very

2    well stated.  What I was told a long, long time ago about

3    trials in general, I have always kept in mind.  And I kind

4    of guide myself that way when I am trying a case, when I

5    watch a trial.  And it's so unbelievably simple but it

6    means so much.  It's that a trial is really nothing more

7    than one story versus another story.  And everyone sits

8    here and makes a decision when they assess credibility as

9    to which story is more compelling, which is more credible,

10   which is more believable at the end of the day.  And the

11   only difference is between two competing stories.  That's

12   an oversimplification, especially in a criminal trial.

13          If you have a civil trial, it's a preponderance

14   of the evidence.  The burden of proof isn't as high.  So,

15   it's more of a level playing field when you look at

16   competing stories.  You could pick the story you feel is

17   more believable.

18          The Judge has instructed you, and Mr. Centra

19   touched on it too, I won't touch on it to a great extent

20   because he already explained it at length.  And he will

21   explain it to you again.  But it's a very, very, very

22   important concept is beyond a reasonable doubt.  So that

23   really has to be kept in mind.  Because the defendant is

24   cloaked with that innocence, reasonable doubt.  So it's far

25   more than just one person's story versus another person's

story.  It has to be that one person's story beyond a
reasonable doubt.  Not just, yes, that sounds like I
believe him.

And with regard to crimes in general, there is
different, different elements of a crime that must be
proven.  And for him to be found guilty of anything at all,
each and every element of each and every crime that he is
charged with needs to be proven.  So you can't say:  Oh,
yes, he did this and he may have done that, so I am going
to vote to convict.  It has to be:  I believe he has done
this beyond a reasonable doubt, element No. 1.  I believe
this element, No. 2.  And I believe this element, No. 3.
Now I feel satisfied that I can make that decision.  But
unless you can reach that conclusion, then you can't, and
the Judge will instruct, you find him guilty beyond a
reasonable doubt of either charge that he's charged with
now.

I hate -- I am a big fan of Mr. Centra.  I don't
want to use his words against him.  But I would ask you as
jurors, throughout the course of this trial, to keep in
mind his words with regard to the drugs that are alleged to
have been found.  A small amount.  First described the
amount of drugs that were allegedly possessed by my client.
And beyond that, he said:  A minute amount.  So we have a
"small" amount and a "minute" amount.  Now bear in mind

- Voir dire - Panel I - LoFaro -

1    that he's charged with possession, which is a D-felony.  He

2    is also charged with a B-felony:  Intent to distribute or

3    sell.  Well, I am not going to ask you to draw any

4    conclusions right now.  But I think you know where I am

5    going with this, a small amount, a minute amount.  And the

6    facts will show a lot more about those two things when we

7    get a little bit further into the trial.

8          The other thing that bears mention, and the Judge

9    covered it with his opening round of questions, Mr. Centra

10   asked a couple of questions on it, it's very, very

11   important.  I think we all realize the very difficult job

12   that law enforcement has in this day and age.  Everyone

13   here has, not everyone, but many members of the prospective

14   jury pool here have a number of law enforcement people that

15   they know, are friendly with, work out with, are in school

16   with, family members.  But I think one of the very, very

17   important elements is:  Are you going to give more credence

18   to somebody that sits up there in a uniform, as opposed to

19   someone who is up there charged with a crime?  And if you

20   can't do that, you know, then you really need to be honest

21   with yourself, honest with me, honest and the Court and

22   say, you know, what he -- I really believe, you know, that

23   99 percent of the time, I am going to side with the officer

24   because I think, you know, they are doing a good job.  They

25   are doing a tough job.  And they are telling the truth.

- Voir dire - Panel I - LoFaro -

99

Because obviously, that's not always the case.  It may be the case but it may not be the case.

It may be the case that Mr. Jennings over there, has been the deprived of some of his constitutional rights. Maybe that Mr. Jennings over there is not guilty of anything that he has been charged with.  And everybody, everybody that sits here today has been willing to entertain that possibility, allow him to be cloaked in that presumption of innocence, or a very real problem is created.

I know, I have three children.  It seemed like almost every hand went up over here when we spoke about children.  When it comes back to law enforcement, I like to draw a little analogy myself.  I am probably more guilty than anyone else, but I have small children.  I am probably more guilty of it than the children themselves.  But with regard to law enforcement, again, very difficult job to do. But you're going to hear a lot of talk about furtive movements, high crime areas, and things that may be tantamount to profiling, down the road.  And again this will come out a little bit more too.  But I will like to the use footprint analogy.  You have small children? Everyone here probably can agree that one of the things you always tell your kids, especially in this weather, especially living in Syracuse is, make sure you take your

1    shoes off when you come in the door.  Well, that's what we

2    want them to do.  And again, I am guilty myself of it.  If

3    you're in a hurry or if you want to find a shortcut, you

4    don't always take those shoes off at the front door.  And I

5    know my kids don't.  And you know, what does that create,

6    is this, it creates a mess.  I have got to mop up the

7    floor.  Now you have got work to do.  And it's not a good

8    situation.  But the reason why you don't take the shoes off

9    is because you're looking to take a shortcut.  And

10   unfortunately, sometimes law enforcement does this too.  So

11   they don't take their shoes off.  They take the shortcuts.

12   They go right, right to the -- they walk in the door, they

13   go right for the refrigerator.  They help themselves to a

14   Coca-Cola; and that's the shortcut.

15            But procedurally speaking, the general public,

16   the lay person suffers if he is denied his constitutional

17   rights, because law enforcement has decided to take a

18   shortcut, has decided to not take their shoes off.  Did he

19   go right where they feel they needed to be to get

20   accomplished, they feel they need to accomplish?  They are

21   going to draw conclusions that they shouldn't draw, and not

22   follow the proper procedures that they should follow.

23            With that being said, I am going to now, Judge, I

24   apologize, Your Honor, are we asking specific questions of

25   specific jurors right now or did you just want to open?

1    THE COURT:  Right now.

2    MR. LOFARO:  Okay.

3    THE COURT:  Now is the time, John.

4    MR. LOFARO:  Thank you, Judge.  I did make some

5    notes.  Again, it does that, almost everybody here has some

6    children and has some pretty interesting, pretty

7    interesting stories to tell.  I am going to give each of

8    you an opportunity to tell me a little bit about yourself

9    and your feelings right now.

10    One of my, one of my shortcomings -- I never shut

11    up -- is it's really, this is really my chance to give you

12    an opportunity to, you know, share some of your personal

13    life characteristics with us so we can all figure out you

14    know who we are and whether we actually you know are going

15    to be good jurors.  Which again, as the Judge said, as Mr.

16    Centra said, this is your civic duty.  It's a pain in the

17    neck.  I know a lot of people don't want to do it.  Every

18    once in a while there is a stray individual, yes.  I want

19    to see what the system is like, and I am curious to see the

20    way a jury trial works.  But more often than not, I think

21    the general consensus is, as all of you have said who have

22    got small kids that:  I need to be home for when they get

23    off the bus.  I have got a job that's not going to pay me

24    unless I can get back to work, you know, some time

25    reasonably soon.  And others probably say, you know:  I

102

- Voir dire - Panel I - LoFaro -

1   just don't want to be here.  But thank you all for being

2   here.

3           I was selected one time.  I just ran into a

4   friend of mine at lunch who was sitting in a jury pool

5   right now.  He said his trial might be two and-a-half weeks

6   long.  So, you know, my heart went out to him.  I know he

7   is a business man.  He runs his own company.  Again, thank

8   you all for being here, and doing your civic duty.

9           Now let me, I will, I will try and be brief as I

10  said, I tend to go on and on.  Ms. Robbins?

11          JUROR NO. 1:  Yes.

12          MR. LOFARO:  We got off to the start at the

13  beginning, Miss Robbins, but your first -- and again, this

14  is just, this is, a lot of stuff doesn't have anything to

15  do with the law or the guilt or innocence of the victim.

16  It's just to get a sense of who you are.  And I notice that

17  you put on here that you did have someone that you knew

18  that works in a law office or had some type of a

19  relationship to a law office?

20          JUROR:  No.

21          MR. LOFARO:  Are you Miss Robbins?

22          JUROR NO. 1:  Yes.

23          MR. LOFARO:  Maybe you checked the wrong box.  It

24  says.

25          POTENTIAL JUROR:  My uncle is a prison guard.

- Voir dire - Panel I - LoFaro -

1        MR. LOFARO:  All right.  Where is he a prison

2   guard?

3        POTENTIAL JUROR:  He was, like, works an hour

4   away from the town.  I am trying to think.  It's toward --

5   he lives in Elbridge.

6        MR. LOFARO:  Okay.

7        POTENTIAL JUROR:  He goes -- I don't know where

8   he works.

9        MR. LOFARO:  Maybe Auburn?

10       POTENTIAL JUROR:  No, I think he is farther out.

11       MR. LOFARO:  Okay.

12       POTENTIAL JUROR:  He has been there four years.

13       MR. LOFARO:  Did you say you had any other

14   individuals in law enforcement or no?

15       JUROR NO. 1:  My brother -- well, he wasn't, he

16   was my cousin's husband.  He was a sheriff in I guess

17   Manlius, he is relatively new.

18       MR. LOFARO:  Again, Miss Robbins, with regard to

19   what I was talking about earlier, would you give any

20   greater credence to an officer up there giving testimony

21   than you would to an individual charged with a crime giving

22   testimony?

23       POTENTIAL JUROR:  No.

24       MR. LOFARO:  Okay.  Let's go to Mr. McCarthy.

25       JUROR NO. 2:  Yes.

1    MR. LOFARO:  You're Mr. McCarthy?

2    JUROR NO. 2:  Yes.

3    MR. LOFARO:  I wrote:  Nice guy on here.  Mr.

4 McCarthy, we don't know each other that way.  You must have

5 made a big impression here at the podium.  Buffalo, New

6 York.  That's where my paternal grandmother was born in

7 Buffalo.  All right.  Let's see.  N.R.C., that's where

8 you're currently employed?

9    JUROR NO. 2:  Yes, sir.

10    MR. LOFARO:  What's N.R.C.?

11    POTENTIAL JUROR:  We're National Response

12 Corporation.  I am a Haz-Mat technician.  Our response is

13 for bills, confined space rescues, stuff like that.

14    MR. LOFARO:  Okay.  And the same question to you,

15 any greater credence led to a law enforcement officer, to

16 anyone else, you could be impartial as you sit here today?

17    POTENTIAL JUROR:  Right.

18    MR. LOFARO:  Let's see.  Mr., is it Donahoe?

19    POTENTIAL JUROR:  Yes.

20    MR. LOFARO:  Donahoe.  You're an architect, Mr.

21 Donahoe?

22    JUROR NO. 3:  I am.

23    MR. LOFARO:  And you have a chemist, a physical

24 therapist and an administrative assistant all in-house?

25    JUROR NO. 3:  All in-house.

1    MR. LOFARO:  What an interesting cross-section of

2  individuals.  Good for you.  Very, very interesting.  Well,

3  then I will ask you the same question but I have no doubt

4  with all those diverging opinions and professions, you

5  would have no problem being impartial?

6    POTENTIAL JUROR:  No.

7    MR. LOFARO:  And sitting in a jury.  Same to you,

8  Mr. Russo?  The question being, would you give any greater

9  credence to someone wearing a uniform, a law enforcement

10  officer, than you would a lay person?

11    JUROR NO. 4:  Well, 95 percent of them are doing

12  a good job.

13    MR. LOFARO:  Yes.  Absolutely.  Yes.  Yes, that's

14  true.  The question is, and maybe you just answered it for

15  me.  Are you telling me you would give a law enforcement

16  officer the benefit of the doubt, a little more credibility

17  than because of the uniform?

18    JUROR NO. 4:  Yes, because they are doing their

19  job.  They are doing a tough, tough job out there.

20    MR. LOFARO:  Never been tougher.

21    POTENTIAL JUROR:  Yes.

22    MR. LOFARO:  Yes.  Miss Dewey?

23    JUROR No. 5:  A-hum.

24    MR. LOFARO:  You work for Judge Lauri?

25    JUROR No. 5:  Yes.

- Voir dire - Panel I - LoFaro -

1    MR. LOFARO:  Former prosecutor.  Para-military.

2    That's a really tough question for you.  But, you know, I

3    have no doubt that you're going to answer honestly.  You

4    have no problem with being impartial whatsoever?

5    POTENTIAL JUROR:  Yes, I can be.

6    MR. LOFARO:  Okay.  What did you do out there in

7    the Town of Clay.  Did you actually work?

8    POTENTIAL JUROR:  No, I work in his law office.

9    MR. LOFARO:  Okay.  All right.  So you do a lot

10   of real estate maybe, or no?

11   JUROR NO. 5:  Yes, real estate.

12   MR. LOFARO:  Yes.

13   POTENTIAL JUROR:  Among other things.

14   MR. LOFARO:  Yes.  I notice on here it says

15   you're a reader?

16   POTENTIAL JUROR:  Yes.

17   MR. LOFARO:  Who do you like to read?

18   JUROR No. 5:  Nicholas Sparks.

19   MR. LOFARO:  The Notebook?

20   POTENTIAL JUROR:  Yes.

21   MR. LOFARO:  Who doesn't like Nicholas Sparks?

22   At least the movies, not the novels.

23   POTENTIAL JUROR:  Right.

24   MR. LOFARO:  I just saw one the other day.  I

25   can't remember the other name of it.  It was a newer one.

- Voir dire - Panel I - LoFaro -

1   And what you alluded to earlier, that wouldn't affect your

2   ability either?

3          JUROR No. 5:  No, I don't think so.

4          MR. LOFARO:  Okay.  Counselor, no problems being

5   impartial?

6          JUROR NO. 6:  All of our people are in uniform.

7   So that's what I do every day.

8          MR. LOFARO:  Yes, thank you for your service.

9          POTENTIAL JUROR:  You're welcome.

10         MR. LOFARO:  Ms. Dhamoon, I couldn't wait to get

11  through lunch because I was reading these, and I don't

12  know, pardon my ignorance, I have no idea what a Ku-man

13  [ph] instructor is.  But I am anxious to find out?

14         JUROR No. 7:  It's an after-school enrichment

15  program for kids from preschool to high school.

16         MR. LOFARO:  Wow.

17         POTENTIAL JUROR:  So.

18         MR. LOFARO:  That's great.  Like I guess, I could

19  say the same thing, thank you for your service too.  It's

20  simply a vital role.

21         Mr. Corbett?

22         POTENTIAL JUROR:  Yes.

23         MR. LOFARO:  Did you say you had some family

24  members that were involved in law enforcement?

25         JUROR NO. 8:  Yes.  My cousin is with the state

- Voir dire - Panel I - LoFaro -                    108

1    troopers.

2            MR. LOFARO:  Is he stationed locally or barracks

3    nearby?

4            POTENTIAL JUROR:  I believe he is in Elbridge,

5    yes.

6            MR. LOFARO:  Okay.  And are you close with him or

7    are you?

8            POTENTIAL JUROR:  Not very, no.

9            MR. LOFARO:  Not very.  Your relationship with

10   him would not have been?

11           POTENTIAL JUROR:  No, it is not.

12           MR. LOFARO:  Okay.  And Mr. Herrera, same

13   question to you.  Did you say you work all with these guys?

14           POTENTIAL JUROR:  I play hockey.

15           MR. LOFARO:  Play hockey with them?

16           JUROR NO. 9:  I know one officer who is going to

17   be on the stand.

18           MR. LOFARO:  Really?

19           JUROR NO. 9:  Yes.

20           POTENTIAL JUROR:  Our sons play hockey together.

21           MR. LOFARO:  Officer Proud?

22           JUROR No. 9:  Yes.

23           MR. LOFARO:  Great.  All right.  Mr. Foote?

24           JUROR NO. 10:  Yes.

25           MR. LOFARO:  Sports.  Reading.  Hiking.  Sports.

- Voir dire - Panel I - LoFaro -

1   What's your favorite sport?

2          JUROR NO. 10:  I have two.  Baseball and

3   football.

4          MR. LOFARO:  Wow.  What did you think of the

5   Superbowl?

6          POTENTIAL JUROR:  Well, to be honest?  I didn't

7   really enjoy it because I had to watch it on my phone

8   because it was -- Verizon dropped Fox.

9          MR. LOFARO:  I thought they got it back?

10          POTENTIAL JUROR:  Not in time for the Superbowl.

11          MR. LOFARO:  Wow.

12          POTENTIAL JUROR:  They got it back before the

13   game.

14          MR. LOFARO:  What a tragedy.  I would be happy to

15   represent all of you in a class action lawsuit against

16   Verizon.  You know, it's funny.  So many people have put

17   reading in here as one of their hobbies.  Who is your?

18          JUROR NO. 10:  Steven King.

19          MR. LOFARO:  Steven King?

20          POTENTIAL JUROR:  Yes.

21          MR. LOFARO:  None better.  Yes.  And Richard,

22   Richard?

23          POTENTIAL JUROR:  -- Bachman, yes.

24          MR. LOFARO:  Yes.  And who is your favorite

25   actor, cliff Clavin?

1    JUROR NO. 10:  That's a good job, but no.

2  Timothy Olyphant.

3    MR. LOFARO:  Yes.  That's funny.  Again, he is

4  probably going to cut me off at some point, the Judge.  But

5  the original show, Cheers, one of the first assistant

6  directors was Steve LoFaro.  I found out his contact

7  information.  One point in time, I wrote him a letter.  He

8  sent me a card with a copy of his family tree.  He said, if

9  you're in California, come out and see the show on me.  And

10  the idiot I am, I never took him out on that.  To my -- I

11  wish I had really done that now.  I used to love that show.

12    All right.  Same question to you, Mr. Foote, any

13  problem being impartial?

14    JUROR NO. 10:  No, not at all.

15    MR. LOFARO:  Okay.  Is it Miss Deryke?

16    JUROR NO. 11:  Yes.

17    MR. LOFARO:  Deryke.  You ride a motorcycle?

18    POTENTIAL JUROR:  I do.

19    MR. LOFARO:  Oh, then you're very open minded and

20  you're very impartial, so I don't even have to ask you

21  questions.  Anybody who rides a bike is not going to

22  exhibit a bias, I don't think.  I am pretty comfortable

23  with you.

24    And Mr. Putnam?

25    JUROR NO. 12:  A-hum.

1          MR. LOFARO:  Confident that any of those things

2     that we discussed up at the podium won't have any effect on

3     your ability to impartially hear these facts?

4          POTENTIAL JUROR:  No.

5          MR. LOFARO:  My good friend John Jones lived in

6     Ithaca.  I used to visit him quite a bit.  That's where you

7     hail from originally, Ithaca?

8          JUROR NO. 12:  A-hum.

9          MR. LOFARO:  What the Moose --

10         POTENTIAL JUROR:  What?

11         MR. LOFARO:  The Moose Wood Restaurant, you have

12    been there?

13         POTENTIAL JUROR:  I have been past there.  I

14    never been to it.

15         MR. LOFARO:  Well, they got a beautiful town.

16    You're a wildlife biologist?

17         POTENTIAL JUROR:  Correct.

18         MR. LOFARO:  And your wife is a capital finance

19    engineer, yes?

20         JUROR NO. 12:  A-hum.

21         MR. LOFARO:  Wow.  That's a power couple.  What?

22    All right.  Again, are you a volunteer firemen yourself?

23         JUROR NO. 12:  Yes.

24         MR. LOFARO:  For what, what?

25         POTENTIAL JUROR:  Fairmount.

- Voir dire - Panel I - LoFaro -

1      MR. LOFARO:  Really?

2      POTENTIAL JUROR:  A-hum.

3      MR. LOFARO:  Miss Robinson?

4      POTENTIAL JUROR:  Yes.

5      MR. LOFARO:  How are you?

6      JUROR NO. 13:  Good.

7      MR. LOFARO:  Same questions to you.  Have no

8  problem listening to my client up there take the witness

9  stand, and give him that presumption of innocence that the

10  law cloaks him with, correct?

11      JUROR NO. 13:  A-hum.

12      MR. LOFARO:  Well, would you give any greater

13  credence to a law enforcement officer that's on the stand

14  than you would my client?

15      JUROR NO. 13:  You expect them to be honest.  You

16  expect them to be honest.

17      MR. LOFARO:  Are you saying, conversely, you

18  expect the defendant to be dishonest?

19      POTENTIAL JUROR:  No, no.

20      MR. LOFARO:  Would you give him, if the scales

21  were even, would you ask, would you do what the Court

22  instructs you to do, and treat them both equally and hear

23  both of their stories?

24      POTENTIAL JUROR:  Yes.

25      MR. LOFARO:  Not give one greater credence over

- Voir dire - Panel I - LoFaro -

1   another?

2           JUROR NO. 13:  A-hum.

3           MR. LOFARO:  Miss Gallardo?

4           JUROR NO. 14:  Yes.

5           MR. LOFARO:  Here is the real reader.  B.A.,

6   literature here.  This is the professional here, Miss

7   Gallardo?

8           POTENTIAL JUROR:  Do what you like.

9           MR. LOFARO:  Whereabouts in New York City do you

10  hail from?

11          JUROR NO. 14:  I was born in New York City.  I

12  was born in Harlem and I grew up a little bit west side and

13  a little bit Bronx.  I came to S.U.  Stayed right there.

14          MR. LOFARO:  Nice.  A very, very good friend of

15  mine grew up in Pelham Bay in the Bronx.

16          POTENTIAL JUROR:  That's up north from me.

17          MR. LOFARO:  I did a show.  I do some acting on

18  the side.  I did a show called:  Our 129th Street about a

19  school in Spanish Harlem.  A lot of history.

20          Miss Gallardo, you don't have any preconceived

21  notions, do you, with regard to the testimony of law

22  enforcement officers?

23          POTENTIAL JUROR:  No.

24          MR. LOFARO:  Would you give their testimony any

25  greater credence than you would give a lay individual

- Voir dire - Panel I - LoFaro -

1          MR. LOFARO:  I have been through it three times.

2     I got three daughters.

3          Mr. Breen, how are you?

4          JUROR NO. 16:  Good.

5          MR. LOFARO:  Comfortable sitting on the jury, you

6     being on the panel?

7          POTENTIAL JUROR:  Yes.

8          MR. LOFARO:  Are you sure?  You kind of shrugged.

9     Positive?

10          Let's see, how are you, Mr. Cole?

11          JUROR NO. 17:  Mas o menos.

12          MR. LOFARO:  Just okay?

13          JUROR NO. 17:  A-hum.

14          MR. LOFARO:  Miss Molini?  How are you?

15          JUROR NO. 18:  Good.

16          MR. LOFARO:  I know some people that work at

17     Bristol-Myers but it wouldn't be appropriate to start

18     talking about them.  I will refrain.  I did notice you said

19     your favorite activities are ice hockey?  Would you -- you

20     play ice hockey?

21          POTENTIAL JUROR:  Yes.

22          MR. LOFARO:  That's impressive.  Maybe you guys

23     could swap stories, ice hockey stories.

24          I am sorry, is it Nagy?

25          JUROR NO. 19:  Yes.

- Voir dire - Panel I - LoFaro -

1          MR. LOFARO:  Nagy?  South Carolina, wow.  Where

2    the weather is nice and warm.

3          JUROR NO. 19:  I was young at that point.

4          MR. LOFARO:  Pardon me?

5          POTENTIAL JUROR:  I was a bit young.

6          MR. LOFARO:  Okay.  Comfortable sitting on this

7    jury, no problems?

8          POTENTIAL JUROR:  Yes.

9          MR. LOFARO:  Likewise, ma'am?

10         JUROR NO. 20:  Yes.

11         MR. LOFARO:  No problems?

12         POTENTIAL JUROR:  No.

13         MR. LOFARO:  Fair and impartial?  Ms. Hayes?

14         JUROR NO. 21:  Yes.

15         MR. LOFARO:  You do?

16         POTENTIAL JUROR:  Yes.

17         MR. LOFARO:  No problems?

18         POTENTIAL JUROR:  No problems.

19         MR. LOFARO:  Okay.  Thank you all so much.  I

20   appreciate it.  I appreciate your candor and I appreciate

21   your answers.

22         THE COURT:  Thanks, Mr. LoFaro.  Folks, what we

23   are going to do is I will give the attorneys a few moments

24   to review their notes.  Then we are going to go back over

25   to the podium and speak about what jurors are going to stay

- Voir dire - Panel I - LoFaro -

1    with us.  And which are going to leave.

2         Let me just do a couple of housekeeping matters

3    that I didn't talk about earlier while we have this moment

4    to let them review.  In all criminal cases, the law

5    requires that the Court set bail.  Here, you may have

6    noticed Mr. Jennings is in jail garb.  He has been unable

7    to make the bail that was set.  You're not to draw any

8    inference whatsoever against Mr. Jennings due to his

9    financial inability to post bail.  That of course is not

10   evidence of anything.  So I appreciate you listening to

11   that admonition.

12        And when the attorneys are ready, you come on up

13   to the podium, then we can get started with our challenges.

14   And folks, you may talk quietly amongst yourselves, if you

15   would like.  If you need to stand up and stretch or

16   anything, that's fine.  We are going to stay here in the

17   courtroom while we get this done.  And we have to be quiet

18   enough so Mr. Reagan can take everything down.  Okay, Pat.

19   (The following Challenges to Panel I occurred at the podium:)

20        THE COURT:  All right.  Gentlemen, as we talked

21   about yesterday or Friday, we need 12.  So we are just

22   going to talk about 1 through 12, to start with 1 through

23   12.  We are going to start with the Court's challenges for

24   cause.  I turn to you, Mr. Centra.  Any challenges for

25   cause, 1 through 12?  That's Robbins through Putnam?

- Challenges - Panel I -

1             MR. CENTRA:  No, Your Honor.

2             THE COURT:  All right.  Just John, challenges for

3     cause, for those 12?  Not peremptories but any challenges

4     for cause?

5             MR. LOFARO:  Well, how about Russo?  He said he

6     was going to give the officer more credibility than a lay

7     person.

8             THE COURT:  No. 4, Russo?

9             MR. LOFARO:  Yes.

10            THE DEFENDANT:  Your Honor?

11            THE COURT:  Joe, do you want, do you want to be

12    heard on that?

13            MR. CENTRA:  I don't think I have a basis for

14    objection.

15            THE COURT:  I will grant Mr. LoFaro's challenge

16    for cause for Juror No. 4, Mr. Russo.  He is out.  Any

17    others, John, for 1 through 12?  For cause?

18            THE CLERK:  Am I in your way, John?

19            MR. LOFARO:  Well, I mean, I really like him, but

20    I think he should probably go.

21            THE COURT:  For cause?

22            MR. LOFARO:  Well, well.

23            THE COURT:  Based on?

24            MR. LOFARO:  You know, he knows me, No. 1.  And

25    maybe it should be his cause.  But he plays hockey with the

- Challenges - Panel I -

1    guys.  And he also knows law enforcement.  Maybe it's kind

2    of feeble, but.

3            THE COURT:  No.  Well, he does know you, through

4    your children.  And he does know law enforcement.  But he

5    did say he could be fair and impartial.  Here in the

6    community this size, everyone is going to know somebody

7    from law enforcement.  The bottom is line is, can you be

8    fair and impartial?  He said, yes, to me; he said, yes to

9    you.  Any other cause challenges, John?

10           MR. LOFARO:  Let's see 1, 2, 3  -- let's see,

11   where are we going to?

12           THE COURT:  Mr. Putnam, which is, he is third

13   from the left on the second, middle row.

14           MR. LOFARO:  Well, no.

15           THE COURT:  Okay.  Let's go to peremptory

16   challenges.  And Joe, we are going to go 1 through 12

17   still, we are going 1 through 12, Robbins through Putnam.

18   How about any peremptories?

19           MR. CENTRA:  Judge, I am going to preempt Miss

20   Robbins.

21           THE COURT:  That's No. 1.

22           MR. CENTRA:  Seat one.

23           THE COURT:  Yes.

24           MR. CENTRA:  Miss -- sorry, Mr., seat 6?  Mr.

25   Corbett, seat 8.

- Challenges - Panel I -

1          THE COURT:  Okay.

2          MR. CENTRA:  And Miss Deryke.

3          THE COURT:  No. 11?

4          MR. CENTRA:  Yes.  Mr. Putnam, too.

5          THE COURT:  Okay.  So you used five.  Is that

6    what you have?

7          THE CLERK:  A-hum.

8          THE COURT:  So, John, Joe got rid of No. 1, No.

9    6, No. 8, No. 11 and No. 12.

10         MR. LOFARO:  Who did you get rid of, which ones?

11   The first girl, first lady?

12         THE COURT:  1, 6, 8, 11 and 12.

13         MR. LOFARO:  The attorney?

14         MR. CENTRA:  Yes.

15         THE COURT:  So what we have left.

16         MR. LOFARO:  You got rid of the guy with the

17   beard?  The one on this end?

18         MR. CENTRA:  Yes.

19         MR. LOFARO:  All right.  Who is 11, the girl?

20         MR. CENTRA:  Yes.

21         THE COURT:  She is gone.

22         MR. LOFARO:  What's wrong with you?  Let's see.

23   I will get rid of No. 5, Lauri's employee.

24         THE COURT:  She is out?

25         MR. LOFARO:  Yes.

- Challenges - Panel I -

1      THE COURT:  Okay.

2      MR. LOFARO:  And I guess I will let my buddy go.

3  He is probably -- he is probably pretty prosecutorial

4  minded.

5      THE COURT:  Herrera?

6      MR. LOFARO:  Yes.

7      THE COURT:  He is out?

8      MR. LOFARO:  Yes.

9      THE COURT:  No. 9.

10      MR. LOFARO:  We are only doing the first 12,

11  obviously.

12      THE COURT:  Okay with the others then?

13      THE CLERK:  No. 2, No. 3, No. 7.

14      THE COURT:  And 10.

15      MR. LOFARO:  Yes, that's fine.

16      THE COURT:  All right.  So we picked up 2, 3, 7,

17  and 10.  That's four jurors.  So that means we need eight.

18      So we are going to talk about 1, 2, 3, 4, 5, 6,

19  7, 8.  Actually, we will talk about the rest.  13 through

20  21, challenges for cause, Mr. Centra?

21      MR. CENTRA:  None for cause.

22      THE COURT:  And John, 13 through 21, any

23  challenges for cause?

24      MR. LOFARO:  Clearly, Johnny's high school

25  classmate there, that said he couldn't be impartial.

- Challenges - Panel I -

1    THE COURT:  Which one was that, 17?

2    MR. LOFARO:  Yes.

3    THE COURT:  Cole?  Is that Cole?

4    MR. CENTRA:  Yes.

5    THE COURT:  Do you have any objection to?

6    MR. CENTRA:  I don't think I can, Judge.

7    THE COURT:  Okay.  So, all right.  So Cole is out

8  for cause, yes.  Any others, John, for cause?

9    MR. LOFARO:  No, no others for cause.

10    THE COURT:  Okay.  Now we are going to turn to

11  peremptory challenges.  And we will turn to Mr. Centra, and

12  ask you, Joseph, any preempts for 13 through 21, excluding

13  17 who is gone already?

14    MR. CENTRA:  Just No. 14.

15    THE COURT:  No others?

16    MR. CENTRA:  That's the only one, Judge.

17    THE COURT:  Okay.  So John, you have 13 through

18  21, knowing that 14 and 17 are gone.

19    MR. LOFARO:  Did you get rid of Gallardo?

20    MR. CENTRA:  Yes.

21    MR. LOFARO:  She looks like a killer.  She looks

22  like your size.  Are you sure about that?

23    THE COURT:  Can't unring the bell.

24    MR. LOFARO:  Jeez.  Let's see.  I don't really --

25  I don't have any problem with the rest of these jurors.

- Challenges - Panel I -

1       THE COURT:  You like them?

2       MR. LOFARO:  Yes.

3       THE COURT:  All right.  So we are picking up,

4    Miss Robinson is 13.  Picking up Crandell, 15.  Breen, 16.

5    Molini, 18.  Nagy, 19.  Case, 20.  And Mylene.  Does that

6    mean we have 11?

7       THE CLERK:  I think so.

8       THE COURT:  All right.  So we have 11.  I am

9    ready to take those 11, swear them in, and we will fill the

10   box.  I need one more, and two alternates.

11   (Back in open court:)

12       THE COURT:  Folks, we had our discussions at the

13   Bench, and the challenges have been made.  And the good

14   news, we picked up 11 jurors.

15       I am going to call your name.  If I call your

16   name, you're going to stay.  The others -- do they need any

17   paperwork?

18       THE CLERK:  Yes, they do.  They have to go

19   downstairs.

20       THE COURT:  Are they coming to you first?

21       THE CLERK:  Just to get their card.

22       THE COURT:  Folks, if I call your name, stay

23   where you are for a moment.  The ones that I do not call,

24   come over and see Diane.  She will give you paperwork.

25   You're going to be done for the day.  You're going to be

- Challenges - Panel I -

1   done for ten years.  Okay?  The others will stay with us.

2         Steven McCarthy.  Guy Donahoe.  Avinder Dhamoon.

3   Sean Foote.  Henry Robinson.  Gregory Crandell.  Dustin

4   Breen.  Roseann Molini.  Alex Nagy.  Sandra Case.  And

5   Mylene Hayes.

6         The rest of you, thanks very much.  Step over

7   here and we will see our clerk.  And then we will put these

8   folks, Chrissie, in their proper seats and we will swear

9   them in.

10  (Pause for seating of selected jurors of Panel I.)

11        THE COURT:  All right.  Folks, thanks very much.

12  You're sworn jurors.  I am going to swear you in at this

13  point.  As a sworn juror -- we will swear you in.  Officer

14  Walsh is going to take you to the juryroom.  We will pick

15  -- what we need are basically three more jurors.  We will

16  pick the rest of our jury.  We will get you all together.

17  Give you some preliminary instructions.  And we will break

18  for the day.  Okay?

19        If you all stand and raise your right hand for

20  me?  Thank you.

21  (The Court swore in the picked jurors of Panel I.)

22        THE COURT:  Sit right back down for a moment.

23  And folks, those are going to be your seats going forward.

24  That's where you will be during the trial.  And remember

25  those for the morning.

- Voir dire - Panel II -

1          As I said, we are going to pick the rest of the

2     jury.  We will get that, hopefully, not too much more time.

3     I will have you in the back.  And then I will bring you

4     back out and admonish -- you guys don't know each other a

5     little bit.  Talk about anything you want to talk about

6     except this trial, okay?  Don't let anybody talk to you

7     about the trial.  If anybody does try to talk to you or

8     approach you about the trial, make sure you tell my court

9     officer or myself.  Okay?  Thanks very much.  We will have

10    you go back to the juryroom.

11     (Pause for the selected jurors of Panel I leaving the

12    courtroom.)

13          THE COURT:  The rest of us will go back to the

14    podium and get some jurors.

15    (Following occurred at the podium for selection of Panel II:)

16          THE COURT:  Go ahead, Diane.

17          THE CLERK:  Okay.  Juror No. 271, Melissa Morgan,

18    M-o-r-g-a-n.

19          THE COURT:  John, do you want to come up?  Good

20    afternoon, Ms. Morgan?

21          POTENTIAL JUROR:  Good, how are you?

22          THE COURT:  Good.  Let's, these are four, five

23    questions.  Do you have a yes to any of those?

24          POTENTIAL JUROR:  No.

25          THE COURT:  Okay.  Go right up there.  Thank you.

- Voir dire - Panel II - Court -

1    Melissa Morgan.

2    (All present at the podium, with the defendant.)

3                    *              *              *

4              THE CLERK:  Juror No. 244, William Castagna,

5    C-a-s-t-a-g-n-a.

6              THE COURT:  How are you, Mr. Castagna?

7              POTENTIAL JUROR:  Not bad.  How are you doing,

8    sir?

9              THE COURT:  How about any yes's to our five

10   questions?

11             POTENTIAL JUROR:  I do have Crohn's disease, but

12   I don't think that is a problem.

13             THE COURT:  As a matter of fact, does it affect

14   you at all?

15             POTENTIAL JUROR:  It does in the mornings.

16             THE COURT:  Okay.  Just so to get up and getting

17   started?

18             POTENTIAL JUROR:  Yes.

19             THE COURT:  Yes?

20             POTENTIAL JUROR:  Nope.  That was a toss up.

21             THE COURT:  Tell me about that?

22             POTENTIAL JUROR:  I just have some convictions

23   about stuff I have been through.

24             THE COURT:  A-hum.

25             POTENTIAL JUROR:  Some problems with marijuana in

- Voir dire - Panel II - Court -

1    the past.

2            THE COURT:  Sure.  Let me tell you what we have

3    here.  You know we have allegations of possession of drugs.

4    Okay?

5            POTENTIAL JUROR:  Right.

6            THE COURT:  I believe it's cocaine in this

7    matter.  What we are asking you, on behalf of Mr. Jennings

8    and the D.A., is can you listen to the evidence and

9    determine the case only on the evidence in this case, and

10   not anything outside of this courtroom?

11           POTENTIAL JUROR:  Yes.

12           THE COURT:  Can you do that?

13           POTENTIAL JUROR:  Yes.

14           THE COURT:  Anything?

15           MR. CENTRA:  No, Your Honor.

16           MR. LOFARO:  No, Judge.

17           THE COURT:  Okay.  Have a seat.  Thank you.

18           POTENTIAL JUROR:  Thank you.

19                   *               *               *

20           THE CLERK:  Juror No. 230, Robert Smith.

21           THE COURT:  How are you, Mr. Smith?

22           POTENTIAL JUROR:  Good.  How are you?

23           THE COURT:  Good.  We have five questions that I

24   asked earlier, sir.  Any yes's to any of those?

25           POTENTIAL JUROR:  Yes.

- Voir dire - Panel II - Court -

1          THE COURT:  Which ones?

2          POTENTIAL JUROR:  1.

3          THE COURT:  1.  Talk about that.  What?

4          POTENTIAL JUROR:  My wife.  Back in the 80's.

5          THE COURT:  A-hum.  A-hum.

6          POTENTIAL JUROR:  (Unintelligible.)

7          THE COURT:  Shoplifting?  Probation?

8          POTENTIAL JUROR:  Yes.

9          THE COURT:  Anything about that that wouldn't

10   allow you to be fair and impartial here?

11          POTENTIAL JUROR:  No.

12          THE COURT:  Anything else?

13          POTENTIAL JUROR:  No. 2.

14          THE COURT:  That was 2?

15          POTENTIAL JUROR:  Yes.  I do have people in law

16   enforcement.  A son is a sheriff.  And my nephew is City of

17   Syracuse Police.

18          THE COURT:  Who was that?

19          POTENTIAL JUROR:  John Hamlin.

20          THE COURT:  Okay.  The fact that you have

21   relatives in law enforcement, would you give them more

22   credence than any other witness or would you listen to

23   their testimony like anybody's?

24          POTENTIAL JUROR:  Listen.

25          THE COURT:  Beautiful.  Any questions?  I am

- Voir dire - Panel II - Court -

1    sorry, gentlemen.

2          MR. CENTRA:  No, Your Honor.

3          MR. LOFARO:  No.

4          THE COURT:  Sorry about that.

5                *              *              *

6          THE CLERK:  Mildred Ganias, No. 241, G-a-n-i-a-s.

7          THE COURT:  Ganias?

8          POTENTIAL JUROR:  Ganias.  She said it right.

9    Nobody ever gets it right.

10         THE COURT:  I shouldn't question Diane.

11         MR. LOFARO:  You got it right?  Nobody ever.

12         THE COURT:  How about our five questions?

13         POTENTIAL JUROR:  Question 1 is a yes.

14         THE COURT:  Okay.  Could you tell us about that?

15         POTENTIAL JUROR:  It was when I was a child.  I

16   was sexually abused.

17         THE COURT:  Okay.  How old were you?

18         POTENTIAL JUROR:  Eight.

19         THE COURT:  And these aren't the kind of things

20   that we don't get over.

21         POTENTIAL JUROR:  Right.

22         THE COURT:  Knowing that that's something that

23   you have to put aside over here, and never forget, can you

24   judge this case by whatever happens in this courtroom?

25         POTENTIAL JUROR:  I think so.

- Voir dire - Panel II - Court -

1    THE COURT:  Okay, what else?

2    POTENTIAL JUROR:  On No. 3.

3    THE COURT:  A-hum.

4    POTENTIAL JUROR:  I am in the process of just

5  moving -- I have three herniated disks in my back.  It

6  makes it hard to sit for long periods of time.

7    THE COURT:  Whatever, jurors had a similar

8  situation.  She actually is bringing in her own pillow.  I

9  don't want you to be uncomfortable.  When it comes to a

10 point in time we have been sitting too long, you can let us

11 know?

12   POTENTIAL JUROR:  Okay.

13   THE COURT:  We.will take care of it.

14   POTENTIAL JUROR:  Okay.

15   THE COURT:  I don't want that to be an impediment

16 unless you tell me every five minutes.

17   POTENTIAL JUROR:  Right.

18   THE COURT:  If you could sit for an hour, then we

19 could probably.

20   POTENTIAL JUROR:  Okay.

21   THE COURT:  Anything else?

22   POTENTIAL JUROR:  No.

23   MR. CENTRA:  Briefly, in regards to the case, you

24 were the victim, was anybody charged in the crime?

25   POTENTIAL JUROR:  A-hum.  I had to go to trial.

- Voir dire - Panel II - Court -

1      MR. CENTRA:  Okay.  Was there anything about the

2  way law enforcement or the D.A.'s office handled it that

3  left a negative feeling with you?

4      POTENTIAL JUROR:  Well, yes.

5      MR. CENTRA:  You briefly touch on that?

6      POTENTIAL JUROR:  I felt the case wasn't handled

7  properly because I was abused longer than he got in jail.

8      MR. CENTRA:  A-hum.

9      POTENTIAL JUROR:  This was back in 1981.  The

10 laws were not like they are now.

11     MR. CENTRA:  A-hum.  Would that for any reason

12 cause any prejudice for you against the D.A.'s office or

13 the?

14     POTENTIAL JUROR:  I don't think so.

15     MR. CENTRA:  Any law enforcement?

16     POTENTIAL JUROR:  I don't think so.

17     MR. CENTRA:  Okay, thank you.

18     THE COURT:  Anything?

19     MR. LOFARO:  Nothing, Judge.

20     THE COURT:  Thanks, ma'am.

21     POTENTIAL JUROR:  Okay.

22          *              *              *

23     THE CLERK:  Juror No. 252, Shantra Brown,

24 B-r-o-w-n.  First name is S-h-a-n-t-r-a.

25     THE COURT:  Hi, Miss Brown.

- Voir dire - Panel II - Court -

1          POTENTIAL JUROR:  Hi.

2          THE COURT:  How are you?

3          POTENTIAL JUROR:  Good.

4          THE COURT:  Happy to be here?  How about our five

5     questions?  Do you have any yes's to those?

6          POTENTIAL JUROR:  Yes.  Just No. 2.

7          THE COURT:  Okay.  Can you tell us about that?

8          POTENTIAL JUROR:  It was me, a harassment charge.

9          THE COURT:  It's a violation, is that correct?

10         POTENTIAL JUROR:  Yes.

11         THE COURT:  How long ago was that?

12         POTENTIAL JUROR:  Last year.  Like in October.

13         THE COURT:  Where?

14         POTENTIAL JUROR:  Here.

15         THE COURT:  In Syracuse?

16         POTENTIAL JUROR:  A-hum.

17         THE COURT:  And the case has been resolved, is it

18    over?

19         POTENTIAL JUROR:  Yes.

20         THE COURT:  Okay.  Were you satisfied with the

21    way it was handled or not?

22         POTENTIAL JUROR:  Yes.

23         THE COURT:  Okay.  You know it was prosecuted by

24    Mr. Centra's office, most likely the D.A.'s office.  Are

25    you going to hold that against them?

- Voir dire - Panel II - Court -

1          POTENTIAL JUROR:  No.

2          THE COURT:  You know, any questions?

3          MR. CENTRA:  No, Your Honor.

4          MR. LOFARO:  No, Judge.

5          THE COURT:  Okay.  Great.  Miss Brown, if you

6    have a seat for us, thank you.

7          POTENTIAL JUROR:  Yes.

8             *                 *                 *

9          THE CLERK:  Juror No. 272 Kevin Powers,

10   P-o-w-e-r-s.

11         THE COURT:  Good afternoon, Mr. Powers.

12         POTENTIAL JUROR:  How are you doing?

13         THE COURT:  Good, thanks.  Matter of five

14   questions here, do you have any yes's on those?

15         POTENTIAL JUROR:  I have a cousin who just had I

16   think the third DWI.

17         THE COURT:  Okay.

18         POTENTIAL JUROR:  Pretty recent.  She is like in

19   rehab now.

20         THE COURT:  In Onondaga County?

21         POTENTIAL JUROR:  Allegheny, I think.

22         THE COURT:  Okay.  Is there anything about that

23   that would not allow you to be fair here?

24         POTENTIAL JUROR:  Not with that.

25         THE COURT:  Okay.

1    POTENTIAL JUROR:  And then I had a friend pass

2  away from something who was impaired on a couple things

3  traveling.

4    THE COURT:  Okay.  The charges here are drugs, as

5  we know.  The allegations are some possession of drugs.

6  Anything about that that is not going to allow you to be

7  fair and impartial in this case?

8    POTENTIAL JUROR:  No.

9    THE COURT:  All right.  I will say this to you

10  now, Mr. Powers.  I say, the decision the jury makes is

11  based, you know, we all have our life experiences.  Every

12  one of us have had things happen to us.  But the decision

13  that we need you to make if you're chosen is only from the

14  testimony from the witness stand and any exhibits.  Can you

15  do that for us?

16    POTENTIAL JUROR:  Yes.

17    THE COURT:  Anything?

18    MR. CENTRA:  No, Your Honor.

19    MR. LOFARO:  No, Judge.

20    THE COURT:  Great.  Have a seat.  Thanks.

21          *          *          *

22    THE CLERK:  Juror No. 296, Donald Dietz,

23  D-e-i-t-z.

24    THE COURT:  How are you, Mr. Dietz?

25    POTENTIAL JUROR:  Good, how are you?

1   THE COURT:  Good.  Thanks.  We have our five

2   questions here.  Any yes's to those?

3   POTENTIAL JUROR:  Yes.

4   THE COURT:  Tell me about that?

5   POTENTIAL JUROR:  I had some of my checks stolen

6   from, possession.

7   THE COURT:  From you personally?

8   POTENTIAL JUROR:  From my truck.

9   THE COURT:  Okay, how long ago?

10  POTENTIAL JUROR:  Ten years ago.

11  THE COURT:  Onondaga County?

12  POTENTIAL JUROR:  Oswego County.

13  THE COURT:  Was anybody charged?

14  POTENTIAL JUROR:  They caught the kid with the

15  checkbook.

16  THE COURT:  Okay.

17  POTENTIAL JUROR:  Criminal possession of.  And

18  forgery.

19  THE COURT:  Did you have to testify or did it get

20  resolved before all that?

21  POTENTIAL JUROR:  I didn't have to testify.

22  THE COURT:  Okay.  Is there anything about that

23  that would not allow you to be fair and impartial here?

24  POTENTIAL JUROR:  I am -- no, probably not.

25  THE COURT:  Okay.  I just said to the last few

- Voir dire - Panel II - Court -

1    people that come up, things happen in all our lives that we

2    have to kind of put aside.  We walk in here, if you can,

3    and base our testimony in this case, our decision, I should

4    say, on the testimony and the evidence.  Can you do that

5    for us?

6              POTENTIAL JUROR:  Probably.

7              THE COURT:  Okay.  I have to -- for Mr. Jennings,

8    please?

9              POTENTIAL JUROR:  Yes.

10              THE COURT:  We needed "yes."  Go ahead.  Anything

11    else?

12              POTENTIAL JUROR:  No.

13              THE COURT:  Okay.  Have a seat, please.  Thank

14    you.

15                    *              *              *

16              THE CLERK:  Juror 250, Michele Lisowski,

17    L-i-s-o-w-s-k-i.

18              THE COURT:  Can you spell that last name for me

19    again, please?

20              THE CLERK:  L-i-s-o-w-s-k-i.

21              THE COURT:  Ms. Lisowski, how are you?

22              POTENTIAL JUROR:  Good, how are you?

23              THE COURT:  Good.  I have our five questions here

24    Michele.  Any question to these?

25              POTENTIAL JUROR:  No.

- Voir dire - Panel II - Court -

1          THE COURT:  None?  You have got a lucky life.

2          MR. LOFARO:  Good girl.

3          THE COURT:  Thank you.

4              *              *              *

5          THE CLERK:  Juror No. 249, Nicole Bukowski,

6     B-u-k-o-w-s-k-i.

7          THE COURT:  Miss Bukowski, how are you?

8          POTENTIAL JUROR:  Good.  How are you?

9          THE COURT:  Good.  Thank you.  We have our five

10    questions here.  Miss Bukowski, any yes's to any of those?

11         POTENTIAL JUROR:  Just No. 1.  But it was only 25

12    years ago.

13         THE COURT:  What was the nature of it?

14         POTENTIAL JUROR:  I got robbed at knife point.  I

15    got off the bus.

16         THE COURT:  Locally?

17         POTENTIAL JUROR:  Yes.

18         THE COURT:  Was somebody charged?

19         POTENTIAL JUROR:  No, I couldn't -- I never saw

20    the face.

21         THE COURT:  Okay.  Got you.  And obviously, you

22    have kind of stayed -- it's been so far, it's been so long

23    ago?

24         POTENTIAL JUROR:  I haven't thought about it

25    until I read the question.

- Voir dire - Panel II - Court -

1        THE COURT:  Got you.  You're telling us even with

2   that happening, you could be fair and impartial?

3        POTENTIAL JUROR:  Absolutely.

4        THE COURT:  Anything else of these?

5        POTENTIAL JUROR:  No.

6        THE COURT:  Anything, Joe?

7        MR. CENTRA:  Since you weren't able to, I

8   guess -- no charges were filed, did you have any negative

9   feeling towards law enforcement?

10        POTENTIAL JUROR:  No.

11        MR. CENTRA:  Okay.

12        POTENTIAL JUROR:  Not at all.

13        THE COURT:  Mr. LoFaro?

14        MR. LOFARO:  No questions.  Admit her.  She is

15   tough.

16        THE COURT:  Thank you.

17              *              *              *

18        THE CLERK:  Juror No. 327, Jennifer Crossley,

19   C-r-o-s-s-l-e-y.

20        THE COURT:  Miss Crossley, how are you?

21        POTENTIAL JUROR:  Good.  How are you?

22        THE COURT:  Good.  How about our five questions?

23        POTENTIAL JUROR:  I have two.

24        THE COURT:  Victim?

25        POTENTIAL JUROR:  A-hum.

- Voir dire - Panel II - Court -

1     THE COURT:  Tell us about that?

2     POTENTIAL JUROR:  It was domestic violence, is my

3     husband.

4     THE COURT:  How long ago?

5     POTENTIAL JUROR:  Last time was about five years.

6     THE COURT:  Okay.  Was he prosecuted?

7     POTENTIAL JUROR:  No, because I never filed any

8     charges.

9     THE COURT:  Okay.  These are difficult

10    situations, believe me, I was a domestic violence judge for

11    12 years.  Is there anything about that that carries over

12    into this case or can you be fair and impartial here?

13    POTENTIAL JUROR:  I can tell you right now, all

14    this stuff, drug violations that he had -- no, I won't be.

15    THE COURT:  Because he had things where he had

16    been charged with drug --

17    POTENTIAL JUROR:  A-hum.

18    THE COURT:  This a drug case?

19    POTENTIAL JUROR:  A-hum.

20    THE COURT:  Any problem with that?

21    MR. CENTRA:  Consent.

22    MR. LOFARO:  No problem.

23    THE COURT:  Thanks, Miss Crossley.  Get your

24    paperwork from Diane, please.  You can go back downstairs.

25    Okay.

- Voir dire - Panel II - Court -

1    POTENTIAL JUROR:  Yep.

2         *              *              *

3    THE CLERK:  Juror No. 279, Doris Grome,

4    G-r-o-m-e.

5    THE COURT:  How are you, Miss Grome?

6    POTENTIAL JUROR:  Good.  How are you?

7    THE COURT:  Good.  Our five questions, any yes's

8    to those?

9    POTENTIAL JUROR:  Well, yes.

10   THE COURT:  Which one?

11   POTENTIAL JUROR:  One.

12   THE COURT:  So you know someone who has been the

13   victim of a crime?

14   POTENTIAL JUROR:  Victim?  No.

15   THE COURT:  Charged with a crime?

16   POTENTIAL JUROR:  Yes.

17   THE COURT:  Who was that?

18   POTENTIAL JUROR:  My parents and myself.

19   THE COURT:  Okay.  How long ago?

20   POTENTIAL JUROR:  DWI.

21   THE COURT:  How long ago are we talking about?

22   POTENTIAL JUROR:  It's been years.

23   THE COURT:  Yes.

24   POTENTIAL JUROR:  Myself, five or six.

25   THE COURT:  Okay.  Was it prosecuted here in

- Voir dire - Panel II - Court -

1    Onondaga County?

2            POTENTIAL JUROR:  A-hum.

3            THE COURT:  Was anything about that that you

4    would hold ill feelings towards law enforcement or anyone?

5            POTENTIAL JUROR:  No.

6            THE COURT:  Okay.  Is there anything about that

7    that would not allow you to be fair and impartial in this

8    case?

9            POTENTIAL JUROR:  No.

10           THE COURT:  Okay.  Any other yes's?

11           POTENTIAL JUROR:  No.

12           THE COURT:  Any questions, Joe?

13           MR. CENTRA:  No, Your Honor.

14           MR. LOFARO:  No, Your Honor.

15           THE COURT:  Thanks for your honesty, ma'am.  Have

16   a seat.

17                    *            *            *

18           THE CLERK:  Juror 328, Robin Sparks, S-p-a-r-k-s.

19           THE COURT:  Hi, Miss Sparks.

20           POTENTIAL JUROR:  Hi.

21           THE COURT:  How are you?

22           POTENTIAL JUROR:  Good.

23           THE COURT:  Miss Sparks, we have the five

24   questions, do you have yes's to any of our five?

25           POTENTIAL JUROR:  This one.

- Voir dire - Panel II - Court -

1      THE COURT:  We start with that.

2      POTENTIAL JUROR:  Okay.

3      THE COURT:  Who do you know that has been the

4  victim of a crime?

5      POTENTIAL JUROR:  My husband.

6      THE COURT:  Okay.  How long ago?

7      POTENTIAL JUROR:  It was about 20 years or so.

8      THE COURT:  What was the nature of the charge?

9      POTENTIAL JUROR:  Gun possession.  Drinking and

10  driving, and driving while drunk.

11      THE COURT:  Was he the victim or was he charged?

12      POTENTIAL JUROR:  He was charged.

13      THE COURT:  Okay.  The case was resolved, was it

14  in Syracuse, in Onondaga County?

15      POTENTIAL JUROR:  A-hum.

16      THE COURT:  Was it, back then, it was prosecuted

17  by the D.A.'s office, I don't know if Mr. Centra was born.

18  But it was prosecuted by the D.A.'s office.  Do you hold

19  any ill will toward anyone how that happened, how it was

20  resolved?

21      POTENTIAL JUROR:  No, I don't.  I didn't go to

22  court.

23      THE COURT:  Got you.  All right.  Anything else

24  as far as you know?  Anything, take your time?

25      POTENTIAL JUROR:  This one here.  My son was.

- Voir dire - Panel II - Court -

1    THE COURT:  Your son has had some, was it a DWAI?

2    POTENTIAL JUROR:  No crimes.

3    THE COURT:  Okay.

4    POTENTIAL JUROR:  I don't know what it was.

5    THE COURT:  How long ago?

6    POTENTIAL JUROR:  About five years ago.

7    THE COURT:  Were you probably a little bit more

8    involved in that one?

9    POTENTIAL JUROR:  No.

10   THE COURT:  Really?

11   POTENTIAL JUROR:  No.

12   THE COURT:  You let him sink or swim?

13   POTENTIAL JUROR:  There you go.

14   THE COURT:  How old is he now?

15   POTENTIAL JUROR:  He is 37.

16   THE COURT:  Okay.  Anything else?

17   POTENTIAL JUROR:  A condition, my husband was

18   sick.

19   THE COURT:  What's the matter?

20   POTENTIAL JUROR:  He has OPD.  He just had three

21   and-a-half stents put in about a week and a half ago.  He

22   had a problem.

23   THE COURT:  Does he have care?  Do you need to be

24   with him?

25   POTENTIAL JUROR:  Yes.

- Voir dire - Panel II - Court -

1       THE COURT:  Which one?

2       POTENTIAL JUROR:  My husband.

3       THE COURT:  Do you need to be there or does he

4  have care?

5       POTENTIAL JUROR:  No, I need to be there with

6  him.

7       THE COURT:  Would this be an inconvenience for

8  the rest of the week?

9       POTENTIAL JUROR:  Yes.

10       THE COURT:  Gentlemen?

11       MR. CENTRA:  Consent.

12       MR. LOFARO:  Yes.

13       THE COURT:  Okay, Miss Sparks, thanks for your

14  honesty.  We are going to relieve you.  You're going to get

15  your paperwork from Miss Helbig.  You can go back

16  downstairs.  And good luck with your husband.

17       POTENTIAL JUROR:  Thank you.

18       THE COURT:  All right.

19            *            *            *

20       THE CLERK:  Juror No. 312, Joseph Damarville,

21  D-a-m-a-r-v-i-l-l-e.

22       THE COURT:  Hi, Mr. Damarville, how are you?

23       POTENTIAL JUROR:  Good.  How are you?

24       THE COURT:  Good.

25       POTENTIAL JUROR:  Sir?

- Voir dire - Panel II - Court -

1    THE COURT:  How are you?

2    POTENTIAL JUROR:  I am good.

3    THE COURT:  Joseph, what about these?

4    (Indicating.)

5    THE COURT:  1 and 2?  These parts of a victim?

6    POTENTIAL JUROR:  Oh, I got robbed.

7    THE COURT:  A-hum.

8    POTENTIAL JUROR:  As a young man.  I got a

9    bruise, slashed.

10   THE COURT:  That's where you?

11   POTENTIAL JUROR:  Correct, right.

12   THE COURT:  Were people charged with the crime?

13   POTENTIAL JUROR:  Yes.

14   THE COURT:  Was that local, Onondaga County?

15   POTENTIAL JUROR:  No, it was not.

16   THE COURT:  Okay.  Is there anything about that,

17   as you sit here today, that would not allow you to be fair

18   and impartial in this case?

19   POTENTIAL JUROR:  No.

20   THE COURT:  Okay.  Is that the only one as far as

21   victim goes?

22   POTENTIAL JUROR:  Yes.

23   THE COURT:  How about No. 2, what can you tell us

24   about that?

25   POTENTIAL JUROR:  It was charge.  12 years ago.

146

- Voir dire - Panel II - Court -

1    THE COURT:  What was it?

2    POTENTIAL JUROR:  Excuse me?

3    THE COURT:  What was the charge?

4    POTENTIAL JUROR:  Domestic violence and resisting

5    arrest.  Best thing that ever happened to me.

6    THE COURT:  They were resolved, correct?

7    POTENTIAL JUROR:  Correct.

8    THE COURT:  I know they were prosecuted by the

9    District Attorney's office at the time.  Do you hold any

10   ill will towards them?

11   POTENTIAL JUROR:  Absolutely not.

12   THE COURT:  You said it worked out well for you?

13   POTENTIAL JUROR:  Worked well.

14   THE COURT:  Can you promise Mr. Jennings and the

15   D.A. that you would be fair and impartial?

16   POTENTIAL JUROR:  Absolutely.

17   THE COURT:  Okay.

18   POTENTIAL JUROR:  Absolutely.

19   THE COURT:  Anything else, Joe?

20   MR. CENTRA:  No.

21   MR. LOFARO:  Nothing, Judge.

22   THE COURT:  Great.  Have a seat.  Thanks.

23          *             *             *

24   THE CLERK:  Juror No. 278, Jan Slater,

25   S-l-a-t-e-r.

- Voir dire - Panel II - Court -

1          THE COURT:  How are you, Miss Slater?

2          POTENTIAL JUROR:  Good.

3          THE COURT:  Miss Slater, we have our five

4     questions here.  Do you have any yes's to any of those?

5          POTENTIAL JUROR:  No.

6          THE COURT:  Okay.  Go have a seat.  Thank you.

7          POTENTIAL JUROR:  Yes.

8                  *                *                *

9          THE CLERK:  Juror 337, Emily Hulsizer,

10    H-u-l-s-i-z-e-r.

11         THE COURT:  Miss Hulsizer, how are you?

12         POTENTIAL JUROR:  I am well.  How are you?

13         THE COURT:  Very good, thanks.  Any of our five

14    questions?

15         POTENTIAL JUROR:  No. 2.

16         THE COURT:  Okay.  So you know somebody, someone

17    that has been charged with a crime?

18         POTENTIAL JUROR:  Yes.

19         THE COURT:  Who was that?

20         POTENTIAL JUROR:  That's -- felony robbery.  The

21    incident was in 2010.  It was officially convicted in 2014.

22         THE COURT:  Locally?

23         POTENTIAL JUROR:  It was downstate.  It was a

24    federal case.

25         THE COURT:  Okay.  And is everything over with

- Voir dire - Panel II - Court -

1    now?

2              POTENTIAL JUROR:  Yes, I never did any time.

3              THE COURT:  Got you.

4              POTENTIAL JUROR:  Just got a conviction.

5              THE COURT:  Now, obviously, it was a huge event

6    in your life.  It took four years to be resolved.  Is there

7    anything about that that would not allow you to be fair and

8    impartial in this case?

9              POTENTIAL JUROR:  No, not at all.

10             THE COURT:  Okay.

11             MR. CENTRA:  Nothing.

12             MR. LOFARO:  Nothing, Judge.

13             THE COURT:  Okay.  Thanks for all your honesty.

14   I appreciate it.

15                   *              *              *

16             THE CLERK:  Juror No. 225, Richard Mosley,

17   M-o-s-l-e-y.

18             THE COURT:  How are you, Mr. Mosley?

19             POTENTIAL JUROR:  Congratulations just on your

20   election.

21             THE COURT:  Thank you.  I appreciate it.  How

22   about 1 through 5?

23             POTENTIAL JUROR:  I have some medical problems.

24   That's why I asked her.

25             THE COURT:  Yes.

- Voir dire - Panel II - Court -

1      POTENTIAL JUROR:  I had a colonoscopy last

2  Tuesday, and endoscopy last Tuesday.  My gallbladder on

3  Friday.  I have to go to the doctor tomorrow four o'clock.

4      THE COURT:  This is probably?

5      POTENTIAL JUROR:  Yes, probably.

6      THE COURT:  Yes.  But you know what, they can't,

7  unfortunately, I apologize, but they changed all the rules.

8      POTENTIAL JUROR:  Right.

9      THE COURT:  We can't do anything until we get to

10  this point.  Any consent?

11      MR. LOFARO:  No problem.

12      POTENTIAL JUROR:  I know Fitz.  My kids went to

13  CBA.   Joe is my brother-in-law.

14      THE COURT:  I can't let you go twice.

15      MR. LOFARO:  We are not going to hold that

16  against you.  Good luck with everything, Mr. Mosley.

17      POTENTIAL JUROR:  Thank you.

18          *              *              *

19      THE CLERK:  Juror No. 307, Jonathan Askew,

20  A-s-k-e-w.

21      THE COURT:  I am sorry, Diane, I missed that

22  completely.

23      THE CLERK:  That's okay.  307, Jonathan Askew,

24  A-s-k-e-w.

25      THE COURT:  Askew?

- Voir dire - Panel II - Court -

1           POTENTIAL JUROR:  Yes.

2           THE COURT:  How are you, Mr. Askew?

3           POTENTIAL JUROR:  I am good.

4           THE COURT:  Good.  Thanks.  We have our five

5     questions here, John?

6           POTENTIAL JUROR:  No. 1, I have been the victim

7     of some minor crimes.

8           THE COURT:  Let's talk about that.

9           POTENTIAL JUROR:  Broken, my car broken into two

10    different times.  Kid -- up one time, somebody with a

11    credit card.

12          THE COURT:  Anything about those incidents?

13          POTENTIAL JUROR:  No.

14          THE COURT:  You couldn't be fair and impartial?

15          POTENTIAL JUROR:  I could be fair and impartial.

16          THE COURT:  Okay.  Anything else?

17          POTENTIAL JUROR:  My father was a cocaine dealer.

18          THE COURT:  Was what?

19          POTENTIAL JUROR:  My father was a cocaine dealer.

20          THE COURT:  A-hum.

21          POTENTIAL JUROR:  I don't know if that

22    disqualified me.

23          THE COURT:  It doesn't.  Only if you say it does.

24          POTENTIAL JUROR:  I don't think it would.  But I

25    was a lot of  -- from DWI's.

- Voir dire - Panel II - Court -

1      THE COURT:  Sure.  What we have here is we have a

2   charge of possession of a controlled substance with intent

3   to sell, and possession of controlled substance, that being

4   cocaine.

5      POTENTIAL JUROR:  Right.

6      THE COURT:  Now understanding what your father

7   went through and what you are aware of, can you still be

8   fair and impartial in this case, put those things aside?

9      POTENTIAL JUROR:  Okay.

10      THE COURT:  And the same with anybody else you

11   know that has been charged with anything?

12      POTENTIAL JUROR:  Right.  That, I could be

13   impartial.

14      THE COURT:  Great.

15      POTENTIAL JUROR:  Medical condition, my wife is

16   pregnant, thinking it might come early.

17      MR. LOFARO:  Congratulations.

18      POTENTIAL JUROR:  She is 26 weeks.  But they

19   already put her on disability two months ago.

20      THE COURT:  Would you be able to stay with us

21   through the week?  If there is something came up, we always

22   would have an alternate.

23      POTENTIAL JUROR:  Right.

24      THE COURT:  Right now, is she okay?

25      POTENTIAL JUROR:  Yes, right now, she is fine.

152

- Voir dire - Panel II - Court -

1          THE COURT:  Okay.  Anything else?

2          POTENTIAL JUROR:  No.

3          THE COURT:  Mr. Centra, any questions?

4          MR. CENTRA:  No.  Nothing, Your Honor.

5          MR. LOFARO:  The relation to your dad right now?

6          POTENTIAL JUROR:  He has been dead for seven

7     years.

8          MR. LOFARO:  Sorry to hear that.

9          POTENTIAL JUROR:  That's all right.  With his

10    life-style, I expected it.

11         THE COURT:  Jeez.  You turned out very well.

12    Have a seat.

13         POTENTIAL JUROR:  All right.

14         THE COURT:  Okay.  Diane, hold one second.  Guys,

15    you two fine gentlemen.

16         MR. LOFARO:  I tell you what I have.

17         THE COURT:  I am not asking.  I just want, could

18    we stop now?

19         MR. CENTRA:  I am okay with.  I got a few.

20         MR. LOFARO:  I am not going to make any Batson

21    challenges.

22         THE COURT:  You don't want her anyway.  We are

23    going to stop there, Diane.

24         THE CLERK:  Okay.  Good.

25      (Back in open court:)

- Voir dire - Panel II - Court -

1    THE COURT:  All right.  Thank you, folks.  Let me

2  ask you the six questions I have.  And then we will take a

3  10-minute break.  Then we will get to the attorneys.  And

4  then hopefully, we will finish up.

5    Do any of you know Mr. Jennings, Mr. LoFaro or

6  Mr. Centra?

7   (Juror response.)

8    THE COURT:  Do any of you know the district

9  attorney or any of his office staff?  All right.

10    Do any of you have any close friend -- excuse me,

11  or relative working in law enforcement?  Start with you,

12  sir?

13    JUROR NO. 3:  My son is a sheriff.

14    THE COURT:  Yes.

15    JUROR NO. 3:  Onondaga County.  And my nephew,

16  John Cameron, is a Syracuse police officer.

17    THE COURT:  And I know we talked about this

18  earlier, sir.  And you told us, with those relationships,

19  you feel you could still be fair and impartial, is that

20  correct?

21    JUROR NO. 3:  Yes, sir.

22    THE COURT:  Okay.  Great.  Who else in the back

23  row had their hand up?  Yes, sir?

24    JUROR NO. 6:  My childhood best friend, his

25  brother is a Syracuse cop.

- Voir dire - Panel II - Court -

1          THE COURT:  Was there anybody on the list I

2     called?

3          JUROR NO. 6:  No.

4          THE COURT:  Great.  And with that relationship,

5     sir, can you tell us, you could still be fair and

6     impartial?

7          JUROR NO. 6:  Yes.

8          THE COURT:  Yes.  Anybody else in the back?  In

9     the front, law enforcement?  Right.  Yes, sir?

10          JUROR NO. 14:  My sister is a parole officer.

11          THE COURT:  For New York State?

12          JUROR NO. 14:  Yes.

13          THE COURT:  Is she local?

14          POTENTIAL JUROR:  Yes, Onondaga County.

15          THE COURT:  Okay.  And with that relationship and

16     that knowledge, could you be fair and impartial here?

17          JUROR NO. 14:  Yes.

18          THE COURT:  All right.  Anybody else, law

19     enforcement?

20          Folks, let me read you the witness list.  I read

21     it to you earlier.  Officer Jeremy Decker.  Officer Darrin

22     Ettinger.  Sergeant David Proud.  Chief Frank Fowler.

23     Jennifer Wilson.  Willie Jones.  Howard Davis.  David

24     Chaplain.  Hatisha Holmes.  And Mallory Livingston.  Does

25     anyone know personally any of those individuals?  Yes, sir?

- Voir dire - Panel II - Court -

1          JUROR NO. 11:  Frank Fowler.

2          THE COURT:  How do you know Mr. Fowler?

3          JUROR NO. 11:  He visits my work often.  I work

4     in the school system.

5          THE COURT:  As I said, he may be a witness in

6     this case.  Can you tell us, sir, that if the Chief had to

7     testify, could you judge his credibility just like any

8     others witness?

9          JUROR NO. 11:  Absolutely.

10          THE COURT:  Thank you.  I appreciate it.  Folks,

11    my last question is:  Can you promise me that you will

12    follow each instruction that I give you?  Yes?  All right.

13          What we are going to do is we are going to take a

14    break for ten minutes.  I have five of 3:00.  We will

15    reconvene at five after 3:00.

16          You know the admonitions.  Don't talk about the

17    case.  Don't let anybody talk about the case.  And if

18    anyone does try to approach you in any way, let us know,

19    okay?  And remember your seat where you're sitting.  We

20    will come back and then we will listen to what the lawyers

21    have to say.

22          COURT ATTENDANT:  Everybody in the back, yes, you

23    do have to return, please.

24          THE COURT:  We are saving you from going across

25    the street.

- Voir dire - Panel II - Court -

1    (Recessed at 2:56, and jury selection of Panel II resumed at

2    3:06 p.m.)

3              THE COURT:  Are we all set?  All right.  We are

4    back in session with both counsel, and Mr. Jennings, and

5    our jurors.  And Mr. Centra, are you ready to ask some

6    questions?

7              MR. CENTRA:  I am, Judge.

8              THE COURT:  All right, sir.

9    (Voir Dire Examination of Panel II by Mr. Centra:)

10             MR. CENTRA:  Good morning, everybody.

11             JURORS:  Good afternoon.

12             MR. CENTRA:  Good afternoon, I guess.  Thanks for

13   coming back.  I know you all sat here and listened to me

14   the first time, so I will give you, call it the CliffsNotes

15   version of everything I just went through so I am not

16   keeping you here as long as I did last time.  But again, my

17   name is Joe Centra.  I am here representing the People of

18   the State of New York.  As I said earlier, and the Judge

19   will tell you, it's my job to prove my case beyond a

20   reasonable doubt.  And as I said, I embrace that burden.  I

21   gave the other, the other group the analogy the difference

22   between reasonable doubt and any or all doubt.  And you

23   know, like I said, take a look outside, see snow on the

24   ground, you come to the reasonable assumption that it

25   snowed.  Although it's possible that a Hollywood crew came

- Voir dire - Panel II - Centra -

1   through and set up a winter scene outside.  It's not
2   reasonable to believe that happened.  Like I said, it's a
3   little analogy to keep you guys, to get you guys to a
4   little understanding, and the Judge will explain it
5   further, that's my way of kind of easing it down.
6        So as you heard, this is a case that involves
7   possession of drugs.  And on top of that, possession with
8   the intent to sell.  Specifically, this is involving
9   cocaine.  Anybody here, hear these facts, uncomfortable for
10  anybody?  Yes, sir?
11        JUROR NO. 2:  Yes, I went through the exact same
12  situation when I was a kid.  Except I had two bags of pot.
13  I bought them off the exact same day, smoked pretty much
14  most the one.  And I was arrested that day.  The police
15  tried to threaten me with a bunch of mocked up charges.
16  They said intent to sell.  Which I don't believe that for a
17  second.  I know it was untrue in my case.  I don't believe
18  it's true in this case, really.
19        MR. CENTRA:  Fair enough.  And like I said, so
20  are you telling me that you know there are going to be some
21  officers that come up here and testify.  You're not going
22  to be able to be fair and impartial in listening to their
23  testimony?
24        JUROR NO. 2:  If one of the officers said he had
25  a scale on him, I might.  But it sounds like he is having a

- Voir dire - Panel II - Centra -

1   fun night.

2           MR. CENTRA:  That's fair enough.  Anybody else

3   have any issues here with that type of case?  All right.

4           And like I touched on, briefly, there is, there

5   is the one count which is the intent to sell which we spoke

6   about.  The other is based on the weight.  And like I said,

7   the weight in this case is just over 1,200 milligrams of

8   cocaine contained in the aggregate weight of the substance

9   that was found.  I know that that seems like it's a very

10  small amount but the way that the law is written, that's

11  what the law is.  And the Judge will read that to you.

12          But based on that, would anybody have a problem

13  finding the defendant guilty if I prove my case beyond a

14  reasonable doubt just because of the amount, the amount

15  that's alleged here?

16          JUROR NO. 2:  (Indicating.)

17          MR. CENTRA:  The same reasons?

18          JUROR NO. 2:  Again, it sounds like there was one

19  full bag and like he bought two full bags.

20          THE COURT:  Let me stop.  Stop.  Stop.  We don't

21  know anything about the case.  Not one thing.  All right.

22  So I don't want to talk about the facts of this case at all

23  or anybody.  I don't mean you, sir.  But we are not going

24  to talk about the facts of the case until we have a

25  witness, swear to tell the truth, and sit down in that

1   chair.  We don't want to guess or make assumptions.

2   Because that's the last thing we need to do.  The only way

3   we are going to resolve this case is by the evidence, sworn

4   testimony and the exhibits.  Okay, gentlemen?  Thank you.

5           MR. CENTRA:  Okay.  Now another thing that the

6   Judge is going to have you look at, he will instruct you is

7   it's your job to look at the credibility and determine the

8   credibility of the witnesses here.  And like I said, I like

9   to use the example, with the, you know, your children.  You

10  can see that they are -- how many of you have children

11  here?

12  (Response.)

13          MR. CENTRA:  Miss Morgan?

14          JUROR NO. 1:  Yes.

15          MR. CENTRA:  How many children do you have?

16          JUROR NO. 1:  Two.

17          MR. CENTRA:  What are their ages?

18          POTENTIAL JUROR:  Eight and six.

19          MR. CENTRA:  That's a perfect age for my analogy

20  here.  So, how can you tell if your kids were trying to lie

21  to you or get away with something?

22          JUROR NO. 1:  Usually, I know what's going on.

23  Or if you know they are not going to take the blame for

24  something they didn't do.  So the other one, they are going

25  to rat each other out for sure.

- Voir dire - Panel II - Centra -

1    MR. CENTRA:  You can kind of tell?

2    POTENTIAL JUROR:  Right.

3    MR. CENTRA:  What they say, things like that?

4    POTENTIAL JUROR:  Yes.

5    MR. CENTRA:  Like I said before, it's that, what

6    I want you to take into consideration, it's look at, use,

7    these are common sense that you brought in here.  Use your

8    life experience and look at these witnesses and be able to,

9    you know, listen to what they have to say.  And you, the

10   jury, you get to judge their credibility.  The Judge is

11   going to instruct you on that as well.

12        You know, like I said, I have gone through a lot,

13   you all heard this.  Is there anybody here have any

14   questions for me?  Anybody have any moral or religious

15   beliefs that prevent them from finding him guilty if I

16   proof my case beyond a reasonable doubt?

17        Now can everybody promise me that you will keep

18   an open mind during the course of this whole trial and

19   listen to the evidence presented, and at the end of this,

20   listen to what the Judge has to say with regards to the law

21   and use everything that the Judge instructs you to

22   determine your verdict?

23        Thank you, everybody, for your time?

24        THE COURT:  Thanks, Mr. Centra.  Mr. LoFaro?

25   (Voir Dire Examination of Panel II by Mr. LoFaro:)

- Voir dire - Panel II - LoFaro -

1        MR. LOFARO:  Good afternoon, ladies and

2   gentlemen.  Again, I often agree with Mr. Centra.  I agree

3   with him on most of the things that he said.  There is the

4   snow analogy.  I have to take issue, to a certain extent.

5   That's actually why everyone is here, to see if each and

6   every element of the charge that's alleged has been

7   satisfied.  Not just to look at a big picture, go:  If it

8   looks like it's snow, I guess it's snowing.  No.  If it's

9   like a house, it may be a house, it may be a house of

10  cards, though it's not really a house.  So you need to

11  listen to every scintilla of evidence that comes in and

12  evaluate each and every scintilla of evidence that comes

13  in.  And all of these things are relevant.

14          Just briefly, and again, I apologize to

15  digressing.  I had a case once, in a high school, in front

16  of a jury of people.  I will call them a jury but they were

17  part of the council that assembled for the actions of

18  children, to decide whether to compel them to keep them in.

19  Another lawyer was missing.  Another lady was falling

20  asleep.  Nobody was really paying attention.  It was a

21  young student's academic life that was on the line, so to

22  speak.  And she got in a fight.  And I found out through

23  another friend of mine that another girl had gotten into a

24  fight; she didn't get expelled.  She didn't get suspended.

25  Nothing happened to her.  I think we were actually

162

- Voir dire - Panel II - LoFaro -

1    penalized.  My client chose to bring in an attorney.  One

2    of the school administrators said:  Well, I am treating

3    your girl reasonably; I will treat her the -- because I

4    treated the other girl, because I have never seen such a

5    level of hatred as the level of hatred that your client had

6    for that other student.  And my client -- obviously, was to

7    him, was, how did you get inside that student's head, and

8    assess one level of hatred as opposed to another level of

9    hatred?  And decide you were going to treat her differently

10   than you treated the other student?  Only she knew what her

11   level of hatred was, if there was hatred there at all.

12          That goes back to a very, very basic precept

13   within the law itself.  That's, for most crimes, not all

14   crimes, some crimes are statutory.  But most crimes, there

15   is two, not just a crime itself, but there is two elements

16   of every crime that need to be satisfied.  There is an

17   action -- and mens re.  The act I have committed, the

18   crime, you have to have done the action.  The other element

19   needs to be -- the mens re.  That's the mental state.  You

20   have to have had that intent, and without, again, getting

21   into the facts as the Judge admonished us, and again, not

22   to use Mr. Centra's work against him, but he said, the

23   cocaine that was seized was a minute amount of a very, very

24   small amount.  Now you can't infer anything from that

25   definitively until you hear the evidence.  But I think when

1    you hear the evidence, you're going to think to yourself,

2    Jeez, if there is an infinitely small amount of cocaine on

3    his person, what's the likelihood that he was selling it or

4    distributing it to others?  Especially if it was packaged

5    on its own.  And in one bag.  So that's something to think

6    about down the road.

7           And there is some other things that I think

8    you're going to find very disturbing with regard to framing

9    on someone's God-given constitutional rights, with regard

10   to my client.  That you're not to be too happy to hear.  I

11   will ask you to keep a keen ear open for those as well.

12           Again, thank you for your time.

13           THE COURT:  Thanks, Mr. LoFaro.

14           MR. LOFARO:  Thank you, Your Honor.

15           THE COURT:  Three or four minutes?

16           Folks, we will follow the same process, when the

17   attorneys are ready, we will go to the podium.  We will

18   choose our other jurors.  Again, feel free to talk quietly

19   amongst yourselves.  Hopefully, we will get a jury with

20   this right here.

21    (At 3:17 p.m., the following Challenges to Panel II

22   occurred at the Bench with all parties present.)

23           THE COURT:  All right.  We need one juror to be

24   the panel right now.  We can just need one.  We are going

25   to go one at a time.

- Challenges - Panel II -

1          Start with Miss Morgan.  With regards to Miss

2     Morgan, Mr. Centra challenge for cause?

3          MR. CENTRA:  No, Your Honor.

4          THE COURT:  Any challenge for cause on Morgan?

5          MR. LOFARO:  No, Judge.

6          POTENTIAL JUROR:  All right.  Any peremptory on

7     Miss Morgan?

8          MR. CENTRA:  No, Your Honor.

9          MR. LOFARO:  No, Judge.

10          THE COURT:  All right.  We have our 12th juror,

11     which is Melissa Morgan.  And we need two alternates.  We

12     are going to go one at a time.  Mr. Castagna, I think we

13     are going to challenge for cause, aren't we?

14          MR. CENTRA:  We are, Your Honor?

15          THE COURT:  Do you have any objection to

16     challenging Mr. Castagna for cause, as much as you would

17     like to have him?

18          MR. LOFARO:  I think there is nothing I can do

19     about that.

20          THE COURT:  I will, of course, you will allow

21     that challenge for cause?

22          MR. LOFARO:  I wonder if  --

23          THE COURT:  Let's go to No. 3, Mr. Smith.  Any

24     cause challenges for Smith?

25          MR. CENTRA:  No, Your Honor.

- Challenges - Panel II -

1        THE COURT:  Any cause challenge for Smith?

2        MR. LOFARO:  Well, it's kind of close but I guess

3    I will say no.

4        THE COURT:  Okay.  Any preempts for Smith?

5        MR. CENTRA:  No, Your Honor.

6        MR. LOFARO:  Yes.

7        THE COURT:  All right.  That's all right.  We are

8    going to go to Mildred Ganias.  Any cause for Ganias?

9        MR. CENTRA:  The only issue I have is her back

10   issue.  I don't know.

11       THE COURT:  Yes.  And that's a good question.

12   She did say she has a herniated disk.  She did tell me that

13   she could sit at least for an hour.  And if it was a

14   problem, she would let us know.  So unless you guys

15   consent, I will keep her.

16       MR. CENTRA:  I don't have a challenge for cause.

17       MR. LOFARO:  I would consent.  I don't care.

18       MR. CENTRA:  Okay.

19       THE COURT:  I appreciate that.  I appreciate

20   that, gentlemen.  I think that's a good idea.  We will let

21   Ms. Ganias go for consent.

22           We are on to Miss Brown.  Any cause challenge for

23   Miss Brown, Mr. Centra?

24       MR. CENTRA:  No, Your Honor.

25       THE COURT:  Mr. LoFaro?

- Challenges - Panel II -

1        MR. LOFARO:  No, Your Honor.

2        THE COURT:  Any preempt there, Mr. Centra?

3        MR. CENTRA:  Yes, Your Honor.

4        THE COURT:  All right.  Miss Brown has been

5   challenged by the People.  We will turn over to next, 6,

6   Mr. Powers.  Any cause for Mr. Powers, Mr. Centra?

7        MR. CENTRA:  No, Your Honor.

8        THE COURT:  Mr. LoFaro?

9        MR. LOFARO:  No.

10        THE COURT:  Any preempt on Powers?

11        MR. CENTRA:  No, Your Honor.

12        MR. LOFARO:  Yes.

13        THE COURT:  All right.  That's your second.  So

14   you don't have another one for the first alternate.  You do

15   know what I mean?

16        MR. LOFARO:  Yes.

17        THE COURT:  Okay.  So we are on to Mr. Dietz.

18   Any cause for Dietz?

19        MR. CENTRA:  No, Your Honor.

20        THE COURT:  Any cause for Dietz?

21        MR. LOFARO:  I am out of preempts?

22        THE COURT:  Yes.  For the first alternate.  Do

23   you have any cause challenge for Dietz?

24        MR. LOFARO:  No.

25        THE COURT:  Okay.  Preempts for Dietz?

- Challenges - Panel II -

1          MR. CENTRA:  No, Your Honor.

2          THE COURT:  So Dietz is our first alternate.

3          MR. LOFARO:  Oh, I blew it.

4          THE COURT:  Now we need one more.  That far,

5     Lisowski.  Any cause challenge for Lisowski?

6          MR. CENTRA:  No, Your Honor.

7          THE COURT:  Cause for Lisowski, No. 8, John?

8          MR. LOFARO:  No, Your Honor.

9          THE COURT:  Preempt?

10          MR. CENTRA:  No, Your Honor.

11          MR. LOFARO:  Yes, Judge.

12          THE COURT:  All right.  Counsel, Bukowski, any

13     challenge for Bukowski?

14          MR. CENTRA:  No, Your Honor.

15          THE COURT:  Cause for Bukowski, John?

16          MR. LOFARO:  No, Your Honor.

17          THE COURT:  Preempt for Bukowski?

18          MR. CENTRA:  No, Your Honor.

19          THE COURT:  John, preempt for Bukowski?

20          MR. LOFARO:  Yes.

21          THE COURT:  You have one left.

22          MR. LOFARO:  Yes.

23          THE COURT:  All right.  And we are on to Miss

24     Grome.  Any cause challenge?

25          MR. CENTRA:  No, Your Honor.

- Challenges - Panel II -

1      MR. LOFARO:  No, Your Honor.

2      THE COURT:  Any preempt?

3      MR. CENTRA:  No, Judge.

4      THE COURT:  Miss Grome is alternate No. 2, no

5  thanks to Mr. Centra.  Okay.  So knows what I am going to

6  do.

7  (Off the Record discussion.)

8      THE COURT:  Folks, we have our jurors that we are

9  going to need.  I am going to call three names.  Those

10  three will stay with us.

11      The rest you that are in what we call the box, we

12  are going to have you come up and see Miss Helbig.  She

13  going to give you your paperwork.  You're going to go down

14  to room 130.  And the folks in the back are going to go

15  down, but they don't need any paperwork.

16      THE CLERK:  I will get theirs.

17      THE COURT:  Folks, those of you who weren't

18  chosen at all, thank you very much for being here, being

19  part of the process.  For those that were questioned, I

20  thank you also.

21      Those staying with us, will be Melissa Morgan.

22  Donald Dietz and Doris Grome.

23      The rest of you can file up here and get the

24  paperwork from Miss Helbig.

25      The rest of you go downstairs.  Thank you very

- Jurors sworn -

1    much, folks.

2        (Pause for jurors leaving the courtroom.)

3            THE COURT:  Folks, we are back in the presence of

4    both counsel, and our three jurors that we just picked.  I

5    am going to ask the three of you to do me a favor and stand

6    up for me and raise your right hand.  You do hereby agree

7    to --

8        (The selected jurors of Panel II were sworn by the Court.)

9            THE COURT:  Thank you, folks.  Sit right back

10   down.  What I am going to do is I am going to bring in the

11   other nine jurors.  There is eleven jurors.  The other

12   eleven jurors, they will all come in.  I have a set of

13   preliminary charges that I will read, and then we will

14   break for the day, okay?  All right.

15  (Pause as selected jurors of Panel I walked into the courtroom

16  and sat in jury box with selected jurors of Panel II.)

17           THE COURT:  We are back in the presence of the

18   sworn jurors, and both counsel, and Mr. Jennings.

19           Folks, I appreciate your patience.  After today,

20   when we assemble in the juryroom in the morning, you will

21   be able to leave your belongings in there while court

22   proceeds.  You don't have to be bringing things in and out,

23   which is great.

24           Let me tell you how we are going to go forward.

25   I have preliminary instructions, so it's only about 300

1   pages -- it's only about five pages, all right -- that I

2   will read to you.  And then we are going to break for the

3   day, okay, when I get done with my preliminary

4   instructions.

5           I do a calendar every morning, starting at nine

6   o'clock; we do our calendar of other cases.  And then we

7   get right to the jury, back to the jury.  So, what I will

8   have you do is get here at 10:15.  If you can get here at

9   10:15, and our court officer will show you where to

10  assemble.  And hopefully, we can start as close to 10:30 as

11  possible.  The main thing with me, I let the attorneys know

12  is not to inconvenience the jurors.  I don't like to keep

13  you in the juryroom too long.  There are things that take

14  place outside your presence that we have to do.  There is

15  things that we have to do in court, outside the presence of

16  the jury, and we will try to do those as much as possible.

17  I try to hopefully minimize your sitting around.  And it

18  does happen, and I apologize in advance.  But as I said, we

19  will try to start as close to 10:30 as we can.  And we will

20  get our morning break.  We will get our lunch break.  We

21  will go in the afternoon.  We go, you remember, usually

22  until four o'clock in the afternoon or as close to there as

23  possible.  The only day that we may go past that is the day

24  of deliberations.  If we have a feeling that we are getting

25  close to getting things accomplished, we can go as late as

- Court - Opening - 2/6/17 -

1    six o'clock, okay?  But no later than that.  And we will

2    give you notice if we are going to do that.  I wanted to

3    let you know what our schedule is going to be like.

4         Then just let me give you my preliminary

5    instructions.  As you see, Pat Reagan is our court

6    reporter.  And Pat has taken down everything that's being

7    said.  What he takes down is called the record of the case.

8    Sometimes you're going to see a witness use their hands to

9    illustrate something.  They may say something is "this"

10   long.  And hopefully, the lawyer or the Court will say:

11   Let the record reflect it indicates a foot.  We do that

12   because it becomes necessary sometimes to have the court

13   reporter read back what a witness says and what the witness

14   was indicating.  And if someone doesn't state orally what a

15   witness is indicating with their hands, when that portion

16   is read back, we are not going to know.  You will be able

17   to see what a witness is indicating and you can always make

18   your own judgment.

19         The trial formally begins with what we call an

20   opening statement by the prosecutor.  The law requires the

21   prosecutor to make an opening statement.  The law however

22   does not require the defendant to make an opening

23   statement.  If the defendant does not make an opening

24   statement, that's not a factor from which you may draw an

25   unfavorable inference.  Remember, folks, what the lawyers

1   say in an opening statement, or any time thereafter, is not

2   evidence.  The lawyers are not witnesses.  What I say is

3   not evidence.  I'm not a witness.  In other words, you have

4   to decide the case on the evidence.  And what the lawyers

5   or I say is not evidence.

6            After completion of the opening statement, the

7   prosecutor is going to proceed with presentation of

8   evidence.  I will remind you that the piece of paper that

9   brought us here, the indictment, is not evidence.  It's a

10  document that contains an accusation.  The defendant has

11  pled not guilty to those charges, and this trial is to hear

12  the evidence and decide whether the defendant is guilty or

13  not guilty.  I remind you that the evidence, the evidence

14  is the testimony of the witnesses, any stipulations that

15  may be entered into, and documents or other physical

16  objects that I receive in evidence.  Testimony is the most

17  common form of evidence, and comes from the questioning of

18  the witnesses by the lawyers, and perhaps by the Court.

19            A question by itself is not evidence.  A question

20  by itself is not evidence.  It's the question with the

21  answer that's the evidence.

22            Evidence may come in the form of a stipulation

23  when the parties agree to something, they would present

24  that to us.

25            And lastly, evidence may come in the form of

- Court - Opening -

1   physical objects such as:  A document, a photograph,

2   clothing or something like that.

3           When a lawyer is questioning a witness, and a

4   question refers to a physical object, the object is

5   normally marked with a number or a letter of the alphabet

6   so we can more easily identify the object and refer to it.

7   That procedure is very helpful in keeping track of the

8   physical objects.  The attorneys here have been asked if

9   possible to pre-mark exhibits that they reasonably

10  anticipate will be shown to a witness, and thereafter be

11  offered as evidence at this trial.

12          Sometimes a lawyer will ask the Court to receive

13  the object into evidence.  If I grant the request to admit

14  the object in evidence, then the object becomes evidence,

15  and it will be made available for your inspection and

16  consideration during deliberations.

17          Any object or any piece of evidence that has been

18  marked for identification but was not received will not be

19  available for your inspection during deliberations because

20  it is not evidence received in this case.

21          An example of a document that may be marked for

22  identification but not received is what we call refreshing

23  a witness' recollection.  Sometimes a witness will be asked

24  a question, and then that witness will say that they cannot

25  remember what is being asked for, but will say:  Is there

- Court - Opening -

1   something that will refresh your recollection?  And be

2   given an opportunity to review something, usually a

3   document, such as their statement.  The witness will be

4   given the document, permitted to read it silently.  If that

5   document refreshes the witness' recollection, the witness

6   will then answer the question, and the question with the

7   answer is the evidence.

8         It is common and permissible for an attorney or

9   an investigator, for an attorney to speak to a witness

10  about his or her testimony before calling them to the

11  stand.  Also, a witness may review documents and other

12  material pertaining to the case before he or she testifies

13  at trial.  Generally, a witness scheduled to testify at

14  trial may not be present in the courtroom during the

15  testimony of other witnesses.

16        After the People have completed the presentation

17  of their evidence, the defendant may, but is not required,

18  to present evidence.

19        I remind you that throughout these proceedings,

20  the defendant is presumed to be innocent.  As a result, you

21  must find the defendant not guilty, unless on the evidence

22  presented at this trial, you conclude that the People have

23  proven the defendant guilty beyond a reasonable doubt.

24        The defendant is not required to prove that he is

25  not guilty.  In fact, the defendant is not required to

- Court - Opening -

1    prove or disprove anything.  To the contrary, the People

2    have the burden of proving the defendant guilty beyond a

3    reasonable doubt.  That means before you can find the

4    defendant guilty of a crime, the People must prove beyond a

5    reasonable doubt every element of the crime, including that

6    the defendant is the person who committed the crime.

7         The burden of proof never shifts from the People

8    to the defendant.  If the People fail to satisfy their

9    burden, you must find the defendant not guilty.  If the

10   People satisfy their burden, you must find the defendant

11   guilty.

12        Each witness by whomever called is first

13   examined, that is, asked questions by the lawyer who calls

14   the witness to testify.  That's called direct examination.

15   When the direct examination is over, the other lawyer is

16   permitted to ask questions of the witness.  That's called

17   cross-examination.  You can then have redirect, and

18   recross, but that is, under our law, the scope of that is

19   limited.

20        Sometimes jurors will say:  Can we take notes?

21   Could we ask questions?  And the answer to both of those

22   are no.  All right.  The lawyers are responsible for asking

23   questions of the witnesses.  The Court may at times ask a

24   witness a question.  Jurors in New York State are not

25   allowed to ask questions of a witness.

- Court - Opening -

1       As far as note-taking goes, folks, the reason
2   that we don't allow note-taking is this:  As I said, Mr.
3   Reagan takes down every word that's being said in the
4   courtroom.  And if things are, if things are being said at
5   the same time, he will stop us, and make sure he can take
6   everything down.  If you want, if you want something read
7   back at the end of this trial, everything that has been
8   said, he will read back to you.  Whatever you're looking
9   for, he will read back.  Okay?  But, if you're taking
10  notes, it's very easy to miss something somebody said while
11  you're concentrating on the note.  And the other thing is,
12  I really like to have your attention on the person that's
13  testifying because the credibility isn't determined by what
14  they say but how they say it, and their demeanor.  So I
15  appreciate your understanding, and that's how we are going
16  to deal with the notes in the case.

17      And we will talk a little bit about credibility.
18  You alone determine the truthfulness and accuracy of the
19  testimony of each witness.  You must decide whether a
20  witness told the truth, and was accurate.  Or instead,
21  testified falsely or was mistaken.

22      You must also decide what importance to give to
23  the testimony you accept as truthful and accurate.  Again,
24  it's the quality of the testimony that controls, not the
25  number of witnesses who testify.

1       There is no particular formula for evaluating the

2   truthfulness and accuracy of another person's statements or

3   testimony.  You bring to this process all of your varied

4   experiences in life.  You frequently have to decide the

5   truthfulness and accuracy of statements made to you by

6   other people.  The same factors used to make those

7   decisions should be used in this case when evaluating the

8   testimony.  At the end of the trial, I am going to give you

9   some more examples of those factors.

10      There are rules for all stages of a trial,

11  including rules that govern whether certain evidence may be

12  introduced and, if so, how and when.  Part of my job is to

13  enforce those rules.  Some of the rules you may understand

14  when you hear the ruling.  Some of them you may not

15  understand, unless you have studied the law.  The rules

16  have been carefully developed over hundreds of years for

17  the sole purpose of guaranteeing a fair and orderly trial.

18  In other words, these rules are not designed to determine

19  whether the evidence you see and hear is true or false,

20  accurate or inaccurate.  It's for you, not me, to evaluate

21  the evidence and make that decision.

22      The rules are designed to insure that the

23  evidence you hear and see is relevant and in a form that

24  permits you to evaluate it fairly.

25      A witness can testify only about matters the

- Court - Opening -

1    witness has personal knowledge of.  That is, something that

2    the witness has personally seen, heard, felt, touched or

3    tasted.  A witness is not permitted to guess, speculate, or

4    say what he thinks another person saw or heard, felt,

5    touched or tasted.  A witness is not permitted to give an

6    opinion about matters for which a special expertise is

7    necessary, unless of course that witness is an expert on

8    the matter.

9           Finally, a witness is not permitted to testify to

10   hearsay.  And you most likely heard that phrase in the

11   past.  Hearsay, meaning, generally that a witness cannot

12   testify to what the witness may have said before the trial,

13   or what another person may have said to that witness.

14          There are exceptions to hearsay, and I will make

15   those determinations as we move along during the course of

16   the trial.

17          During the presentation of evidence, the lawyers

18   for the parties will in turn be asking questions of a

19   witness.  During that questioning, the lawyer is not

20   permitted to make comments on a witness' answer or the

21   case.  You will often see that on TV where he makes some

22   witty response, all right.  In real trials, it's not

23   allowed.  In a real trial, it is at the end of the case

24   that the lawyers are permitted to address the jurors in

25   what is called a summation.  And it is then that the

1    lawyers may comment on the witnesses, the testimony and

2    other evidence.

3         During the questioning of a witness, if a lawyer

4    believes a question or some other presentation of evidence

5    is not in accord with the rule of law, the lawyer will

6    object.  When an objection is made, I will decide whether

7    the rules permit the question to be asked, or the evidence

8    to be introduced.  Making objections is part of a lawyer's

9    job.  You're not to draw any unfavorable inference because

10   objections are made.  They take place at every trial.  A

11   lawyer may object before a witness answers a question or

12   after a witness answers that question.

13        When an objection is made to a question before

14   the witness answers, if I overrule the objection, I am

15   going to allow the witness to answer.  If I sustain it,

16   there will not be an answer and therefore, no evidence.

17        A question alone is not evidence.

18        If the lawyer objects after the witness answers

19   the question, and I overrule it, the answer stands.  If I

20   sustain the objection, the answer is not evidence, the

21   question and the answer are stricken from the record, and

22   you are going to completely disregard the answer.

23        Any ruling by the Court on an objection of

24   counsel or otherwise is based on our law and it expresses

25   no opinion about the facts of the case or whether the

- Court - Opening -

defendant is guilty or not guilty.  Again, you folks are responsible for that decision.

From time to time, during the course of the trial there may be conferences here at the Bench with the attorneys.  And if they become prolonged, I may have to ask to excuse the jury.  These conferences deal with questions and matters of law or scheduling that are my responsibility.  So when that occasion does arise, and when I have to do this outside your presence, I ask you to be patient and understanding while the conferences are conducted.

Upon completion of the evidence in this case, the lawyers will address you in a closing statement, or what we call a summation.  What a lawyer says in summation is not evidence.  The summations, however, provide each lawyer an opportunity to review the evidence presented and submit for your consideration, the facts, inferences and conclusions which they contend may be properly drawn from the evidence presented.

After the summations of counsel, I am going to instruct you on the rules of law applicable to this case. You must accept and follow those rules.  You're then going to begin your deliberations.

During your deliberations, your function as jurors will be to decide what the facts are, and to apply

- Court - Opening -

1    the rules of law that I set out.  You will determine the

2    facts from all the testimony that you hear, the exhibits

3    that are submitted, and any stipulations.  In other words,

4    you will decide the case on the evidence.

5           The conclusion you reach from determining the

6    facts and applying the law will be your verdict, guilty or

7    not guilty, as to each count.

8           Under our law, the first juror chosen will serve

9    as our foreperson.  During the trial, the foreperson has

10   the same responsibilities as any other juror.  And the

11   foreperson at the end will announce the jury's verdict.

12          So, in summary, here are the stages of our trial:

13   Openings, presentation of evidence, summations, final

14   instructions by the Court, and the deliberation of the jury

15   and the verdict.

16          If -- hopefully, this doesn't come up but it does

17   come up during trials so we like to talk about it -- if you

18   need to speak to me about something relating to your jury

19   service or the trial, please tell the court officer that

20   you need to speak to me.  I will then arrange an

21   appropriate meeting with the parties, in the courtroom.  We

22   don't do anything outside the presence of all parties, and

23   our court reporter.

24          Please do not discuss with your fellow jurors

25   whatever you feel necessary to bring to my attention.

- Court - Opening -

1    After we have had our conversation, again, do not discuss

2    with your fellow jurors whatever it was we discussed.  It

3    doesn't always happen -- it doesn't often happen, but it

4    happens, if something of such a magnitude happens and you

5    need to speak to me, that's the process that we will use,

6    okay?

7              During a trial, as I said, we will try our best

8    to avoid delay.  From my experience, I do know delays are

9    inevitable.  And of course, we ask for your understanding

10   and your patience.  I also request that you be here at the

11   times I set forth, so the absence or lateness of a juror is

12   not the occasion for delay.  If we are here, and we are

13   ready to go, great.  If a juror is sick and can't make it

14   in, we will have the number for you to call and things of

15   that nature.  But, it is best, we are asking you to be on

16   time or early, actually.  If an emergency arises that would

17   make you late or prevents you from attending, please call

18   the court.  Leave a number where you could be reached.

19   Explain the problem so we can minimize everyone's

20   inconvenience.  And we will get you those phone numbers.

21   Thank you.

22             Of course, an alternate juror is expected to pay

23   the same close attention to the case as any one of our 12

24   jurors.  The only difference between an alternate and of

25   the 12 is that the alternate does not know at this time

- Court - Opening -

1    whether that juror will be called upon at some point during

2    the trial to substitute for one of the 12 jurors.  It can

3    happen.  It has happened many times.  And I know that the

4    two of you will pay close attention.

5           Folks, that's all the instructions I have for

6    this evening.  We are going to break.  We are going to meet

7    tomorrow at 10:15.  Chrissie will show everybody where to

8    congregate.

9           Again, do not converse either among yourselves or

10   with anyone else about anything related to this case.

11          Do not at any time during the trial request,

12   accept or agree to accept or discuss with any person the

13   receipt or acceptance of any payment or benefit in return

14   for supplying information.

15          Promptly report to me any incident within your

16   knowledge involving any attempt by any person to improperly

17   influence you or any other member of the jury.

18          Do not visit or view the premises or place where

19   the crime was allegedly committed.

20          Don't do any Internet search, any social media,

21   anything of that nature at all with regard to this case.

22   Don't post anything about it.  The fact that you're here,

23   none of those things.

24          All right.  Folks, have a great night.  We will

25   see you tomorrow morning.  Thank you.

- Court - Opening -

1    (Jurors left the courtroom at 3:45 p.m.)

2         THE COURT:  We are outside the presence of the

3    jury.  We have Mr. Centra, Mr. LoFaro and Mr. Jennings.

4    And gentlemen, I know we are going to start tomorrow with

5    opening statements.  And then Joe, you will have your

6    witnesses ready for us?

7         MR. CENTRA:  I will, Judge.

8         THE COURT:  Anything else we need to discuss this

9    evening before we break, Mr. Centra?

10        MR. CENTRA:  Judge, I just wanted to touch base

11   on the potential witnesses that Mr. LoFaro may call with

12   regards to this case.

13        COURT ATTENDANT:  Judge, do we have any sheets

14   made up with the phone numbers?

15        THE COURT:  I don't.

16        MR. CENTRA:  I do intend on asking for an offer

17   of proof on that.  I don't know how the Court is going to

18   handle it before each witness or as a whole?

19        THE COURT:  No.  I would suggest that, I know Mr.

20   LoFaro, Mr. Jennings will be talking.  And maybe at the end

21   of business tomorrow, we can, if you're asking for an offer

22   of proof, we can do that tomorrow at the end of the day, if

23   everybody will remind me.  I know there is a list of

24   individuals.  It was Mr. Jones that was allegedly in the

25   car with Mr. Jennings.  I can understand where his

- Court - Opening -

1      testimony could be relevant.  And then we have one, two,

2      three, four, five other individuals.  And at this point, an

3      offer of proof probably won't be a bad idea.  But we can do

4      that tomorrow at the end of the day.

5                 MR. CENTRA:  Okay.

6                 THE COURT:  Anything else, Mr. Centra?

7                 MR. CENTRA:  Judge, I wanted to clarify for my

8      potential witness list, we had Willie Jones?

9                 POTENTIAL JUROR:  Yes.

10                MR. CENTRA:  Dave Chaplain?

11                THE COURT:  David Chaplain.

12                MR. CENTRA:  Hatisha Holmes?

13                THE COURT:  Hatisha with an H.

14                MR. CENTRA:  Frank Fowler?

15                THE COURT:  Yes.

16                MR. CENTRA:  Mallory Livingston?

17                THE COURT:  And Howard Davis.

18                MR. CENTRA:  Howard Davis.

19                THE COURT:  And is it too much to ask, John, do

20     you have dates of birth of any of these folks?

21                MR. LOFARO:  No, I don't, Judge.  I apologize.

22                THE COURT:  That's all right.  Anything else, Mr.

23     Centra?

24                MR. CENTRA:  That's it, Your Honor.

25                THE COURT:  Let me ask you about exhibits.  I am

- Court - Opening -

1    not going to hold you to it, of course.  It's just for

2    housekeeping.  Do you know how many exhibits you're going

3    to have.

4              MR. CENTRA:  I believe two, Honor.

5              THE COURT:  Just two?

6              MR. CENTRA:  Yes.

7              THE COURT:  You will have those marked for us?

8              MR. CENTRA:  I will.

9              THE COURT:  Okay.  And John, anything we need to

10    put on the record before we break for the day?

11              MR. LOFARO:  No, Judge.  The only thing I would

12    ask is I don't know why I don't seem to have it in my file,

13    I appreciate, and I thank the Court for providing these two

14    transcripts.  Mr. Jennings' own testimony of the Grand

15    Jury.  I know you sent it over.  I can't find a copy.

16              MR. CENTRA:  From the most recent?

17              MR. LOFARO:  Yes.

18              MR. CENTRA:  Yes.  It looks a little, yes, there

19    are two.  I guess they came in kind of two separate.  I can

20    show you the copy I have.

21              MR. LOFARO:  Maybe I could get a copy tomorrow?

22              MR. CENTRA:  I could give it to you right now.

23              MR. LOFARO:  Great.

24              THE COURT:  While you look for that, let me put

25    on the record.

- Court - Opening -

1              MR. CENTRA:  Actually, I mailed that one to you.

2      Can you get that?

3              MR. LOFARO:  No.  Maybe somebody in my office

4      grabbed it.

5              MR. CENTRA:  I am going upstairs.  I will get it.

6              THE COURT:  We will get that done today.

7              I wanted to put on the record that we had had a

8      pretrial in this case last week.  And I wanted to cover

9      everything that could possibly be covered during the course

10     of trial, and I think we did.  One of the things was

11     civilian clothes for Mr. Jennings.  And Mr. Jennings has

12     decided not to wear civilian clothes, which is his right.

13     But he was offered the opportunity to have civilian

14     clothes.  He decided not to.  And again, I gave the

15     admonition about the fact that he is in custody.

16             He has also decided, against my best advice, to

17     continue to wear handcuffs during the course of the

18     trial -- which is not required by the Onondaga Sheriff's

19     Department.  It's not required by this Court.  But Mr.

20     Jennings has decided to do so.  I want to make sure that

21     that's clear on the record.

22             All right.  Anything else, Mr. LoFaro?

23             MR. LOFARO:  No, Your Honor.

24             THE COURT:  Mr. Centra?

25             MR. CENTRA:  No, Your Honor.

188

- Recess for day - 2/6/17 -

1        THE COURT:  All right.  We will see you fellows

2  tomorrow morning.

3        MR. CENTRA:  Thank you, Judge.

4  (Recessed Trial for the day at 3:50 p.m.)

5                  *                *                *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25