UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TONY JENNINGS,

                Plaintiff,

    -against-                            5:17-CV-0054 (LEK/TWD)

JEREMY DECKER, *et al.*,

                Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

## I.  INTRODUCTION

On January 19, 2017, Tony Jennings commenced this 42 U.S.C. § 1983 action against the City of Syracuse[1] and two officers employed by the Syracuse Police Department: Officer Jeremy Decker and Officer Darren Ettinger.[2] Dkt. No. 1 ("Complaint"); see also Dkt. No. 1-1 ("Preliminary Statement of Facts"). Plaintiff's claims arise out of circumstances surrounding his January 5, 2015 arrest in Syracuse, New York. See Compl. Now before the Court is Defendants' second motion for summary judgment, filed on July 27, 2020 along with a memorandum and statement of material facts ("SMF"). Dkt. Nos. 127 ("Motion"), 127-19 ("Defendants' SMF"), 127-20 ("Defendants' Memorandum"). Plaintiff opposes the Motion and submits his cross-

---

[1]  Plaintiff's initial pleading named the Syracuse Police Department as a defendant, not the City of Syracuse. Dkt. No. 1 at 1. However, in a report-recommendation issued May 2017, the Honorable David E. Peebles, U.S. Magistrate Judge, determined that "[t]he Syracuse Police Department is an agency of the City of Syracuse and not an independent entity subject to suit." Dkt. No. 7 ("Report-Recommendation") at 6. Judge Peebles recommended that the Syracuse Police Department be dismissed as a defendant and replaced with the City of Syracuse, id. at 8, a suggestion later adopted and implemented by the Court, Dkt. No. 15 ("June Order") at 2.

[2]  Officer Robert Ocker was also named as a defendant in the original complaint. Dkt. No. 1 at 1. Ocker was dismissed as a defendant pursuant to the Court's grant of partial summary judgment issued January 17, 2019. Dkt No. 62.

motion for summary judgment. Dkt. Nos. 138 ("Cross-Motion"), 138-16 ("Plaintiff's Response to SMF"), 138-17 ("Plaintiff's SMF"), 138-18 ("Plaintiff's Memorandum"). Defendants, in turn, oppose Plaintiffs Cross-Motion. Dkt. No. 146 ("Defendant's Reply"). For the reasons set forth below, Defendants' Motion is granted in part and denied in part, and Plaintiff's Cross-Motion is denied.

## II.     BACKGROUND

### A.  Factual Background

The record and materials submitted in connection with the Motion and Cross-Motion make clear that the Plaintiff and Defendants allege significantly different narratives surrounding Plaintiff's arrest. Their respective versions of events are set forth below.

#### 1. *Defendants' Version of Events*

On January 5, 2016, officers Decker and Ettinger were patrolling together in the Pioneer Homes housing complex in Syracuse, New York. Defendants' SMF at 1; Dkt 127-11 ("Decker Deposition") at 23–24; Dkt. No. 127-12 ("Ettinger Deposition") at 74. Both officers were members of the Crime Reduction Team ("CRT"), a "proactive" police unit focused on reducing crime and gun violence in high crime areas. Decker Dep. at 12, 15.

During their patrol, Defendants approached the 100 block of Radisson Court where they encountered a parked vehicle occupied by two individuals, Plaintiff and his friend Willie Jones. Defs.' SMF at 1–2. Defendants immediately noticed the individuals look at them, then turn and "make furtive movements toward their laps, looking down as if they were attempting to hide" items. Defs.' SMF at 2; Ettinger Dep. at 86. The officers parked and exited their patrol vehicle. Id. Decker approached the driver's side of Plaintiff's car while Ettinger approached the passenger side and began talking to Mr. Jones who was seated in the front passenger seat. Defs.'

SMF at 2; Ettinger Dep. at 93–95; Dkt. No. 127-5 ("Decker Suppression Hearing Testimony") at 7, 10, 25, 35.

Decker observed a black digital scale with white residue in the front console area of Plaintiff's vehicle. Defs.' SMF at 3; Decker Sup'n Hr'g Test. at 7, 10–11. Decker recovered the scale and asked Plaintiff and Jones if they had drugs, which they denied. Decker Dep. at 53; Decker Sup'n Hr'g Test. at 12. Ettinger asked Jones to step out of the car and placed him in handcuffs. Ettinger Dep. at 95. Decker then asked Plaintiff to step out of the car and Plaintiff complied. Defs.' SMF at 5; Decker Dep. at 57.

Decker ordered Plaintiff to turn and put his hands on the vehicle and proceeded to search Plaintiff for contraband. Decker Dep. at 59. Plaintiff turned, "violently pulled away and fled on foot." Dkt. No. 127-4 ("Ettinger Suppression Hearing Testimony") at 14; Defs.' SMF at 6. Decker "tackled Plaintiff from behind and the two landed on the ground." Defs.' SMF at 7. Decker ordered Plaintiff to put his hands behind his back, but Plaintiff continued to struggle, keeping his hands under his body to push off the ground and get away or, it appeared, to grab a weapon. Decker Sup'n Hr'g Test. at 13; Defs.' SMF at 8.

Ettinger left Jones by the passenger side of Plaintiff's car and ran to Decker and Plaintiff on the ground. Ettinger Dep. at 118. Ettinger tried to aid Decker by pulling Plaintiff's hands behind his back but was unable to do so. Id.; Defs.' SMF at 8. Ettinger then struck Plaintiff once on the right side of the head, after which they were able to secure Plaintiff's arms behind his back and place him in handcuffs. Ettinger Dep. at 118; Defs.' SMF at 8.

Once Plaintiff had been handcuffed, Decker resumed his search of Plaintiff's person and car and Ettinger resumed speaking with Jones. Ettinger Supp'n Hr'g Test. at 15. During the

search, Decker found crack cocaine wrapped in plastic, two cell phones, and a few hundred

dollars in cash. Decker Supp'n hr'g Test. at 13–14; Defs.' SMF at 10.

Decker and Ettinger took Plaintiff to the Onondaga Justice Center, where he was charged

with two counts of criminal possession of a controlled substance. Defs.' SMF at 11. Plaintiff

declined medical attention on the scene and did not claim to be injured during booking, nor did

he ever seek treatment for any alleged injury sustained. Id. at 10–12.

> 2. *Plaintiff's Version of Events*

On January 5, 2016 around 6:30 P.M. Plaintiff and Willie Jones were sitting in Plaintiff's

car in the parking lot of Radisson Court, part of the Pioneer Homes housing complex in

Syracuse, NY. Pl.'s SMF at 5; Dkt. No. 127-13, ("Jennings Deposition") at 27. The pair had

stopped to return Jones to his girlfriend's home in Pioneer Homes after attempting to fix Jones'

car, which had broken down elsewhere. Jennings Dep. at 25. Jones stepped out of Plaintiff's

vehicle and began removing his tools from inside the car. Pl.'s SMF at 5; Jennings Dep. at 28.

At around this time, Ettinger and Decker were patrolling in the Pioneer Homes area and

pulled into Radisson Court. Pl.'s SMF at 5. The two officers were part of the CRT, a unit in the

Syracuse Police Department that regularly patrols high crime areas, is more proactive and

aggressive than other units, makes more arrests, and regularly arrests for minor offenses. Id. at 2.

The Syracuse Housing Authority had designated the members of the Syracuse Police Department

as agents for enforcing trespassing laws on Housing Authority property. Id. at 3–4. Ettinger

believed this designation allowed him to stop any individual on Pioneer Homes property to

determine if they had lawful business there. Id. at 4.

As Decker and Ettinger scanned the parking lot, they noticed Plaintiff and Jones sitting in

Plaintiff's vehicle. Id. at 6. Decker and Ettinger could only see the pair's shoulders and upper

torsos, but believed they were making furtive movements. Id. Decker and Ettinger stopped their

cruiser behind Plaintiff's black Acura, both exited the cruiser and approached the passenger side of Plaintiff's vehicle. Jennings Dep. at 30; Pl.'s SMF at 7. Ettinger proceeded to question Jones, place him in handcuffs, and search him. Jennings Dep. at 31–32; Dkt. No. 127-14 ("Jones Deposition") at 26.

Plaintiff opened his car door, intending to step out and "assess the situation." Pl.'s SMF at 7; Jennings Dep. at 33. Decker ran around the car to block Plaintiff's exit and began to question Plaintiff, asking if he had drugs or guns. Jennings Dep. at 34; Pl.'s SMF at 7.

Decker ordered Plaintiff to step out of the vehicle and place his hands on the hood of the car. Jennings Dep. at 40. Decker began to search Plaintiff. Id. at 43. At no point did Plaintiff run or try to escape. Pl.'s SMF at 8. During the search, Plaintiff "turned around to protest Decker's placement of his hands inside [Plaintiff's] pants." Pl.'s SMF at 8; Jennings Dep. at 51. Decker grabbed Plaintiff by the coat and pants and "violently slammed him to the ground and onto the hard pavement." Pl.'s SMF at 8; Jennings Dep. at 51. Plaintiff immediately attempted to put his arms behind his back and did not resist or try to strike or harm Decker in any way. Pl.'s SMF at 8; Jennings Dep. at 46, 51. Nevertheless, Decker landed on top of Plaintiff and proceeded to strike him. Pl.'s SMF at 8; Jones Dep. at 37–38. Ettinger ran from the passenger side of Plaintiff's car and struck Plaintiff in the face with a closed fist as Plaintiff lay face down on the ground with his arms behind his back. Jennings Dep. at 56; Jones Dep. at 40–41. Neither officer instructed Plaintiff to stop resisting or put his hands behind his back. Jennings Dep. at 56; Pl.'s SMF at 9.

After Ettinger struck Plaintiff, Decker and Ettinger placed him in handcuffs. Pl.'s SMF at 9. Plaintiff was transported to Onondaga County Justice Center and booked. Id. Plaintiff was bleeding from his nose immediately after the incident. Jones Dep. at 44. Plaintiff reported pain

around his right eye to the Justice Center medical department and suffered pain in his knee and ribs as a result of the incident. Dkt. No. 127-17 ("50-h Hearing Testimony") at 13–14; Pl.'s SMF at 9; Jennings Dep. at 147. Plaintiff was not offered, and did not refuse, any medical treatment on the scene. Pl.'s SMF at 9.

### B. Procedural History

The procedural history of this case up to the filing of the Defendants' first motion for summary judgment is fully set forth in this Court's Memorandum-Decision and Order, Dkt. No. 62, familiarity with which is assumed. On January 17, 2019, Defendants' first motion for summary judgment was granted in part and denied in part, with Plaintiff's claims for Fourteenth Amendment racial profiling against Decker and Ettinger, Plaintiff's claim based on Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) against the City of Syracuse, and Plaintiff's Fourth Amendment excessive force claim against Decker and Ettinger surviving. Id.

On March 26, 2019, Plaintiff was appointed pro-bono counsel in preparation for trial. Dkt. No. 71. On May 20, 2019, the Court granted Plaintiff's request to reopen discovery. Dkt. Nos. 75, 80.

On February 6, 2020, Defendants requested, and were granted, permission to file a dispositive motion. Dkt. Nos. 121, 123. On July 27, 2020, Defendants filed the instant motion for summary judgment, which has since been fully briefed. Defendants argue that (1) Plaintiff's racial profiling claim should be dismissed because there is no evidence on the record to establish discriminatory intent, Plaintiff has failed to show a group of similarly situated individuals, and the doctrine set forth in Heck v. Humphrey, 512 U.S. 477 (1994) bars the claim; (2) Plaintiff's Monell claim should be dismissed because the underlying racial profiling claim has been dismissed; and (3) Plaintiff's excessive force claim must be dismissed because the level of force

used was reasonable as a matter of law, Plaintiff suffered no physical injury, and Decker and Ettinger are entitled to qualified immunity.

On October 30, 2020, Plaintiff submitted his opposition to Defendant's Motion as well as his own cross-motion for summary judgment. Dkt. No. 138. Plaintiff argues he is entitled to summary judgment on his excessive force claim because the force used by Defendants was unreasonable as a matter of law.

## III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted."). The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.   DISCUSSION

### A.  Fourteenth Amendment Racial Profiling Claim against Decker and Ettinger

The Equal Protection Clause of the Fourteenth Amendment mandates that no state shall deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 2000) (citing Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999)).

There are several avenues a plaintiff may take to plead intentional racial discrimination in violation of the Equal Protection Clause. A plaintiff may allege that a law or policy expressly classifies persons on the basis of race, a facially neutral law or policy is applied in an intentionally discriminatory manner, or a facially neutral statute or policy was motivated by discriminatory animus and has an adverse, discriminatory effect. See Brown, 221 F.3d at 337; see also Hayden, 180 F.3d at 43; Miller v. Terrillion, 391 F. Supp. 3d 217, 224–25 (E.D.N.Y. 2019). A plaintiff may also allege that government actors engaged in selective enforcement or selective prosecution based on the impermissible consideration of race. Miller, 391 F.Supp.3d at

225 (treating equal protection claim for racial profiling as selective prosecution based on race); Anderson v. City of New York, 817 F. Supp. 2d 77, 93–94 (E.D.N.Y. 2011) ("[T]he crux of plaintiff's allegations [regarding being arrested due to race] is a claim of selective enforcement/prosecution and denial of equal protection under the Fourteenth Amendment."); Faccio v. Eggleston, No. 10-CV-783, 2011 WL 3666588 at *8 (N.D.N.Y Aug. 22, 2011) ("Plaintiffs' allegations of racial profiling will be construed as a claim . . . of selective prosecution in violation of the Equal Protection Clause.").

The parties dispute whether Plaintiff's racial profiling claim is properly categorized as selective enforcement and prosecution or as an application of a facially neutral law in an intentionally discriminatory manner. Defs.' Mem. at 4; Pl.'s Mem. at 12–13. A selective enforcement or prosecution claim requires the plaintiff to show a better treated, similarly situated group, whereas a plaintiff alleging racist application of a neutral law does not. Coward v. Town & Vill. of Harrison, 665 F. Supp. 2d 281, 303 (S.D.N.Y. 2009) (citations omitted) (quoting Pyke v. Cuomo, 258 F.3d 107, 109–110 (2d Cir. 2001)) (holding that a plaintiff who "alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner . . . is not obligated to show a better treated, similarly situated group of individuals . . . [but] a plaintiff alleging a claim of selective prosecution . . . must").

However, the Court need not resolve this dispute. Both avenues require a showing of discriminatory intent. Compare Anderson v. City of N.Y., 817 F. Supp. 2d 77, 93 (E.D.N.Y. 2011) (dismissing claim of selective prosecution and enforcement on summary judgment because plaintiff was "unable to offer any evidence that defendants acted with purposeful discrimination based on his race") with Pyke, 258 F.3d at 110 ("Plaintiffs will, of course, be required to substantiate their claim that [the discriminatory application of the neutral policy] . . .

was motivated by racial discrimination"); see also Brown, 221 F.3d at 337 ("To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor *intentionally discriminated* against him on the basis of his race.") (emphasis added). Even drawing all inferences in Plaintiff's favor, the record does not provide evidence from which a reasonable jury could find that Decker and Ettinger acted with discriminatory intent. Thus, Plaintiff's claim of racial profiling must be dismissed regardless of which theory his claim pursues.

To establish discriminatory intent, a plaintiff must show that a discriminatory purpose was a motivating factor in the challenged action. In other words, a plaintiff must provide evidence that the particular course of action at issue was chosen "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Miller, 391 F. Supp. 3d at 225, (quoting Floyd v. City of N.Y., 959 F. Supp. 2d 540, 571 (S.D.N.Y. 2013)); see also Hayden, 180 F.3d at 51 ("Discriminatory purpose 'implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'") (quoting Personnel Administrator v. Feeney, 442 U.S. 256, 279 (1979)). This evidence may be direct or circumstantial, since "discriminatory intent is rarely susceptible to direct proof." Miller, 391 F. Supp. 3d at 225 (quoting Floyd, 959 F. Supp. 2d at 571).

Plaintiff does not offer any direct evidence of Defendants' discriminatory intent, but does offer theories based on circumstantial evidence, none of which are availing.

First, Plaintiff asserts there were no reports of crimes or suspicious activity in the Pioneer Homes area where Plaintiff was parked on the night of the arrest and the vehicle itself was "innocuous." Pl.'s Mem. at 14–15. Plaintiff seemingly argues that a reasonable jury could use

this absence of apparent motivation to infer that Defendants' decision to approach Plaintiff's vehicle was motivated by racism. Id. Even if an absence of evidence as to motivation could reasonably give rise to such an inference, this is not an accurate representation of the record which establishes that Plaintiff and Jones made furtive movements after Defendants spotted them in Plaintiff's car.[3] Dkt. Nos. 127-12 ("Ettinger Dep.") at 85; 127-11("Decker Dep.") at 33; Pl.'s SMF at 6. Thus, Plaintiff is incorrect in arguing Defendants had no reason to approach the vehicle, or that there is an absence of evidence as to apparent motivation.

Second, Plaintiff points out that Defendants were members of the Syracuse Police Department's CRT, "a highly aggressive unit known for proactively making arresting [sic]

---

[3] Plaintiff, arguably, has asserted that he did not make furtive movements. Jennings Dep., at 37; Pl.'s Resp. to SMF at 3–4. At the summary judgment state, the Court would normally make all rational inferences in Plaintiff's favor and accept this assertion as true. However, the Court is unable to do so because of the doctrine set forth in Heck v. Humphrey, 512 U.S. 477 (1994). Heck prohibits a party from recovering damages under § 1983 for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid." Id. In Plaintiff's New York state criminal proceedings, the criminal court found that Plaintiff did indeed engage in furtive movements and, significantly, relied on that finding to deny Plaintiff's motion to suppress evidence obtained during the traffic stop at issue, evidence upon which his criminal convictions for possession of a controlled substance were based. Dkt. 127-6 ("Suppression Hearing Order"), at 8. If Plaintiff claims that Defendants' actions were unlawful because Plaintiff did not engage in those furtive movements, the success of that claim would thus necessarily render Plaintiff's criminal conviction invalid and would be barred by Heck. 512 U.S. at 487 (a claim may proceed only if, "even if successful, [it] will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff."). Thus, Plaintiff may not now assert that he did not engage in furtive movements. This may be why Plaintiff acknowledges such furtive movements in his Memorandum. Pl.'s Mem. at 15. Additionally, whether Plaintiff made furtive movements was an issue that was litigated and decided against him in his criminal trial, therefore it is not an issue of triable fact here. See Hardy v. Plante, No. 6-CV-687, 2009 WL 249787, at *4–5 (N.D.N.Y. 2009) ("While a court on a summary judgment motion must credit all rational factual inferences in favor of the party opposing summary judgment, Hardy's conviction for resisting arrest prevents him from asserting factual allegations or legal arguments that have been litigated and decided against him in his criminal trial."); Diggs v. New York Police Dep't, No. 04-CV-1846, 2005 WL 3533158 (E.D.N.Y. 2005) (holding that plaintiff's possession of a weapon was litigated and decided against him in his criminal trial and thus was not a triable issue of fact on summary judgment for § 1983 suit).

individuals for minor crimes while patrolling a predominately minority area of the city"

designated as being high crime. Pl.'s Mem. at 14–15. However, Defendants' mere membership

in a proactive, aggressive policing unit does not reasonably lead to an inference that Defendants'

actions the night of the arrest were motivated by race. The fact that Defendants were patrolling a

high crime, predominantly minority area likewise does not reasonably give rise to an inference of

discriminatory intent. Beyond the fact that it is common for police to assign resources to high

crime areas, Floyd, 959 F. Supp. 2d at 562 ("I recognize that the police will deploy their limited

resources to high crime areas."), it is undisputed that Defendants were not responsible for

deciding which areas of the city they patrolled, Decker Dep. at 27. Thus, Defendants' presence in

a specific area is not evidence of intent in their encounter with Plaintiff.

Third, Plaintiff argues there are significant issues of fact regarding whether the CRT

enforced the facially neutral New York State trespassing law in a racist fashion, because the

Housing Authority had requested the CRT patrol predominantly African American areas of the

city. See Pl.'s Mem. at 15. However, such an allegation does not bear on the motives or intent of

Defendants themselves during their interaction with Plaintiff, because it is not alleged that the

Defendants were in any way responsible for the policy or enforcement decisions of the CRT or

the Housing Authority.

Plaintiff does claim Defendants mistreated him and used excessive force against him.

While "mistreatment by defendants is not irrelevant in assessing the strength of plaintiff's

circumstantial evidence of race-based animus, it is certainly not sufficient to establish it."

Lizardo v. Denny's, Inc., 270 F.3d 94, 102 (2d Cir. 2001).

Drawing all reasonable inferences in favor of Plaintiff, the record demonstrates only that

two white police officers, members of a proactive crime unit assigned to patrol a high crime area,

approached Plaintiff and Jones—two black males—after seeing furtive movements, and engaged in excessive force during their encounter. These allegations, taken individually or together, are insufficient for Plaintiff's claim to survive summary judgment. The only facts supporting an inference of racial motivation is the racial discrepancy between Plaintiff and Defendants, and Plaintiff's asserted belief that the encounter was racially motivated. From this record, no reasonable jury could find the existence of discriminatory intent on part of Defendants. See Miller, 391 F. Supp. 3d at 225 ("The mere fact that Defendant is white and Plaintiff is black does not mean that Defendant's arrest of Plaintiff was motivated by Plaintiff's race."); Coggins v. County of Nassau, 254 F. Supp. 3d 500, 511–15 (E.D.N.Y. 2017) (granting summary judgment and dismissing § 1981 discrimination claim because "the only evidence of racial animus [was] plaintiff's belief that [his] arrest was racially motivated").

### B. **Monell** Claim against the City of Syracuse

A Monell claim for municipal liability cannot survive absent an underlying constitutional violation. See Pinter v. City of New York, 448 F. App'x 99, 106 (2d Cir. 2011) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (dismissing Monell claim because "if [the officer] inflicted no constitutional injury on respondent, it is inconceivable that [the city] could be liable to respondent."). Plaintiff's Monell claim is premised entirely upon his Fourteenth Amendment racial profiling claim. Dkt. No. 111 ("[The] Court finds [P]laintiff's Monell claims and related discovery are limited to a claim of improper policy, custom or practice regarding racial profiling"). As that Fourteenth Amendment claim is dismissed, Plaintiff's Monell claim is likewise dismissed.

### C. Fourth Amendment Excessive Force Claim against Decker and Ettinger

The Court reaches a different result regarding the Fourth Amendment Excessive Force claim against Decker and Ettinger.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. This has been interpreted to "protect persons from the use of excessive force by state police officers incident to an arrest." Messina v. Mazzeo, 854 F. Supp. 116, 128 n.6 (E.D.N.Y. 1994) (citing Tennessee v. Garner, 471 U.S. 1 (1985)). Fourth Amendment claims of excessive force are governed by an objective reasonableness standard, such that no claim will lie when "the force used by the officers was objectively reasonable under the circumstances." Id. (citing Roundtree v. City of New York, 778 F. Supp. 614 (E.D.N.Y. 1991)). The objective reasonableness inquiry weighs the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989). In determining objective reasonableness, courts examine the totality of the circumstances, including "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." Id., 490 U.S. at 395 n.10; see also Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Brown v. City of New York, 798 F.3d 94, 107 (2d Cir. 2015) (internal quotation marks omitted) (quoting Graham, 490 U.S. at 396).

Plaintiff alleges that Defendants Decker and Ettinger used excessive force against him during his arrest by slamming him to the ground without provocation and striking him while he was facedown, already subdued, and defenseless. Plaintiff seeks summary judgment on the grounds that Defendants' use of force was objectively unreasonable as a matter of law. Pl.'s Mem. 2–5. Defendants, in turn, seek summary judgment on Plaintiff's excessive force claim on

the grounds that Defendants' use of force was objectively reasonable as a matter of law and

Plaintiff did not suffer sufficient physical injury. Defendants also argue that Plaintiff's testimony

and deposition have been so inconsistent and contradictory they should be disregarded under

Jeffreys, and that Plaintiff's criminal conviction prevents him from factually disputing his

conduct during the altercation with Defendants. Defs.' Mem. at 8–14, 16.

  1. *There are Material Issues of Fact Regarding Whether Defendants' Use of*
     *Force was Reasonable*

Both parties claim they are entitled to summary judgment, even construing events in the

light most favorable to the other party. However, there are significant and material differences

between the parties' respective versions of events, the resolution of which could lead a

reasonable jury to find in favor of either party.

According to Plaintiff, while being searched, Plaintiff verbally objected and attempted to

turn after Decker placed a hand between his buttocks. Jennings Dep. at 53–55. Plaintiff never

tried to run or escape. Id. at 44; Jones Dep. at 46, 55. Decker then lifted Plaintiff and slammed

him to the pavement. Jennings Dep. at 51, 55; Jones Dep. at 37. Plaintiff immediately submitted,

attempting to place his arms behind his back to be handcuffed. Jennings Dep. at 51, 55; Jones

Dep. at 55. Decker proceeded to strike Plaintiff while he was face down on the ground and

"rough[] [him] up." Pl.'s SMF at 8; Jones Dep. at 37; Jennings Dep. at 55. At this point, Ettinger

ran from the passenger side of the car and struck Plaintiff in the face while he was still face down

with his hands behind his back and with Decker still on top of him. Id. at 56; Jones Dep. at 40–

41.

Defendants paint a far different portrait. In their narrative, Plaintiff aggressively spun

while being searched, broke Decker's hold on him, and started running. Decker Dep. at 60–61;

Ettinger Dep. at 102–103, Defs.' Mem. at 12. Decker pursued and tackled Plaintiff to the ground.

Decker Dep. at 61; Ettinger Dep. at 107. Decker did not strike Plaintiff while on the ground.

Decker Dep. at 102, 117–118. Plaintiff resisted, refused to comply, and attempted to get up off

the ground. Ettinger Dep. at 109–110. Plaintiff kept his hands out of sight underneath his body

and appeared as if he were either trying to get off the ground or access a weapon. Decker Dep. at

66; Ettinger Dep. at 109. Ettinger struck Plaintiff in the head, and Plaintiff finally allowed his

hands to be placed behind his back. Ettinger Dep. at 112–113.

The parties thus dispute whether Plaintiff ran from police, whether Decker merely tackled

Plaintiff while running or lifted him and slammed him to the pavement, whether Decker struck

Plaintiff after taking him to the ground, whether Plaintiff actively resisted arrest, where

Plaintiff's hands were located during the altercation, and whether Plaintiff was compliant when

Ettinger struck him. These factual disputes are material. They weigh directly on the objective

reasonableness of Defendants' actions, namely the "nature and quality of [Defendants']

intrusion" and "whether the suspect pose[d] an immediate threat to the safety of the officers or

others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight."

Graham, 490 U.S. at 395 n.10, 396.

Deciding which version of events to believe requires a credibility determination best left

to a jury. A reasonable jury could credit Plaintiff's version of events and find that Defendants'

use of force was objectively unreasonable. Thus, Defendants are not entitled to summary

judgment on Plaintiff's excessive force claim. See Breen v. Garrison, 169 F.3d 152, 153 (2d Cir.

1999) (denying summary judgment where parties' factual assertions differed regarding the arrest

and the nature of force used); Farrow v. City of Syracuse, No. 12-CV-1401, 2014 WL 1311903

(N.D.N.Y. Mar. 31, 2014) (Kahn, J.) ("Where a plaintiff alleges that he was largely defenseless

during the arrest, courts have found such allegations to be plainly sufficient to withstand a

motion for summary judgment") (internal quotation marks omitted); Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 342–43 (E.D.N.Y.2006) (allegations that plaintiff did not resist and officers used force after plaintiff had been subdued precluded summary judgment) (collecting cases).

Conversely, a reasonable jury could credit Defendants' version of events, and find that their use of force *was* objectively reasonable. Thus, Plaintiff is also not entitled to summary judgment. See Stratakos v. Nassau Cty., No. 15-CV-7244, 2019 WL 6699817, at *16 (E.D.N.Y. Dec. 9, 2019) (denying plaintiff's request for summary judgment on excessive force claim where parties offered disparate accounts of force used by officers and whether plaintiff resisted arrest).

### 2.   *Plaintiff has Shown Sufficient Physical Injury to Survive Summary Judgment*

Defendants argue they are entitled to summary judgment because "Plaintiff has not attributed any specific physical injury to the alleged use of force" and has only made "conclusory assertions[s] of injury." Defs.' Mem. at 10. They further assert that Plaintiff's medical records "are devoid of any proof that he complained of any injuries, or [sic] treated for any injuries allegedly sustained" from Ettinger's strike. Defs.' Reply at 10. Finally, Defendant claims that the record evidence completely belies Plaintiff's claim of injury. Defs. Mem at 11.

To survive summary judgment for excessive force, a plaintiff must show physical injury. Castro v. Cty. of Nassau, 739 F. Supp. 2d 153, 177 n.16 (E.D.N.Y. 2010) ("[I]t is clear that some type of injury is required to prevail on a § 1983 excessive force claim"). A conclusory, vague claim of injury that does not identify any specific or identifiable harm is insufficient. Acosta v. City of New York, No. 11-CIV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (granting summary judgment where "plaintiff does not allege 'any specific or identifiable physical or mental harm beyond [ ] conclusory assertion[s]'") (quoting Wims v. N.Y.C. Police Dep't, No. 10-CIV-6128, 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011)).

Here, Plaintiff does point to several specific injuries to support his claim of excessive force. He claims that the altercation caused pain and "[s]welling around [his] right eye," aggravated an existing injury to his ribs, and inflicted long-term pain and discomfort in his knee. Compl. at 4; Pl.'s SMF at 9; 50-h Hr'g Test. at 13–14, 49–50. Allegations that set forth similar specific injuries have been found sufficient to survive summary judgment. See e.g., Castro, 739 F. Supp. 2d at 177 n.16 (denying summary judgment on excessive force claim where plaintiff "submitted sworn testimony that the handcuffs were too tight . . . and that he sustained an injury" in the form of redness and soreness.); Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) (bruised shin and swollen knee); Allen v. City of N.Y., 480 F. Supp. 2d 689, 698 (S.D.N.Y. 2006) (swelling, bruising, and redness on head); Brewer v. Jones, No. 02-CV-3570, 2003 WL 22126718 at *2 (S.D.N.Y. Sept. 12, 2003) (reddened forehead and jaw pain); Nunez v. Goord, 172 F. Supp. 2d 417, 433 (S.D.N.Y. 2001) (bruise to left brow); Smith v. Marcellus, 917 F. Supp. 168, 171–72 (W.D.N.Y. 1995) (abrasion under left eye, laceration near right ear, four superficial scratches on upper calf behind knee, and slightly swollen right wrist).

The cases cited by Defendants are inapposite and differ factually from the present case. They deal with plaintiffs who made only a vague assertion of injury or did not claim any injury at all. In Acosta, for example, the plaintiff merely alleged that he had "suffered emotional and physical damages" as a result of being handcuffed. 2012 WL 1506954, at *11. In Livingston v. Henderson, the plaintiff gave sworn testimony explicitly stating he had not been injured by the defendants. 2019 WL 1427689 at *11–12 (N.D.N.Y. 2019). In Brown v. City of New York, the plaintiff likewise conceded they had suffered no physical injury. 2015 WL 427942, at *5 (E.D.N.Y. Feb. 2, 2015).

Next, Defendants claim they are entitled to summary judgment because Plaintiff's medical records are devoid of proof that Plaintiff complained of injury or was treated for injury. Defs.' Reply at 10. However, a failure to seek medical attention is not fatal to a claim for excessive force. See Robison v. Via, 821 F.2d 913, 923–24 (2d Cir. 1987) ("While [the plaintiff] did not seek medical treatment for her injuries . . . this failure is not fatal to her claim. If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.") (citing Norris v. District of Columbia, 737 F.3d 1148, 1150–52 (D.C. Cir. 1984); see also Sidney v. Wilson, No. 03-CV-0830, 2007 WL 4208626, at *7 (S.D.N.Y. Nov. 21, 2007) (While medical records "suggest [plaintiff] did not sustain profound injuries, the Second Circuit has cautioned against giving the conclusions in such health records conclusive weight on a motion for summary judgment where there is other evidence in the record detailing plaintiff's injuries.") (collecting cases). Thus, Defendants are not entitled to summary judgment on the grounds that Plaintiff's medical records do not show proof of a complaint or treatment for injury.

Finally, Defendants refer to the pictures taken of Plaintiff after the altercation and Plaintiff's discussion during the intake process and claim that Plaintiff's assertion of injury is "completely belied" by the evidence presented. Defs.' Rep. at 11; Defs.' Mem. at 10. The pictures taken by Officer Ocker do not appear to show visible injury to Plaintiff's face. Dkt. 127-18 ("Arrest Pictures"). Further, it is admitted Plaintiff did not report any injuries when questioned by justice center staff. Plaintiff's SMF at 18–19. However, this evidence is not as conclusive as Defendants argue. A reasonable fact finder could find that Plaintiff did not reveal his injuries to the police or medical staff even though they did indeed exist, and that the pictures taken by police do not show the full extent of potential injuries to Plaintiff's face, ribs, and knee.

Put simply, while this evidence certainly supports Defendants' narrative, the weight of such

evidence is more appropriately evaluated by the trier of fact and does not conclusively establish

that Plaintiff did not suffer injury as a matter of law. See Zalewski v. City of New York, No. 13-

CV-7015, 2018 WL 5113137, at *5 (E.D.N.Y. Oct. 19, 2018) (refusing to grant summary

judgment where records contradicted Plaintiff's claim of injury because "[t]he credibility of [a

plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a

finder of fact.") (quoting Scott v. Coughlin, 344 F.3d 282, 289–90 (2d Cir. 2003)); see also

Centeno v. City of New York, No. 16-CV-2393, 2019 WL 1382093, at *7 (S.D.N.Y. Mar. 27,

2019) (holding that, at summary judgment stage, jury should determine "how much weight" to

give evidence contradicting excessive force narrative).

     For the reasons set forth above, Plaintiff has set forth sufficient evidence of injury to

survive summary judgment.

     *3.  The Court will not Invoke the <u>Jeffreys</u> Exception and Resolve Credibility Issues against the Defendant on Summary Judgment*

Defendants argue this is one of the "rare circumstances" where credibility issues may be

resolved on summary judgment under Jeffreys v. City of New York, 426 F.3d 549 (2d Cir.

2005). "To qualify for the Jeffreys exception, a defendant must satisfy each of the following

three requirements: (1) 'the plaintiff must rely "almost exclusively on his own testimony," '(2)

the plaintiff's "testimony must be 'contradictory or incomplete," 'and (3) the plaintiff's

testimony must be contradicted by evidence produced by the defense.'" Quick v. Quinn, No. 12-

CV-1529, 2014 WL 4627106, at *4 (N.D.N.Y. 2014) (quoting Benitez v. Ham, No. 04-CV-1159,

2009 WL 3486379, at *20–21 (N.D.N.Y. Oct. 21, 2009)).

In Jeffreys, the plaintiff claimed he was assaulted by police officers and thrown out of a

third-floor window. 426 F.3d at 552. However, he could not identify any of the officers involved,

say how many there were, or describe them. Id. He also testified later that he was not thrown, but had jumped out of the window. Id. at 555 n.2. The district court held the plaintiff's account was incomplete, and "so replete with inconsistencies and improbabilities" that no juror would suspend disbelief to credit the allegations. Id. at 555.

In Quick, cited by Defendants, a prison inmate alleged he was assaulted by four prison guards. 2014 WL 4627106, at *1. His allegation that a specific defendant was present at the assault was supported only by the inmate's verified complaint. Id. at *5. This allegation was contradicted when the inmate admitted he did not have enough information to state whether the defendant was even at work that day. Id. The court determined under Jeffreys that no factfinder could conclude the defendant was present at the attack. Id.

In a case often cited to support application of Jeffreys, Aziz Zarif Shabazz v. Pico, then-District Judge Sotomayor granted summary judgment in a case involving allegations of excessive force. 994 F. Supp. 460, 470–71 (S.D.N.Y. 1998). In deciding to resolve credibility issues against the plaintiff, the Aziz court relied on the absence of any supporting evidence in the record, and the fact the plaintiff had repeatedly submitted affidavits that significantly contradicted his prior sworn testimony concerning what injuries he suffered, and even where the alleged assault occurred. Id.

Unlike in Jeffreys and the cases noted above, Plaintiff's narrative is not founded entirely or almost exclusively on his own testimony, but is largely supported by an eyewitness, Willie Jones. See Jones Dep.

As to the second prong of Jeffreys, the Court finds that Plaintiff's allegations are not incomplete. Plaintiff has consistently identified the officers involved in the use of force, where it occurred, the nature of the force used, and his own actions during the altercation. See Grubbs v.

Serrell, No. 14-CV-467, 2016 U.S. Dist. LEXIS 110783, at *35 (N.D.N.Y. Aug. 18, 2016)

(finding plaintiff's testimony was not incomplete where he consistently identified the officers

involved as well as the nature of the altercation); Torres v. Caron, No. 08-CV-0416, 2009 U.S.

Dist. LEXIS 121277, at *36 (N.D.N.Y. Dec. 8, 2009) ("[U]nlike in Jeffreys, Plaintiff has

specifically identified the officers whom he alleges assaulted him. Thus, this factor suggests that

the Jeffreys exception should not apply."). Contentions that are, again, supported by Jones'

recitation of events.

   The Court also finds that Plaintiff's testimony is not sufficiently contradictory to warrant

the Jeffreys exception. Defendants argue that Plaintiff's account of the force used against him—

namely that he did not run and was "slammed" to the ground—is "clearly" contradicted by Mr.

Jones' deposition testimony. Defs.' Mem. at 12. While Jones at one point does refer to a past

statement he made that Plaintiff ran, Jones Dep. at 45, Jones also stated multiple times that

Plaintiff "didn't try to run" and that Decker "threw [Plaintiff] on the ground" while searching

him. Jones Dep. at 28, 37. Thus the contradiction is not as clear as Defendants claim. Even were

the contradiction clear, it would not satisfy the second Jeffreys prong, which requires a plaintiff's

testimony be contradicted by the plaintiff himself, such as in Jeffreys, Aziz, and Quick, where

the plaintiffs' assertions were contradicted by their own, later testimony. See Jeffreys, 426 F.3d

at 555 n.2; Aziz, 994 F. Supp. at 470–71; Quick, 2014 WL 4627106, at *5. Defendants also

contend Plaintiff's claim that he didn't run is contradicted by his failure to object when the

booking deputy stated that Plaintiff "had like, a little chase." Defs.' Mem at 12; Defs.' SMF at

11. Failing to speak up and deny a booking deputy's assertion while being booked into jail does

not directly or necessarily contradict Plaintiff's assertion that he didn't run, and is a far cry from

the direct testimonial contradictions present in cases where <u>Jeffreys</u> has been applied. <u>See</u>
<u>Jeffreys</u>, 426 F.3d at 555 n.2; <u>Aziz</u>, 994 F. Supp. at 470–71; <u>Quick</u>, 2014 WL 4627106, at *5.

Next, Defendants argue that the Court should disregard Plaintiff's contention that he did
not run from Decker, and indeed disregard all Plaintiff's contentions regarding Defendants' use
of force, because Plaintiff has made other unrelated statements that turned out to be false. Defs.'
Mem at 12. Defendants point to six of Plaintiff's assertions: (1) Plaintiff's initial statement to
Decker that he didn't have drugs; (2) Plaintiff's denial that there was a scale in the car, which
Mr. Jones has admitted he placed there right before stepping out, Jones Dep. at 24; (3) Plaintiff's
assertion that Decker rushed Jones; (4) Plaintiff's claim that he advised "booking deputies" that
his eye was bothering him, (5) Plaintiffs statement at his criminal trial that a security officer tried
to break his arm, and (6) Plaintiff's claim that he thought the substance in his pocket was
"Molly" rather than cocaine. Defs.' Mem at 12–13.

In no case cited by Defendants, or found by this Court, has a court applied <u>Jeffreys</u>
against a Plaintiff on a claim of excessive force due to inconsistencies in statements wholly
unrelated to that use of force. Indeed, in <u>Jeffreys</u>, <u>Quick</u>, and <u>Aziz</u>, the contradictions noted by
the court dealt directly with the force used by police or whether a specific defendant was even
present when force was used. <u>See</u> <u>Jeffreys</u>, 426 F.3d at 555 n.2; <u>Aziz</u>, 994 F. Supp. at 470;
<u>Quick</u>, 2014 WL 4627106, at *5.

Even were such an application permissible, the inconsistencies noted by Defendants do
not render Plaintiff's narrative so "contradictory and improbable" that the very rare exception in
<u>Jeffreys</u> is warranted. These inconsistencies may undermine Plaintiff's credibility, but that is
most appropriately decided by a jury. <u>See</u> <u>Ali v. Connick</u>, 136 F. Supp. 3d 270, 281 (E.D.N.Y.
2015) (finding that Plaintiff's failure to remember certain aspects of his encounter with police

"may undermine the credibility of his claims . . . [b]ut that is for a jury to decide."). Plaintiff's narrative of events is not so contradictory or inconsistent as to render it so facially implausible that no reasonable person could believe Plaintiff's testimony. See id. (refusing to apply Jeffreys where "[p]laintiff has clearly identified . . . the officer who allegedly assaulted him, and his testimony regarding the details of the alleged assault, while at times unclear, is not so contradictory or inconsistent as to render it facially implausible.").

Because Defendants' argument fails on the first and second prongs, the Court will not apply the Jeffreys exception.

### 4. Plaintiff's Criminal Conviction Does Not Bar Plaintiff from Disputing his Conduct During the Altercation

Defendants further claim that there is no triable issue of material fact regarding Plaintiff's conduct during his altercation with Defendants, and the Court does not need to make all rational inferences in favor of Plaintiff regarding his conduct, because this is an issue that has "been litigated and decided against him in his criminal trial."[4] Defs.' Mem. at 16. Defendants rely on Hardy v. Plante, No. 6-CV-687, 2009 WL 249787 (N.D.N.Y. 2009) and Diggs v. New York Police Dep't, No. 4-CV-1846, 2005 WL 3533158 (E.D.N.Y. 2005) to support this assertion.

Defendants' argument is misplaced. In both cases Defendants cite, the contested behavior (1) was expressly disputed and litigated in the previous criminal trial, (2) had been decided against the plaintiff, and (3) formed the basis for the plaintiff's criminal conviction. In Hardy for instance, the plaintiff had previously been convicted of resisting arrest during his interaction with the police-defendants and was thus precluded from claiming in his civil case that he did not resist

---

[4] Defendants make this argument in Section VI of their Memorandum which deals with qualified immunity. However, were the Court to accept the argument, the consequences would reach beyond qualified immunity to the heart of Plaintiff's excessive force claim. Thus, the Court addresses it here.

arrest. 2009 WL 249787 at *5. Likewise, in <u>Diggs</u>, the plaintiff had previously been convicted of criminal possession of a weapon and attempted murder of a police officer, and was thus prohibited from contending in his civil trial that he did not fire a weapon with intent to kill the defendant-police officer. 2005 WL 3533158 at *4.

Here, Plaintiff was convicted only of two counts of possession of a controlled substance. Dkt 127-8 ("Trial Transcript") at 358. He was not convicted of resisting arrest, assault on a police officer or any similar charge regarding his physical comportment during his altercation with the police. The facts Plaintiff contests—whether he was resisting arrest, whether he ran and the nature of force used by the officers—were not at issue in his charges of possession of a controlled substance and have not been litigated and decided against him.[5] Thus, he is not estopped from arguing those factual elements and the Court must indeed make all reasonable inferences in favor of Plaintiff regarding his behavior during the altercation for the purposes of Defendants' motion for summary judgment.

### D.  Decker and Ettinger Are Not Entitled to Qualified Immunity

"When facing a defense of qualified immunity at the summary judgment stage, 'a court should ask whether, viewing the evidence in the light most favorable to the non-moving party, the conduct that may be proved at trial is conduct that, at the time it occurred, violated a clearly established constitutional or statutory right.'" <u>Ruhlmann v. Ulster County Dep't of Soc. Servs.</u>,

---

[5] At sentencing, the state court judge did state that Plaintiff "fought with police." Dkt. No. 127-9 ("Sentence") at 5. However, there is a presumption against using statements and findings at sentencing as a basis for collateral estoppel in later civil trials. <u>Sec. Exch. Comm'n v. Monarch Funding Corp.</u>, 192 F.3d 295, 306 (2d Cir. 1999) (holding that "precluding relitigation on the basis of [sentencing] findings should be presumed improper" and only be allowed where moving party has shown it to be "clearly fair and efficient to do so."). Defendants have made no showing sufficient to overcome this presumption, and it would likely be unfair to use such statements here, where the conduct underlying the sentencing remarks was not fully and fairly litigated. <u>See</u> <u>id.</u>

234 F. Supp. 2d 140, 174 (N.D.N.Y. 2002) (quoting Mozzochi v. Borden, 959 F.2d 1174, 1178 (2d Cir. 1992)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012). The right must be established "in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). This does not require that the very action at issue be previously held unlawful, but merely that "in the light of pre-existing law the unlawfulness [is] apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "[W]here plaintiff has a clearly established constitutional or statutory right, the only remaining inquiry is whether the defendant's conduct is objectively reasonable." Ruhlmann, 234 F. Supp. 2d at 174 (citing Anderson, 483 U.S. at  639). Regarding claims of excessive force, the two prongs of the qualified immunity inquiry somewhat merge in that "the qualified immunity inquiry turns on whether the defendants' actions were objectively reasonable under clearly established law; and the clearly established law of excessive force itself hinges on the reasonableness of the force used." Matthews v. City of N.Y., 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012) (citing Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003)).

Defendants claim it is undisputed, due to Plaintiff's underlying criminal conviction, that Plaintiff resisted arrest, attempted to flee, and had his hands underneath his body after being taken to the ground, and therefore Defendants acted in an objectively reasonable fashion. Defs.' Mem. at 16–17. However, as the Court explains above, see supra. Section IV(C)(4), Plaintiff's criminal conviction does not estop him from contesting his conduct during the altercation with police. Making all rational inferences in favor of Plaintiff, the record does not demonstrate that the force used was objectively reasonable.

The facts surrounding Defendants use of force, read in the light most favorable to Plaintiff, are set forth above. See supra. Section IV(C)(1). Existing case law clearly establishes that lifting and slamming a suspect to the ground after they verbally object and offer minimal physical resistance, then striking that individual on the ground despite being unarmed, subdued and compliant, and not posing a threat to officers, is not objectively reasonable and is thus a violation of that person's constitutional right to be free from excessive force. See Marcano v. City of Schenectady, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014) (denying qualified immunity where plaintiff "offered no physical threat to the officers or resistance to being arrested, but he was tackled and physically restrained . . . [and officers] struck him several times."); Matthews, 889 F.Supp.2d at 443 (denying qualified immunity where police officers placed "excessively tight handcuffs" on a plaintiff who did not resist arrest).[6] A reasonable jury could credit Plaintiff's telling of events and find that both Decker and Ettinger acted objectively unreasonably in their use of force—Decker for slamming Plaintiff to the ground and striking him, and Ettinger for striking Plaintiff in the face while face down on the ground with his hands behind his back.

---

[6] For more examples see Crawford v. City of New London, No. 11-CV-1371, 2014 WL 186417, at *7 (D. Conn. Jan. 16, 2014) (denying qualified immunity where officers allegedly pushed plaintiff to the ground and "repeatedly pushed his head against the floor and kneeled on his back"); Methvin v. Cossette, No. 11-CV-959, 2013 WL 5740076, at *7 (D. Conn. Oct. 22, 2013) (denying qualified immunity where officers struck plaintiff while "lying face down on the ground"); Lemmo v. McKoy, No. 8-CV-4264, 2011 WL 843974, at *6 (E.D.N.Y. Mar. 8, 2011) ("[G]ratuitous uses of force that are not required to subdue an individual likely fail the Graham objective unreasonableness test."); Williams v. City of New York, No. 6-CV-6601, 2009 WL 3254465, at *1, *7-*8 (E.D.N.Y. Oct. 9, 2009) (alleged force used was unreasonable where officers "rushed and tackled" plaintiff, slamming him to the ground and landing on him, even though he did not struggle or resist); Pierre-Antoine v. City of New York, No. 4-CV-6987, 2006 WL 1292076, at *6 (S.D.N.Y. May 9, 2006) (denying qualified immunity despite "modest and largely passive" resistance to arrest where police officers struck a plaintiff "pinned facedown on the ground" who did not "attempt at any point to strike the officers back."); Nogue v. City of New York, No. 98-CV-3058, 1999 WL 669231, at *9 (E.D.N.Y. Aug. 27, 1999) (denying qualified immunity where officers "kicked and punched" armed robbery suspect while he was on ground and not resisting).

Thus, due to the factual disputes present on the record concerning the level of force used by Defendants, Plaintiff's level of resistance, and whether Plaintiff presented an objectively reasonable threat to the officers, the Court will not grant Defendants qualified immunity. See Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007) ("If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable [sufficient to warrant qualified immunity] is an issue of law to be determined by the court. [I]f there is such a dispute, however, the factual questions must be resolved by the factfinder.") (internal citations and quotation marks omitted); Thomas v. Roach, 165 F.3d 137, 144 (2d Cir.1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded.").

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that that Defendants' Motion (Dkt. No. 127) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Plaintiff's Fourteenth Amendment racial profiling claim against Decker and Ettinger and Plaintiff's Monell claim against the City of Syracuse be dismissed from this action; and it is further

**ORDERED**, that Plaintiff's Fourth Amendment excessive force claim against Decker and Ettinger survive Defendants' Motion; and it is further

**ORDERED**, that the City of Syracuse be **DISMISSED** as a defendant in this action; and it is further

**ORDERED**, that Plaintiff's Cross-Motion (Dkt. No. 138) be **DENIED**, and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     August 06, 2021
               Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge